Stephen D. Finestone (125675)
Jennifer C. Hayes (197252)
FINESTONE HAYES LLP
456 Montgomery Street, Suite 1300
San Francisco, CA 94104
Tel.:    (415) 421-2624
Fax:    (415) 398-2820
Email: sfinestone@fhlawllp.com
Email: rwitthans@fhlawllp.com

Proposed Attorneys for American Trash Management, Inc.
Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>AMERICAN TRASH MANAGEMENT, INC.,<br><br>Debtor-in-Possession. | Case No. 25-30743-HLB<br><br>Chapter 11, Subchapter V<br><br>**DEBTOR'S EX PARTE APPLICATION FOR ORDER SHORTENING TIME ON FIRST DAY MOTIONS RE CASH COLLATERAL; USE OF EXISTING BANK ACCOUNTS; AND PREPETITION EMPLOYEE OLIBATIONS[1]**<br><br><u>Hearing:</u> *To be set.* |

American Trash Management, Inc. (the "Debtor") has caused to be filed three emergency first-day motions: (1) For Entry of Order Authorizing Use of Cash Collateral (ECF 4, the "Cash Collateral Motion"); (2) For Entry of Order Authorizing Use of Existing Bank Accounts, Business Forms, and Cash Management Systems (ECF 5, the "Bank Account Motion"); and (3) For Entry of Order Authorizing Payment of Pre-Petition Employee Obligations (ECF 12, the "Employee

---

[1] Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure and "B.L.R." references are to the Bankruptcy Local Rules for the Northern District of California.

EX PARTE APPLICATION FOR ORDER SHORTENING TIME                                          1

Wage Motion") (collectively, the First Day Motions"). The Debtor has also caused to be filed the Declaration of Scott Brown (ECF 2) in support of the First Day Motions, and the Supplemental Declaration of Scott Brown in Support of the Employee Wage Motion. Copies of the First Day Motions, without supporting declarations, are attached hereto as Exhibits 1, 2, and 3. The Debtor requests consideration of the First Day Motions on an expedited basis. This Ex Parte Application is supported by the accompanying Declaration of Jennifer C. Hayes.

1. The reason for the requested shortening of time for notice of the hearing on the Motion is as follows:

a. *Cash Collateral Motion*: The Debtor contends that, to preserve the value of its business and to comply with applicable law, the Debtor needs access to its Cash Collateral on an expedited basis. The Debtor further contends that, if the Debtor does not receive the requested relief during the first 21 days of this Chapter 11 case, then the Debtor's business operations would be severely disrupted at this critical juncture.

b. *Bank Account Motion*: The Debtor asserts that, without a hearing on the Bank Account Motion on an expedited basis, there exists a significant risk that the Debtor's ability to collect payments from its customers, pay vendors, and compensate its employees will be interrupted.

c. *Employee Wage Motion*: The Debtor asserts that, without considering the requested relief sought in the Employee Motion on an expedited basis, the Debtor risks suffering substantial attrition at a time when the Debtor needs its employees to perform at peak efficiency. The Debtor asserts that it would be difficult for the Debtor to replace such employees given the nature of the Debtor's operations and the condition of the Debtor.

2. There are no previous time modifications related to the subject of the current request.

3. The effect of the requested time modification is to have the First Day Motions heard as soon as possible so that the Court can assist the Debtor by considering the First Day

Motions as soon as possible. The Debtor asserts that an expedited hearing on its First Day Motions is needed in order for the Debtor to be able to operate the Debtor's business in a cost-effective manner with adequate oversight of the Debtor, use the estate's cash collateral, and pay employees on account of their unpaid prepetition wages and benefits in the manner set forth in the First Day Motions.

4. The Debtor requests that the Court enter an order setting the First Day Motions for hearing on the soonest possible date agreeable to the Court, and for opposition to the First Day Motions to be due orally at the hearing on the Motion or by noon on the calendar day prior to the hearing on the Motion, at the respondents' election. The Debtor proposes to serve Notice of the Hearing on the First Day Motions and Order Shortening Time by email, fax, or overnight mail on Fremont Bank, the United States Trustee, the Subchapter V Trustee, any parties that have appeared in the case, any special notice parties, and on the estate's twenty largest general unsecured creditors, and such other parties as the Court may direct, within one calendar day following entry of the order shortening time. The Notice of Motion specifies how parties may obtain a complete set of the moving papers by emailing their request to counsel for the Debtor (jhayes@fhlawllp.com).

Dated September 17, 2025      FINESTONE HAYES LLP

                                       */s/ Jennifer C. Hayes*
                                       Jennifer C. Hayes
                                       Proposed Attorneys for American Trash
                                       Management, Inc., Debtor-in-Possession

# Exhibit 1

1  Stephen D. Finestone (125675)
   Jennifer C. Hayes (197252)
2  FINESTONE HAYES LLP
   456 Montgomery Street, Suite 1300
3  San Francisco, CA 94104
   Tel.:   (415) 421-2624
4  Fax:    (415) 398-2820
   Email: sfinestone@fhlawllp.com
5  Email: jhayes@fhlawllp.com

6  Proposed Attorneys for American Trash Management, Inc.
   Debtor-in-Possession
7

8

9              **UNITED STATES BANKRUPTCY COURT**

10             **NORTHERN DISTRICT OF CALIFORNIA**

11                      **OAKLAND DIVISION**

| | |
|---|---|
| In re | Case No. 25-30743 |
| AMERICAN TRASH MANAGEMENT, INC., | Chapter 11, Subchapter V |
| Debtor-in-Possession. | **DEBTOR'S EMERGENCY FIRST-DAY MOTION FOR AN ORDER AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO § 363[1]** |
| | <u>Hearing:</u> *To be set.* |

---

[1] Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure and "B.L.R." references are to the Bankruptcy Local Rules for the Northern District of California.

MOTION TO USE CASH COLLATERAL                                           1

## I. INTRODUCTORY STATEMENT

Debtor-in-possession American Trash Management, Inc. (the "Debtor") submits this motion (the "Motion"), on an emergency basis, for entry of an interim order (the "Interim Order"), in substantially the form attached hereto as **Exhibit A**, and for the entry of a final order (the "Final Order," and together with the Interim Order, the "Cash Collateral Orders") following a final hearing.  In bringing this Motion and seeking the relief described herein, the Debtor relies on the *Declaration of Scott Brown in Support of the Debtor's First-Day Motions* (the "Brown Declaration").

This Motion seeks authorization for the Debtor to use cash collateral (the "Cash Collateral"), as such term is defined in § 363(a), in accordance with the Budget (as defined below), and all future budgets, pursuant to the terms of the Cash Collateral Orders.  The Debtor submits this introductory statement in accordance with the Court's *Guidelines for Cash Collateral & Financing Motions & Stipulations* made effective on January 1, 2006 (the "Guidelines").

| | |
|---|---|
| Purpose for the use of the Cash Collateral | The Cash Collateral will be used only to manage the administration of the Chapter 11 case and support the continuity of the Debtor's operations. |
| Terms, including duration | The Debtor requests access to and use of the Cash Collateral until the earliest of: (1) the substantial consummation of a plan of reorganization filed in this Chapter 11 case that is confirmed pursuant to an order entered by the Court; and (2) the date the Court orders the conversion of this Chapter 11 case to a case under Chapter 7, the dismissal of this Chapter 11 case, or the appointment of a trustee or examiner with expanded powers in this Chapter 11 case.<br><br>The Debtor's use of the Cash Collateral will be limited to the items set forth in the Budget, with an allowed variance of 15% per line item. |
| Adequate protection | The Debtor proposes a post-petition replacement lien in the same amount and priority as Fremont Bank's existing rights in the Cash Collateral (as may later be determined in this case) as adequate protection for Fremont Bank's interest in the existing Cash Collateral.<br><br>In addition, the Debtor proposes to make monthly payments of $____ to Fremont Bank on an interim basis as further adequate protection. |

| Entities with an interest in the Cash Collateral | Fremont Bank<br>2580 Shea Center Drive<br>Livermore, CA 94551<br><br>Scheduled amount: $599,529.00<br><br>The various collateral to which the Fremont Bank lien attaches is: "all Inventory, Chattel Paper, Accounts, Equipment and General Intangibles; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing." | |
|---|---|---|
| Scheduled value of collateral | Inventory:<br>Chattel Paper:<br>Accounts:<br>Equipment:<br>General Intangibles:<br>**Total:** | $75,000<br>N/A<br>$1,995,676<br>$35,000<br>Unknown<br>**$2,105,676** |

## CERTIFICATION

The undersigned counsel for the Debtor has read this introductory statement and the accompanying Motion. To the best of my knowledge, information, and belief, formed after reasonable inquiry, and except as otherwise identified herein, the terms and relief sought in the Motion are in conformity with the Guidelines. I understand and have advised the Debtor that the Court may grant appropriate relief under Bankruptcy Rule 9024 if the Court determines that a material element of the Motion was not adequately disclosed in this introductory statement.

Dated September 16, 2025

FINESTONE HAYES LLP


/s/ Jennifer C. Hayes
Jennifer C. Hayes
Proposed Attorneys for American Trash
Management, Inc., Debtor-in-Possession

**MEMORANDUM OF POINTS AND AUTHORITIES**

**II.    JURISDICTION AND VENUE**

This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and

1334, the District Court's General Order No. 24 referring bankruptcy cases and proceedings, and

B.L.R. 5011-1(a).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408–1409.

**III.   STATEMENT OF FACTS**

      A.    <u>The Debtor's Background and Bankruptcy Filing</u>

A detailed discussion of the Debtor's background and the events leading to its bankruptcy

filing is included in the Brown Declaration, which is incorporated by reference.

      B.    <u>The Debtor's Secured Debt</u>

The Debtor's only creditor with a general security interest on the Debtor's assets is

Fremont Bank, by way of a UCC-1 lien recorded with the California Secretary of State on March

21, 2024.  There are also various lenders secured by specific vehicles used in connection with the

Debtor's operations, as indicated in the Schedules filed along with the Petition.

      C.    <u>The Debtor's Collateral</u>

The various collateral to which the Fremont Bank lien attaches is: "all Inventory, Chattel

Paper, Accounts, Equipment and General Intangibles; whether any of the foregoing is owned

now or acquired later; all accessions, additions, replacements, and substitutions relating to any of

the foregoing; all records of any kind relating to any of the foregoing."

      D.    <u>The Debtor's Use of Cash Collateral</u>

The Debtor proposes a post-petition replacement lien in the same amount and priority as

Fremont Bank's existing rights in the Cash Collateral (as may later be determined in this case) as

adequate protection for Fremont Bank's interest in the existing Cash Collateral.  In addition, the

Debtor proposes to make monthly payments of $5,600.24 to Fremont Bank on an interim basis as

further adequate protection.

The Debtor also proposes to restrict its use of the Cash Collateral to the budget attached

as **Exhibit B** to the Brown Declaration (the "Budget").  The Budget is based on the Debtor's

historic monthly operations for 2025.  The Debtor proposes that it be allowed a variance of up to 15% for each line item in the Budget.

## IV.    LEGAL ARGUMENT

### A.    Basis for the Relief Requested

The Debtor's use of property of the estate is governed by § 363.  Section 363(c)(1) provides:

> If the business of the debtor is authorized to be operated under section . . . 1184 . . . of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

The Bankruptcy Code establishes a special requirement, however, regarding a debtor-in-possession's use of "cash collateral," defined as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest . . . ." § 363(a).  The debtor-in-possession is permitted to use, sell, or lease cash collateral pursuant to § 363(c)(1) only if either "(A) each entity that has an interest in such cash collateral consents," or "(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." § 363(c)(2).

Absent consent, a motion to use cash collateral requires the debtor to provide "adequate protection" of the secured interests in the cash collateral. Bankruptcy Rule 4001(b)(1)(B)(iv). *See* § 363(p)(1).  "Adequate protection is provided to safeguard the creditor against depreciation in the value of its collateral during the reorganization process." *First Fed. Bank v. Weinstein (In re Weinstein)*, 227 B.R. 284, 296 (B.A.P. 9th Cir. 1998).  If the value of the collateral decreases, the creditor is entitled to cash payments, replacement liens, or other indubitably equivalent value so that the value of its interest in the collateral remains constant. § 361. *See Weinstein*, 227 B.R. at 296.  The adequate protection provided may take many forms, with § 361 only providing some examples. The amount of adequate protection should be equal to the amount by which the collateral depreciates. *In re Deico Elecs., Inc.*, 139 B.R. 945, 947 (B.A.P. 9th Cir. 1992).  Where

there is no depreciation, there is no entitlement to adequate protection payments. *Weinstein*, 227 B.R. at 296, citing *Confederation Life Ins. Co. v. Beau Rivage, Ltd.*, 126 B.R. 632, 640 (N.D. Ga. 1991). Further, adequate protection payments cannot be used to compensate the creditor for lost interest or to provide lost opportunity costs. *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365 (1988).

### B. Post-Petition Replacement Lien

One form of adequate protection expressly contemplated by § 361(2) is a replacement lien. Such protection is significant because § 552 otherwise cuts off any creditors' lien rights in property acquired by the estate after the commencement of the bankruptcy case, such as post-petition receivables. The Debtor proposes such post-petition replacement lien as adequate protection to Fremont Bank in the same amount and priority as Fremont Bank's existing rights in the Cash Collateral.

### C. Periodic Cash Payments

Section 361(1) contemplates periodic cash payments to a secured party as adequate protection to the extent the use of cash collateral "results in a decrease in the value of such entity's interest in such property." The Debtor proposes to make monthly payments of $5,600.24 to Fremont Bank on an interim basis as further adequate protection to account for the natural variation in the Debtor's bank accounts and accounts receivable, as well as the depreciation of the other collateral to which the Fremont Bank lien attaches.

### D. Use of Cash Collateral Restricted to a Budget

As further assurance to Fremont Bank, the Debtor shall restrict its use of the Cash Collateral to the proposed Budget (attached to the Brown Declaration), absent consent of the IRS or a further order of this Court. If approved by the Court, the Debtor will limit its use of the Cash Collateral to the line items set forth in the Budget, subject to the following permitted variances (the "Permitted Variances"). The Debtor's actual disbursements shall not exceed budgeted disbursements by more than 15% per line item, calculated on a monthly basis. The calculation of the Permitted Variances shall extend to any Final Order entered by the Court as to

the Motion. For the avoidance of doubt, the Debtor may carry forward budgeted and unused disbursements set forth in the Budget for use in the immediately succeeding month.

## V. EMERGENCY CONSIDERATION REQUESTED

The Debtor requests emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a bankruptcy case "to the extent that relief is necessary to avoid immediate and irreparable harm." To preserve the value of its business and to comply with applicable law, the Debtor needs access to the capital available in the Cash Collateral. If the Debtor does not receive the requested relief during the first 21 days of this Chapter 11 case, then the Debtor's business operations would be severely disrupted at this critical juncture. Accordingly, the Debtor submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003. Thus, the Debtor requests that the Court consider and grant this Motion on an emergency basis.

## VI. RESERVATION OF RIGHTS

Nothing contained herein is intended or shall be construed as (1) an admission to the validity of any claim against the Debtor; (2) a waiver of the Debtor's or any party in interest's right to dispute the amount of, basis for, or validity of any claim of any creditor or interest holder; (3) a waiver of any claims or causes of action which may exist against any creditor or interest holder; or (4) an assumption, adoption, or rejection of any agreement, contract, or lease between the Debtor and any third party pursuant to § 365. The Debtor reserves all of its rights under the Bankruptcy Code.

## VII. PROPOSED NOTICE

Notice of this Motion will be provided by email, facsimile, or overnight courier to (1) Fremont Bank; (2) the Office of the United States Trustee, Region 17; (3) the Subchapter V trustee; (4) the holders of the twenty largest unsecured claims against the Debtor; and (5) those persons who have formally appeared in this bankruptcy case and requested service pursuant to Bankruptcy Rule 2002. The Debtor submits that, in light of the nature of the relief requested, no

other or further notice is required.  No prior request for the relief sought in this Motion has been made by the Debtor to this or any other court.

## VIII.    CONCLUSION

For the reasons stated above, the Debtor requests entry of an Interim Order, substantially in the form attached as **Exhibit A**, granting the relief requested in this Motion and such other and further relief as the Court may deem just and appropriate.


Dated September 16, 2025                         FINESTONE HAYES LLP


                                                _/s/ Jennifer C. Hayes_
                                                Jennifer C. Hayes
                                                Proposed Attorneys for American Trash
                                                Management, Inc., Debtor-in-Possession

# Exhibit 2

Stephen D. Finestone (125675)
Jennifer C. Hayes (197252)
FINESTONE HAYES LLP
456 Montgomery Street, Suite 1300
San Francisco, CA 94104
Tel.:    (415) 421-2624
Fax:    (415) 398-2820
Email: sfinestone@fhlawllp.com
Email: rwitthans@fhlawllp.com

Proposed Attorneys for American Trash Management, Inc.
Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>AMERICAN TRASH MANAGEMENT, INC.,<br><br>Debtor-in-Possession. | Case No. 25-30743<br><br>Chapter 11, Subchapter V<br><br>**DEBTOR'S EMERGENCY FIRST-DAY MOTION FOR AN ORDER AUTHORIZING DEBTOR TO USE EXISTING BANK ACCOUNTS, BUSINESS FORMS, AND CASH MANAGEMENT SYSTEM[1]**<br><br>Hearing: _To be set._ |

---

[1] Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure and "B.L.R." references are to the Bankruptcy Local Rules for the Northern District of California.

## I. INTRODUCTION

Debtor-in-possession American Trash Management, Inc. (the "Debtor") submits this motion (the "Motion") on an emergency basis for entry of an order authorizing the Debtor to maintain and use its existing bank accounts, business forms, and cash management system post-petition. In connection with these requests, the Debtor also seeks a waiver of the United States Trustee's ("UST") requirement to establish a specific bank account for tax payments.

In bringing this Motion, the Debtor relies on the *Declaration of Scott Brown in Support of the Debtor's First-Day Motions* (the "Brown Declaration"), the record in this case, and other filings, evidence, and argument as may be presented at the hearing or otherwise. The factual summary provided below is brief in nature and parties are encouraged to review the more detailed description provided in the Brown Declaration.

## II. JURISDICTION AND VENUE

This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, the District Court's General Order No. 24 referring bankruptcy cases and proceedings, and B.L.R. 5011-1(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408–1409.

## III. SUMMARY OF RELIEF REQUESTED

The Debtor currently maintains the Accounts (defined below), which are general operating accounts that the Debtor uses to accept payments and make disbursements in the normal course of business, and which comprise the Debtor's cash management system. The Debtor also uses Business Forms (defined below) which may reference the Accounts. Together, these comprise the Debtor's cash management system. The Debtor's Accounts, Business Forms, and cash management system are essential to the Debtor's operations and business. To continue operating effectively post-petition, the Debtor needs continuity in its Accounts, Business Forms, and cash management system.

# IV. STATEMENT OF FACTS

## A. The Debtor's Background and Bankruptcy Filing

A detailed discussion of the Debtor's background and the events leading to its bankruptcy filing is included in the Brown Declaration, which is incorporated by reference.

## B. The Debtor's Bank Accounts, Business Forms, and Cash Management System

1. The Debtor is located in Emeryville, California. Below is a summary of the Debtor's pre-petition bank accounts.

| **Account** | **Type** | **Purpose** |
|---|---|---|
| Fremont Bank 8579 | Checking | Main Account Payroll, receive customer ACH payments and deposit customer check payments, pay bills by ACH and some by check, |
| Fremont Bank 8617 | Checking | Employee Flexible Spending Funding and Dependent Care Reimbursement account (iSolved is the administrator for employee FSA accounts ) |
| Fremont Bank 9230 | Checking | Sales Tax Holding Account |
| BMO 1282 | Checking | Receive some customer ACH payments and pay utilities |
| BMO 3383 | Checking | No longer used current balance below $100.00 |

A significant amount of the Debtor's revenue is paid via ACH transfers and the Debtor also pays many of its bills via ACH transfers. The Debtor also accepts payments from via credit card, and it has a merchant account set up and linked to its Accounts. The Debtor's Accounts allow the Debtor to manage payments from customers, disbursements to vendors, compensation to employees, and other types of financial transfers necessary to support the Debtor's ordinary operations.

Additionally, in the ordinary course of business, the Debtor uses correspondence and business forms including letterhead, purchase orders, and invoices (collectively, the "Business Forms") which may reference the Accounts.

Together, these comprise the Debtor's cash management system, which assists the Debtor in managing financial inflows and outflows, reconciling payments received, and allows control of, and visibility into, disbursements made by the Debtor, thereby allowing efficient monitoring of the Debtor's transactions.

C.      The Debtor's Proposed Post-Petition Cash Management System

The Debtor requests that it be authorized to maintain and continue the use of its existing cash management system with respect to the Accounts (including linked credit card/merchant accounts) and Business Forms as described above, subject to the following changes:

a.      The signature cards on the Debtor's Accounts will be changed to reflect the Debtor's status as a "debtor-in-possession."

b.      The Debtor will work with its banks to ensure that no pre-petition checks, claims, or offsets are honored other than as ordered by this Court.

The Debtor's cash management system with respect to the Accounts (including linked credit card/merchant accounts) and Business Forms would otherwise remain in place, subject to further orders of this Court.  Thus, the Debtor seeks a waiver of the UST requirement that the Debtor close its pre-petition accounts. *See* UST Guideline 4.4.6(b) (requiring debtors to "close all financial accounts that existed before the Chapter 11 case").

As part of the relief requested, the Debtor also seeks a waiver of the UST requirement that the Debtor establish a specific bank account for tax payments, other than the account Debtor already has for sales taxes.  *See* UST Guideline 4.4.6(a)(2) (stating that a debtor "shall maintain a separate tax account to segregate all withholding, social security (both employees' and employer's portions), . . . or other monies collected, received or withheld for or on behalf of the United States or other taxing authorities.").  The Debtor believes that its tax obligations can be paid most efficiently pursuant to its existing cash management system and that the creation of a new debtor-in-possession account designated solely for tax obligations would be redundant, unnecessary, and inefficient.

1    D.    Benefits of Using the Existing Cash Management System

2         The existing cash management system is efficient, effective, and essential to the Debtor's

3    business operations. If the Debtor's cash management system is disrupted, then the Debtor's

4    ordinary operations and ability to restructure its affairs would be significantly hindered. The

5    Debtor believes that the bankruptcy estate and its creditors would not receive any benefit if the

6    Debtor was required to stop using its existing Accounts and Business Forms and transition to

7    new ones to conduct its business.

8         To continue operating effectively post-petition, the Debtor requires continuity in its cash

9    management system. The Debtor believes that obtaining an order approving this Motion is

10   critical because, absent such order, the Debtor would need to dedicate its scarce human resources

11   to (1) open new financial accounts; (2) create new business forms; (3) inform numerous parties

12   about the new accounts to which payments should be transmitted; (4) make arrangements to pay

13   vendors and taxing authorities from the new accounts; (5) inform numerous parties about the

14   new business forms by which the Debtor would conduct its business.  Not only would this take

15   significant time and divert efforts away from the Debtor's operations and reorganization, but this

16   would also result in substantial harm to the Debtor's bankruptcy estate and its creditors.  Such a

17   dramatic shift would likely confuse the Debtor's numerous customers, disrupt the Debtor's

18   revenue flow, and prohibit the Debtor from ensuring stable day-to-day operations.  Even if the

19   Debtor's customers were instructed to send payments to new financial accounts, such change

20   would likely take weeks to complete (at minimum) and be accompanied by confusion and

21   misdirected payments.  Vendors and service providers would likely delay or cease providing

22   goods and services if the Debtor must convince them that it is continuing to operate.  These

23   effects would be harmful to the Debtor's efforts to restructure its financial affairs.

24         Alternatively, by ensuring that the Debtor's cash management system is allowed to

25   continue uninterrupted, the Debtor is confident that it will be better able to effectuate the

26   reorganization it so acutely needs.  The Debtor's Accounts (including linked credit

27   card/merchant accounts), Business Forms, and cash management are of key value to all parties in

28

interest. Preservation of the Debtor's current cash management system, subject to Court approval and the protections described in this Motion, is critical.

## V. LEGAL ARGUMENT

The Court is authorized to grant the relief requested in this Motion pursuant to § 105(a), which provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." A request for authority to continue using preexisting bank accounts and cash management systems is considered a "simple matter" and bankruptcy courts routinely grant such requests. *See In re Baldwin United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987); *In re Charter Co.*, 778 F.2d 617, 621 (11th Cir. 1985) (finding use of pre-petition cash management system "entirely consistent" with the Bankruptcy Code).

As detailed above, the continued use of the Debtor' Accounts, continued use of the Debtor's Business Forms, and continued use of the Debtor's existing cash management system will benefit the Debtor's bankruptcy estate and its creditors. It will allow for the seamless and continuous operation of the Debtor's business, ease the burden on the Debtor's workforce, and maximize the Debtor's chances of effective reorganization.

## VI. EMERGENCY CONSIDERATION REQUESTED

The Debtor respectfully requests emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a bankruptcy case "to the extent that relief is necessary to avoid immediate and irreparable harm." Without the requested relief, the exists a significant risk that the Debtor's ability to collect payments from its customers, pay vendors, and compensate its employees will be interrupted. Allowing the Debtor to maintain its pre-petition Accounts and Business Forms will prevent unnecessary disruptions in the Debtor's business operations at this critical juncture. Accordingly, the Debtor submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003. Thus, the Debtor respectfully requests that the Court consider and grant this Motion on an emergency basis.

## VII. REQUEST FOR WAIVER OF BANKRUPTCY RULE 6004

The Debtor respectfully requests a waiver of any applicable notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h). As explained above and in the Brown Declaration, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor. Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

## VIII. PROPOSED NOTICE

Notice of this Motion will be provided by email, facsimile, or overnight courier to (1) the Office of the United States Trustee, Region 17; (2) the Subchapter V trustee; (3) the holders of the twenty largest unsecured claims against the Debtor; (4) the financial institutions at which the Accounts are maintained; and (5) those persons who have formally appeared in this bankruptcy case and requested service pursuant to Bankruptcy Rule 2002. The Debtor submits that, in light of the nature of the relief requested, no other or further notice is required. No prior request for the relief sought in this Motion has been made by the Debtor to this or any other court.

## IX. CONCLUSION

For the reasons stated above, the Debtor respectfully requests entry of an order granting this Motion and allowing the Debtor to retain the use of its existing Accounts (including linked credit card/merchant accounts), Business Forms, and cash management system, and providing such other and further relief as the Court may deem just and appropriate.

Dated September 16, 2025        FINESTONE HAYES LLP

*/s/ Jennifer C. Hayes*
Jennifer C. Hayes
Proposed Attorneys for American Trash
Management, Inc.,
Debtor-in-Possession

# Exhibit 3

1 | Stephen D. Finestone (125675)
Jennifer C. Hayes (197252)
2 | FINESTONE HAYES LLP
456 Montgomery Street, Suite 1300
3 | San Francisco, CA 94104
Tel.:    (415) 421-2624
4 | Fax:    (415) 398-2820
Email: sfinestone@fhlawllp.com
5 | Email: jhayes@fhlawllp.com

6 | Proposed Attorneys for American Trash Management, Inc.
Debtor-in-Possession
7

8

9 | **UNITED STATES BANKRUPTCY COURT**

10 | **NORTHERN DISTRICT OF CALIFORNIA**

11 | **SAN FRANCISCO DIVISION**

12 | In re | Case No. 25-30743-HLB
13 | | Chapter 11, Subchapter V
14 | AMERICAN TRASH MANAGEMENT, INC., | 
15 | Debtor-in-Possession. | **DEBTOR'S EMERGENCY MOTION FOR AN ORDER AUTHORIZING PAYMENT OF PRE-PETITION EMPLOYEE OBLIGATIONS**
16 |
17 | | <u>Hearing:</u> *To be set.*

18

19

20

21

22

23

24

25

26

27

28

## I. INTRODUCTION

Debtor-in-possession American Trash Management, Inc. (the "Debtor") submits this motion (the "Motion"), on an emergency basis, for entry of an order authorizing the Debtor to pay certain outstanding pre-petition obligations to its employees (the "Pre-Petition Obligations") and granting related relief. In connection with these requests, the Debtor also seeks authorization for applicable banks and financial institutions to honor all checks and transfers made from the Debtor's accounts to the extent they relate to the Pre-Petition Obligations, if any.

In bringing this Motion, the Debtor relies on the *Declaration of Scott Brown in Support of the Debtor's First-Day Motions* (the "Brown Declaration"), the *Supplemental Declaration of Scott Brown in Support of the Motion*, the record in this case, and other filings, evidence, and argument as may be presented. The factual summary provided below is brief in nature and parties are encouraged to review the more detailed description provided in the Brown Declaration.

## II. JURISDICTION AND VENUE

This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, the District Court's General Order No. 24 referring bankruptcy cases and proceedings, and B.L.R. 5011-1(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408–1409.

## III. STATEMENT OF FACTS

### A. The Debtor's Background and Bankruptcy Filing

A detailed discussion of the Debtor's background and the events leading to its bankruptcy filing is included in the Brown Declaration, which is incorporated by reference.

### B. The Debtor's Employees

The Debtor employs approximately 53 people who are employed in the areas of sales, engineering, CAD designers, field service repair/install, welders, customer service, and administration. Twenty-nine hourly employees are paid semi-monthly, no later than the 15th and last day of each month. Twenty-four salaried employees are paid once a month, at the end of the month. End-of-month payroll includes both semi-monthly and monthly employees.

Case: 25-30743    Doc# 12    Filed: 09/17/25    Entered: 09/17/25 13:58:45    Page 23 of 28

The Debtor's employees are critical to its business operations. To minimize the impact of this Chapter 11 case on its employees, the Debtor seeks permission to pay them the pre-petition portion of their upcoming payroll and benefits in the ordinary course of Debtor's business.

C.    The Pre-Petition Obligations

The Debtor's records confirm that the Pre-Petition Obligations the Debtor is obligated to pay, or fund on account of, any individual employee (including any withholding and expense reimbursement) will not exceed the $17,150 priority cap set by the Bankruptcy Code (effective April 1, 2025) except as to three employees.[1]  As to these employees, the Debtor will limit the amount paid on account of their Pre-Petition Obligations to the $17,150 priority cap amount.

The Pre-Petition Obligations include:

1.    **Payroll and Related Obligations.**  As noted above, Debtor has a mix of hourly and salaried employees. The hourly employees are paid semi-monthly, and the salaried employees are paid once per month. As of the petition date, the Debtor was largely current on its prepetition wage obligations owing to hourly employees, having funded and paid that $80,465 obligation on September 11, 2025.  However, as shown in **Exhibit A** to the Brown Declaration, there are outstanding prepetition wage obligations as of the petition date.  The next payday in the ordinary course of business is September 26, 2025.  The Debtor estimates that the payroll for the pre-petition period is $100,734.89, and that the total estimated payroll amount for that pay period is $251,122.

2.    The Debtor uses a payroll service called Inova Payroll Inc. to process payroll (the "Payroll") and employer payroll taxes (the "Employer Payroll Taxes").  The Debtor also withholds from its employees' compensation all required federal, state, and local income taxes,

---

[1] (i) Employee #56: $4,950 in prepetition wages; $755.82 in prepetition healthcare premiums; $198.00 in retirement contribution; and $11,546.24 in accrued vacation = $17,450.06 total; (ii) Employee #148: $4,200 in prepetition wages; $1,541.42 in prepetition healthcare premiums; $168.00 in retirement contribution; and $12,061.83 in accrued vacation = $17,971.25 total; and (iii) Employee #150: $4,583.34 in prepetition wages; $3,041.53 in healthcare premiums, and $13,162.80 in accrued vacation = $20,787.67 total.

EMERGENCY MOTION TO PAY PRE-PETITION EMPLOYEE OBLIGATIONS                                    3

Social Security, and imputed taxes owing by the employees for remittance to the appropriate taxing authorities (collectively the "Employee Withholdings").

3.    **Expense Reimbursement.**  The Debtor has a policy of reimbursing its employees for reasonable and customary out-of-pocket business expenses incurred for the benefit of the Debtor in connection with their employment (the "Reimbursable Expenses").  The Reimbursable Expenses are historically nominal.  Through the Wage Motion, the Debtor seeks authority to continue these policies and to pay any employee Reimbursable Expenses accrued pre-petition, if any, in the ordinary course; however, the Debtor estimates that these costs for the pre-petition period are $0.

4.    **Child Support/Garnishment Deductions.**  Some of the Debtor's employees may be subject to child support and garnishment deductions and the Debtor regularly deducts those amounts from the affected employees and turns those funds over to the appropriate authorities (the "Child Support/Garnishment Deductions").  Debtor requests that it be allowed to continue processing same.  Child support orders and garnishment orders are at a flat rate per paid period. The Debtor estimates that these costs for the pre-petition period are approximately $1,376.

5.    **Vacation Benefits.**  The Debtor provides paid vacation to its salaried and hourly employees.  Through the Wage Motion, the Debtor seeks authority to honor any vacation benefits (the "Vacation Benefits") that accrued pre-petition in the ordinary course of business. The Debtor estimates that the benefits for the pre-petition period are $186,627.36.  A list of these Vacation Benefits is attached as **Exhibit C** to the Supplemental Brown Declaration.

6.    **Retirement Plans.**  The Debtor contracts with a retirement account service known as E.R.I.S.A. Inc., so that employees can have pre-tax funds withdrawn for retirement purposes (the "Retirement Plan").  The Debtor is informed and believes that the employer contribution amount for the Retirement Plan for the prepetition period is $2,381.88.  A list of these employer contributions is attached as **Exhibit D** to the Supplemental Brown Declaration.

7.    **Health Insurance.** The Debtor offers health insurance to its employees and bears certain associated costs (the "Health Insurance Contributions").  These costs are approximately $50,000-$55,000 per month, which is the total monthly amount payable to Kaiser, United Health

Care, Sun Life Dental, and Sun Life Vision.   A list of the Debtor's prepetition employer Health Insurance Contributions is attached as **Exhibit E** to the Supplemental Brown Declaration.

## IV.    REQUEST FOR RELIEF

As detailed above, the Debtor's employees are critical to its operations. The Debtor and its customers rely on the Debtor to provide a wide range of services. Without its employees, the Debtor would be unable to provide these services.  The employees and their families would face significant financial hardship if the Debtor could not honor the Pre-Petition Obligations. Furthermore, the Debtor's failure to honor its Pre-Petition Obligations would risk the loss of its employees, each of whom is critical to the Debtor's continued operations.

The continued services of the employees are critical to ensuring the success of the Debtor's reorganization in this Chapter 11 case.  Accordingly, the Debtor requests that the Court approve the Debtor's request to pay the Pre-Petition Obligations.

## V.    LEGAL ARGUMENT

The Court is authorized to grant the relief requested in this Motion pursuant to § 105(a), which provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Bankruptcy courts regularly invoke § 105 to authorize the payment of pre-petition wages in the ordinary course of business to prevent damage to the debtor's enterprise. *E.g.*, *In re Quality Interiors, Inc.*, 127 B.R. 391, 296 (Bankr. N.D. Ohio 1991) (pre-petition wages necessary to maintain effective work force); *In re Gulf Air, Inc.*, 112 B.R. 152 (Bankr. W.D. La. 1989) (wages, benefits, and workers' compensation premiums); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175-76 (Bankr. S.D.N.Y. 1989).

Pre-petition wages and benefits are entitled to priority under §§ 507(a)(4) and (a)(5), and the amount proposed to be paid is below the current combined $17,150 cap provided by the Bankruptcy Code,[2] except as to one employee, whose accrued prepetition wages and vacation pay total approximately $17,746.14.   The payment of the prepetition wages, accrued vacation,

---

[2] *Consol. Freightways Corp. v. Aetna, Inc. (In re Consol. Freightways Corp.)*, 564 F.3d 1161 (9th Cir. 2009) (sections 507(a)(4) and (a)(5) are intended to cover employee wages and benefits, and they share one combined cap, which is currently in the sum of $17,150).

EMERGENCY MOTION TO PAY PRE-PETITION EMPLOYEE OBLIGATIONS                                5

health benefits, and retirement plan contributions will not prejudice other creditors nor materially affect the bankruptcy estate given the small amount requested to be paid and the priority status of the claims.

## VI.  EMERGENCY CONSIDERATION REQUESTED

The Debtor requests emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a bankruptcy case "to the extent that relief is necessary to avoid immediate and irreparable harm."  Without the relief sought in this Motion, the Debtor might suffer substantial attrition at a time when the Debtor needs its employees to perform at peak efficiency. It would be difficult for the Debtor to replace such employees given the nature of the Debtor's operations and the condition of the Debtor.  Accordingly, the Debtor submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003.  Thus, the Debtor requests that the Court consider and grant this Motion on an emergency basis.

## VII.  REQUEST FOR WAIVER OF BANKRUPTCY RULE 6004

The Debtor requests a waiver of any applicable notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h).  As explained above and in the Brown Declaration, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor. Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

## VIII.  PROPOSED NOTICE

Notice of this Motion will be provided by email, facsimile, or overnight courier to (1) the Office of the United States Trustee, Region 17; (2) Fremont Bank; (3) the Subchapter V trustee; (4) the holders of the twenty largest unsecured claims against the Debtor; and (5) those persons who have formally appeared in this bankruptcy case and requested service pursuant to Bankruptcy Rule 2002.  The Debtor submits that, in light of the nature of the relief requested, no

other or further notice is required.  No prior request for the relief sought in this Motion has been made by the Debtor to this or any other court.

**IX.    CONCLUSION**

For the reasons stated above, the Debtor requests entry of an order granting this Motion and the relief requested herein, and providing such other and further relief as the Court may deem just and appropriate.

Dated September 17, 2025

FINESTONE HAYES LLP

/s/ Jennifer C. Hayes
Jennifer C. Hayes
Proposed Attorneys for American Trash
Management, Inc., Debtor-in-Possession

Case: 25-30743    Doc# 12    Filed: 09/17/25    Entered: 09/17/25 13:58:45    Page 28 of 28