Sblend A. Sblendorio (SBN 109903)
sblend.sblendorio@hogefenton.com
HOGE, FENTON, JONES & APPEL, INC.
6801 Koll Center Parkway, Suite 210
Pleasanton, California 94566-7047
Phone: 925.224.7780
Fax: 925.224.7782

Matthew B. Hale (FBN 0110600)(Pro Hac Vice)
mhale@srbp.com
STICHTER, RIEDEL, BLAIN & POSTLER, P.A.
110 E. Madison St, Suite 200
Tampa, Florida 33602-4700
Phone: 813-229-0144
Fax: 813-229-1811

Attorneys for Creditor, WHR Holdings, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>AMERICAN TRASH MANAGEMENT, INC.,<br><br>Debtor. | Case No. 25-30743<br><br>Chapter 11, Subchapter V<br><br>**OBJECTION TO DEBTOR'S SUBCHAPTER V ELIGIBILITY BY WHR HOLDINGS, LLC**<br><br><u>Hearing</u>: *To be set.* |

Creditor, WHR Holdings, LLC ("<u>WHR</u>"), submits this objection (the "<u>Objection</u>"), pursuant to Fed. R. Bankr. P. 1020(b), to the Debtor's, American Trash Management, Inc.'s, eligibility to be a debtor in a Subchapter V Chapter 11 bankruptcy case. The Debtor's liquidated, noncontingent debts far exceed the current Subchapter V debt limit of $3,424,000.00.

The Debtor was a distributor of WHR's products and, as such, regularly purchased products from WHR. WHR filed its proof of claim asserting a total amount owed of $4,858,382.45 as of the Debtor's petition date, September 15, 2025, which alone exceeds the Subchapter V debt limit. WHR's claim amount includes $2,541,832.48 in unpaid invoices issued to the Debtor, and $2,316,649.97 in unpaid interest on the outstanding balances. Aside from WHR's claim, the Debtor's schedules (Doc. No. 1) reflect another $1,820,793.35 in debt that counts towards the Subchapter V debt limit.

For the reasons discussed in the enclosed *Memorandum and Points of Authority*, WHR's claim, which is based on unpaid invoices and accrued interest, is liquidated and must be included in determining the Debtor's eligibility for Subchapter V. Taking into account WHR's claim, the Debtor is ineligible.

WHEREFORE, WHR respectfully requests that the Court enter an order (i) sustaining this Objection, (ii) finding and concluding that the Debtor is ineligible to be a debtor under Subchapter V of Chapter 11 of the Bankruptcy Code; and (iii) providing that this case must proceed as a traditional Chapter 11 case and not a Subchapter V Chapter 11 case.

DATED: November 13, 2025        STICHTER, RIEDEL, BLAIN & POSTLER, P.A.

By: /s/ Matthew B. Hale
Matthew B. Hale, Applicant and
Attorney for Creditor, WHR Holdings, LLC

DATED: November 13, 2025        HOGE, FENTON, JONES & APPEL, INC.

By: /s/*Sblend A. Sblendorio*
Sblend A. Sblendorio
Attorney for Creditor, WHR Holdings, LLC

# MEMORANDUM AND POINTS OF AUTHORITY

## Table of Contents

I.   Introduction ------------------------------------------------------------------------------- 4

II.  Jurisdiction and Venue --------------------------------------------------------------- 4

III. Statement of Facts -------------------------------------------------------------------- 4

IV.  Argument and Memorandum of Law ------------------------------------------- 7

   A.  Requirements for Subchapter V eligibility. ---------------------------------- 8

   B.  The Debtor's liquidated and noncontingent debt exceeds the Subchapter V debt limit of $3,424,000.00. ------------------------------------------------------------- 9

   C.  The Debtor has no right to setoff, and even if it does, setoff rights do not factor into the Court's eligibility determination. -------------------------------------------------- 12

V.   Conclusion ---------------------------------------------------------------------------- 13

## Table of Authorities

CASES

*In re Aparicio*, 589 B.R. 667, 676 (Bankr. E.D. Cal. 2018) ------------------------------- 12

*In re Hall*, 650 B.R. 595, 599 (Bankr. M.D. Fla. 2023) ----------------------------------- 8

*In re Heart Heating & Cooling, LLC*, No. BR 23-13019 TBM, 2024 WL 1228370, at *19 (Bankr. D. Colo. Mar. 21, 2024) ---------------------------------------------------------- 8

*In re Heart Heating & Cooling, LLC*, No. BR 23-13019 TBM, 2024 WL 1228370, at *6 (Bankr. D. Colo. Mar. 21, 2024) ---------------------------------------------------------- 9

*In re McKenzie Contracting, LLC*, No. 8:24-BK-01255-RCT, 2024 WL 3508375, at *1 (Bankr. M.D. Fla. July 19, 2024) ------------------------------------------------------------ 8

*In re McPhillips Flying Service, Inc.*, No. BT 25-02011, 2025 WL 3030284, at *1 (Bankr. W.D. Mich. Oct. 29, 2025) ------------------------------------------------------------ 8

*In re Phenomenon Mktg. & Ent., LLC*, No. 2:22-BK-10132-ER, 2022 WL 1262001, at *1 (Bankr. C.D. Cal. Apr. 28, 2022) ------------------------------------------------------ 9

*In re Quintana*, 107 B.R. 234, 240 (B.A.P. 9th Cir. 1989) ------------------------------ 12

*In re RS Air, LLC*, 638 B.R. 403, 409 (B.A.P. 9th Cir. 2022) --------------------------- 8

*In re Slack*, 187 F.3d 1070, 1073–74 (9th Cir. 1999), *as amended* (Sept. 9, 1999). -- 10

*In re Sylvester*, 19 B.R. 671, 673 (B.A.P. 9th Cir. 1982) ------------------------------- 12

FEDERAL CASES

101(51D) ------------------------------------------------------------------------------------ 8, 9

11 U.S.C. § 1182(1)(A) -------------------------------------------------------------------- 8

28 U.S.C. §§ 1408 and 1409 -------------------------------------------------------------- 4

28 U.S.C. §§ 157 and 1334 --------------------------------------------------------------- 4

## I. Introduction

Creditor, WHR Holdings, LLC ("WHR"), objects to the Debtor's, American Trash Management, Inc.'s, eligibility to be a debtor in a Subchapter V Chapter 11 bankruptcy case. The Debtor's liquidated, noncontingent debts far exceed the current Subchapter V debt limit of $3,424,000.00.

The Debtor was a distributor of WHR's products and, as such, regularly purchased products from WHR. WHR filed its proof of claim asserting a total amount owed of $4,858,382.45 as of the Debtor's petition date, September 15, 2025, which alone exceeds the Subchapter V debt limit. WHR's claim amount includes $2,541,832.48 in unpaid invoices issued to the Debtor, and $2,316,649.97 in unpaid interest on the outstanding balances. WHR's claim is liquidated, in that it is capable of ready determination, and must be included in determining the Debtor's eligibility for Subchapter V. Taking into account WHR's claim, the Debtor is ineligible.

As support for this Objection, WHR submits the Declaration of Charlton George in Support of the Objection to Debtor's Subchapter V Eligibility by WHR Holdings, LLC, which is being filed contemporaneous with this Objection (the "George Declaration"). WHR also relies on the record in this case and the Debtor's filings, in addition to other evidence as may be introduced at an evidentiary hearing as necessary.

## II. Jurisdiction and Venue

This Court has jurisdiction to consider this Objection pursuant to 28 U.S.C. §§ 157 and 1334 and the District Court's General Order No. 24 referring bankruptcy cases and proceedings to this Court. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## III. Statement of Facts

On September 15, 2025 (the "Petition Date"), American Trash Management, Inc. (the "Debtor") filed a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "Bankruptcy Court"), specifically electing to proceed under Subchapter V.

WHR Holdings, LLC, d/b/a Wilkinson Hi-Rise, designs, manufactures, sells, installs, and services trash chute systems that are commonly installed in mid-rise and hi-rise buildings. WHR is regarded as the industry leader in trash chute systems throughout North America and internationally. WHR also offers

other products which are used in commercial, residential, and institutional buildings. WHR's products include, among other things, trash chutes, doors, compactors, linen chutes, doors, storage lockers, and mailboxes (collectively, the "Products"). (George Decl. ¶ 2).

WHR has commercial relationships with representatives/distributors in various states and foreign countries who sell, install, service, and/or maintain the Products in designated territories. WHR sells the Products and parts for service and repair to its distributors and also offers its engineering services, product support, and training for distributors. (George Decl. ¶ 3).

On October 1, 2007, WHR, the Debtor, and Scott Brown ("Brown") entered into that certain Sale, Assignment, Exclusive Manufacturer's Representative and Authorized Service Provider Agreement (the "Agreement"), pursuant to which WHR appointed the Debtor as WHR's exclusive manufacturer's representative and authorized service provider to sell and service WHR's Products in the Territory (defined in the Agreement to mean southern California south of Bakersfield, California) and as WHR's non-exclusive manufacturer's representative and authorized service provider to sell and service WHR's products north of Bakersfield, California. (George Decl. ¶ 4). In the Agreement, the Debtor also agreed that WHR would be the exclusive supplier of the Products to the Debtor. (*Id.*). A copy of the Agreement is attached as **Exhibit A** to the George Declaration.

Under the Agreement, the Debtor, from time to time, would submit a purchase order to WHR for a specific job detailing the Products needed, the parties would agree on pricing for that job, and WHR would manufacture the Products and ship them to the Debtor with a corresponding invoice. (George Decl. ¶ 5). Pursuant to Section 3(g) of the Agreement, the Debtor was required to pay WHR for the Products within thirty (30) days after shipment of the Products. (*Id.* § 3(g)). In addition, under Section 3(g) of the Agreement, invoices that were not paid within thirty (30) days after shipment of the Products were subject to a service charge of 1.5% per month until such time as the invoice was paid in full. (*Id.*) Section 3(i) of the Agreement further provided that any Product not rejected by the Debtor within thirty (30) days of receipt of that Product by the Debtor would be deemed accepted by the Debtor. (*Id.* § 3(i)).

Throughout WHR's relationship with the Debtor, the Debtor has consistently failed to timely pay WHR's invoices, often *years* after the due date on the invoice. (George Decl. ¶ 6). In many cases, the Debtor failed to pay at all. (*Id.*)

In January 2024, WHR and the Debtor met in Florida in an attempt to resolve the past due amounts owed by the Debtor to WHR under the Agreement. (George Decl. ¶ 7). On January 1, 2024, WHR and the Debtor, through Brown, its President, executed an agreement (the "January 2024 Agreement") whereby the parties confirmed that the then outstanding amount due and owing from the Debtor to WHR under the Agreement was $4.2 million. (*Id.*). A copy of the January 2024 Agreement is attached as **Exhibit B** to the George Declaration.

After efforts to finalize the documentation on the agreed past due balance failed, on July 5, 2024, WHR filed a complaint (the "Complaint") against the Debtor in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida, for breach of the Agreement by the Debtor for failure to pay for Products shipped and delivered and invoiced by WHR to the Debtor and seeking collection of approximately $1.9 million for Products shipped and delivered and invoiced to the Debtor plus accrued and unpaid interest permitted under the Agreement. (George Dec. ¶ 8). A copy of the Complaint (without Exhibits) is attached as **Exhibit C** to the George Declaration.

On July 22, 2025, WHR delivered a letter (the "July 22 Letter") to the Debtor and Brown terminating the Agreement for "Cause" (as that term is defined in the Agreement). (George Decl. ¶ 9). In the July 22 Letter, WHR also advised the Debtor and Brown that, as a result of the termination of the Agreement for Cause pursuant to Section 8(g)(iii) of the Agreement, the Debtor and Brown, individually, were subject to the noncompetition provisions set forth in Section 8(g) of the Agreement. (*Id.*) To date, neither the Debtor nor Brown has objected to or disputed any of the statements in the July 22 Letter. A copy of the July 22 Letter is attached as **Exhibit D** to the George Declaration.

On August 25, 2025, in response to multiple statements from the Debtor that it intended to file for bankruptcy under Subchapter V, WHR delivered a letter (the "August 25 Letter") to the Debtor and Brown setting forth in detail the amount due to WHR by the Debtor under the Agreement as of August 1, 2025, which was $4,728,801.81 (the "August 1 Claim Amount"). (George Decl. ¶ 10). The August 1 Claim Amount was comprised of $2,541,732.48 due and owing for Products shipped and delivered and invoiced to the Debtor and $2,187,069.33 for accrued and unpaid interest on the unpaid amounts. (*Id.*) The August 25 Letter attached a summary accounts receivable report that showed the detail for the calculation of the August 1 Claim Amount, including (i) the total amounts invoiced and collected for the period from 2010

to 2025, leaving the invoiced amount of $2,541,732.48 unpaid, and (ii) the interest calculated on the unpaid amounts. (*Id.*) All of the invoices comprising the August 1 Claim Amount have been provided by WHR to the Debtor. (*Id.*) The August 1 Claim Amount was fully liquidated as it was readily ascertainable pursuant to the express contractual terms in the Agreement. (*Id.*) The August 1 Claim Amount does not include attorneys' fees and costs that WHR is entitled to collect from the Debtor under the Agreement. (*Id.*) To date, neither the Debtor nor Brown has objected to or disputed any of the statements in the August 25 Letter. (*Id.*) A copy of the August 25 Letter is attached as **Exhibit E** to the George Declaration.

On November 5, 2025, WHR filed a proof of claim in the Debtor's Chapter 11 case, designated as Claim No. 19 in the claims register (the "Claim"). (George Decl. ¶ 11). As set forth in the Claim, as of September 14, 2025 (the day preceding the Petition Date), WHR's total claim amount is not less than **$4,858,382.45** (the "Claim Amount"). (*Id.*) The Claim Amount is comprised of $2,541,732.48 due and owing for Products shipped and delivered and invoiced to the Debtor and $2,316,649.97 for accrued and unpaid interest on the unpaid amounts. (*Id.*) A copy of the Claim is attached as **Exhibit F** to the George Declaration.

Attached as **Exhibit G** to the George Declaration is a summary accounts receivable report that shows the detail for the calculation of the Claim Amount, including (i) the total amounts invoiced and collected for the period from 2010 to 2025, leaving the invoiced amount of $2,541,732.48 unpaid, and (ii) the interest calculated on the unpaid amounts. (George Decl. ¶ 12). All of the invoices comprising the Claim Amount have been provided by WHR to the Debtor. (*Id.*) The Claim Amount is fully liquidated as it is readily ascertainable pursuant to the express contractual terms in the Agreement. (*Id.*) The Claim Amount does not include attorneys' fees and costs that WHR is entitled to collect from the Debtor under the Agreement. (*Id.*) The Debtor has not disputed or objected to any of the invoiced amounts or any portion of the Claim Amount. (*Id.*)

## IV. Argument and Memorandum of Law

WHR objects to the Debtor's eligibility to be a Subchapter V debtor pursuant to Fed. R. Bankr. P. 1020(b), which provides that "[t]he United States trustee or a party in interest may object to the debtor's [Subchapter V] designation." Fed. R. Bankr. P. 1020(b). The deadline to object to a debtor's Subchapter

V designation is "30 days after the conclusion of the meeting of creditors held under § 341(a)." The meeting of creditors in this case was held and concluded on October 29, 2025. Thus, this Objection is timely filed.

**A. Requirements for Subchapter V eligibility.**

Under the Small Business Reorganization Act of 2019, Congress authorized eligible persons to avail themselves of a streamlined Chapter 11 bankruptcy process designed to provide relief to small businesses, designated as "Subchapter V" of Chapter 11 of the Bankruptcy Code. *In re RS Air, LLC*, 638 B.R. 403, 409 (B.A.P. 9th Cir. 2022). Section 1182(1)(A) of the Bankruptcy Code defines "debtor" for purposes of Subchapter V, which in turn incorporates the definition of "small business debtor" in Section 101(51D) of the Bankruptcy Code. *See* 11 U.S.C. § 1182(1)(A) & 101(51D).

A debtor is eligible to elect subchapter V if the debtor: (1) is a "person"; (2) is "engaged in commercial or business activities;" (3) does not have aggregate noncontingent, liquidated debts in excess of the debt limit on the petition date; and (4) at least 50 percent of the debtor's debts arose from its commercial or business activities. *Id.* (quoting 11 U.S.C. § 1182(1)(A)).

WHR objects to eligibility because the Debtor's "aggregate noncontingent liquidated secured and unsecured debts" exceeds the current Subchapter V debt limit of $3,424,000. 11 U.S.C. § 101(51D); *see In re McPhillips Flying Service, Inc.*, No. BT 25-02011, 2025 WL 3030284, at *1 (Bankr. W.D. Mich. Oct. 29, 2025) (referencing current Subchapter V debt limit of $3,424,000). If a debt is noncontingent and liquidated, a debtor's dispute over liability for the debt will not exclude the debt from calculation for Subchapter V eligibility. *See In re Hall*, 650 B.R. 595, 599 (Bankr. M.D. Fla. 2023) ("Under the plain language of 11 U.S.C. § 1182, disputed debts are not excluded from the [Subchapter V] debt limit."); *In re Heart Heating & Cooling, LLC*, No. BR 23-13019 TBM, 2024 WL 1228370, at *19 (Bankr. D. Colo. Mar. 21, 2024) (stating that "the Section 1182(1)(A) calculation includes disputed debts.")

Although the Bankruptcy Code and Bankruptcy Rules do not specify which party bears the burden of proof on Subchapter V eligibility, "a significant majority of courts conclude that the debtor bears the burden of proof for Subchapter V eligibility by a preponderance of the evidence." *In re McKenzie Contracting, LLC*, No. 8:24-BK-01255-RCT, 2024 WL 3508375, at *1 (Bankr. M.D. Fla. July 19, 2024); *In re Phenomenon Mktg. & Ent., LLC*, No. 2:22-BK-10132-ER, 2022 WL 1262001, at *1 (Bankr. C.D.

Cal. Apr. 28, 2022) ("The Debtor bears the burden of proof to establish eligibility to proceed under Subchapter V."); *In re Heart Heating & Cooling, LLC*, No. BR 23-13019 TBM, 2024 WL 1228370, at *6 (Bankr. D. Colo. Mar. 21, 2024) (holding that the debtor bears the burden of proof on Subchapter V eligibility).

### B. The Debtor's liquidated and noncontingent debt exceeds the Subchapter V debt limit of $3,424,000.00.

The Debtor's eligibility for Subchapter V turns on WHR's Claim Amount. WHR filed its Claim in the amount of $4,858,382.45, which standing alone exceeds the Subchapter V debt limit of $3,424,000.00. WHR's claim is liquidated and noncontingent, and when combined with the Debtor's other liquidated and noncontingent debt, results in the Debtor being far over the debt limit and ineligible for Subchapter V.

The Debtor's schedules (Doc. No. 1) (the "Schedules") reflect total secured, priority unsecured, and general unsecured claims in the amount of $3,975,652.35. This includes secured debt of $599,529.00, priority unsecured claims of $468,846.34, and general unsecured debt of $2,907,277.01. The Schedules include a debt owed to Brown, the Debtor's 100% shareholder, for $271,000. Insider claims are excluded for purposes of determining whether a debtor is over the Subchapter V debt limit. *See* 11 U.S.C. § 101(51D). As for WHR, the Debtor's unsecured debt total includes a debt owed to WHR for $1,883,859.00, which the Debtor marked as "unliquidated" and "disputed." (Schedules, Doc. No. 1, at page 135 of 186).

Based on the Debtor's Schedules, and taking into account the Debtor's aggregate debt, but for marking WHR's debt as "unliquidated," the Debtor would be over the Subchapter V debt limit. The Debtor's total scheduled debt of $3,975,652.35, less Mr. Brown's insider claim, results in a total of $3,704,652.35. Removing the Debtor's scheduled claim for WHR of $1,883,859.00 results in a total of $1,820,793.35. Subtracting $1,820,793.35 from the Subchapter V debt limit of $3,424,000.00, results in a total of $1,603,206.65. Thus, if WHR's liquidated, noncontingent claim exceeds $1,603,206.65, the Debtor is not eligible for Subchapter V.

WHR's Claim is, in fact, liquidated, noncontingent, and far exceeds $1,603,206.65. First, the Debtor did not mark WHR's claim as contingent; the Debtor only marked WHR's claim as unliquidated

and disputed. As discussed above, a Debtor's dispute as to liability does not exclude the debt from the Subchapter V calculation. Thus, the only issue before the Court is whether WHR's Claim is liquidated and whether its liquidated Claim amount exceeds $1,603,206.65.

The question of whether a debt is liquidated "turns on whether it is subject to ready determination and precision in computation of the amount due." *In re Slack*, 187 F.3d 1070, 1073–74 (9th Cir. 1999), *as amended* (Sept. 9, 1999). Under the Ninth Circuit's "readily determinable" standard:

> [I]f the amount of the creditor's claim at the time of the filing the petition is ascertainable with certainty, a dispute regarding liability will not necessarily render a debt unliquidated. Whether the debt is subject to "ready determination" will depend on whether the amount is easily calculable or whether an extensive hearing will be needed to determine the amount of the debt, or the liability of the debtor. Therefore, the mere assertion by the debtor that he is not liable for the claim will not render the debt unliquidated for the purposes of calculating eligibility under § 109(e).

*Id.* at 1074 (internal citations omitted).

WHR's Claim is liquidated. The Claim is based on unpaid invoices for Products together with accrued and unpaid interest assessed under the Agreement between the Debtor and WHR. The invoice amounts are clear from the face of each invoice, and the amount paid by the Debtor is readily determinable from WHR's accounting records reflecting payments received by the Debtor. WHR has provided copies of all invoices to the Debtor. Further, the calculation of accrued interest in unpaid invoices is a simple mathematical formula that is readily determinable. The Agreement provides that "[a]ny invoiced amount not paid when due shall be subject to a service charge of 1.5% per month." (Agreement § 3(g)).

The chart below summarizes WHR's Claim, as of the Petition Date, broken down by amount owed year-by-year dating back to 2010:

|  | Invoiced Amount | Collected | Unpaid Invoiced Amount (excludes interest) | Simple Interest Calculated to Date Invoice paid |
|---|---|---|---|---|
| 2010 | 56,793.61 | 56,793.61 | - | 13,718.12 |
| 2011 | 163,851.36 | 163,851.36 | - | 2,436.19 |
| 2012 | 368,452.79 | 368,452.79 | - | 4,662.22 |

| Year | | | | |
|---|---|---|---|---|
| 2013 | 938,283.96 | 938,283.96 | - | 34,982.90 |
| 2014 | 518,949.49 | 431,193.64 | 87,755.85 | 345,954.94 |
| 2015 | 1,116,249.84 | 1,085,507.89 | 30,741.95 | 143,991.51 |
| 2016 | 1,051,697.79 | 1,051,697.79 | - | 188,050.69 |
| 2017 | 726,740.49 | 726,740.49 | - | 96,554.56 |
| 2018 | 851,780.60 | 851,780.60 | - | 42,229.57 |
| 2019 | 1,455,346.80 | 1,455,346.80 | - | 55,486.75 |
| 2020 | 1,679,232.25 | 1,598,482.00 | 80,750.25 | 159,587.94 |
| 2021 | 2,072,736.85 | 1,641,036.00 | 431,700.85 | 461,099.64 |
| 2022 | 1,168,068.96 | 489,924.05 | 678,144.91 | 414,115.21 |
| 2023 | 1,482,412.28 | 1,073,201.68 | 409,210.60 | 199,046.60 |
| 2024 | 1,620,608.89 | 834,702.02 | 785,906.87 | 151,784.13 |
| 2025 | 304,860.95 | 267,339.75 | 37,521.20 | 2,948.99 |
| | | Totals: | 2,541,732.48 | 2,316,649.97 |
| | | Total Claim: | 4,858,382.45 | |

(George Declaration ¶ 13).

In summary, even including *only* the unpaid invoice amount—excluding contractual interest—from just 2021 through 2025, results in an amount owed by the Debtor to WHR of $2,342,484.43, which by itself results in the Debtor being ineligible for Subchapter V. Further, WHR's Claim is *prima facie* valid and signed under oath. Fed. R. Bankr. P. 3001(f).

Further, the Debtor executed the January 2024 Agreement between the Debtor and WHR, through which the Debtor agreed to sign a promissory note "exchanging the Parts Sales and oldest project receivables totaling $1M plus the past due interest of $3.2M into a Senior Note . . . ." (George Decl. Ex. B). Thus, as of January 4, 2024, the Debtor agreed that it owed, at minimum, $1 million to WHR (on account of "Parts Sales and oldest project receivables"), plus $3.2 million in "past due interest." (*Id.*)

The WHR claim amount the Debtor used for its schedules, $1,883,859.79, was pulled from the Complaint WHR filed against the Debtor in June 2024. (*See* George Decl. Ex. C, at ¶ 16). As illustrated by the summary above, the Debtor amassed an unpaid invoice balance of $785,906.87 in 2024 alone, which was not fully captured by the amount in the Complaint. Additionally, WHR's Complaint did not include interest in this figure, but rather reserved on the computation of interest.

WHR's Claim Amount is subject to ready determination based upon a simple review of WHR's accounting records, the invoices, amounts paid to WHR by the Debtor, and calculation of simple interest.

WHR's Claim is liquidated and must be accounted for in determining the Debtor's eligibility for Subchapter V. Because the Debtor's liquidated, noncontingent debts exceed the $3,424,000 threshold, the Debtor is ineligible for Subchapter V.

**C. The Debtor has no right to setoff, and even if it does, setoff rights do not factor into the Court's eligibility determination.**

The Debtor, in its Schedules and its first-day filings, has alleged that it has rights of setoff that would conceivably reduce the amount owed by the Debtor to WHR. This argument is misplaced. First, as a factual matter, the Agreement between WHR and the Debtor placed clear limits on the Debtor's rights to reject Products. Second, as a legal matter, an alleged right to setoff does not negate the amount owed to a creditor for purposes of determining a creditor's liquidated claim amount.

Section 3(i) of the Agreement provided that any Product not rejected by the Debtor within thirty (30) days of receipt of that Product by the Debtor would be deemed accepted by the Debtor. The Debtor never provided any notice to WHR of its rejection of any specific Products within 30 days of receipt of that Product. (George Decl. ¶ 5). Additionally, under the Agreement, WHR expressly disclaimed express or implied warranties as to the Products, including the warranties of fitness for a particular purpose, their quality, and their merchantability. (George Decl. Ex. A § 5(b)). The only warranty provided under the agreement was a standard limited warranty passed along to the Debtor's customers. (*Id.* at § 5(a)). The Debtor has no basis to assert any setoff claim.

Even if the Debtor did have some right of setoff, any setoff rights would not render WHR's Claim unliquidated. "The right of setoff — even if it exceeds the amount and therefore negates the amount owed a creditor — does not make a liquidated debt unliquidated." *In re Aparicio*, 589 B.R. 667, 676 (Bankr. E.D. Cal. 2018) (citations omitted); *see also In re Quintana*, 107 B.R. 234, 240 (B.A.P. 9th Cir. 1989), *aff'd*, 915 F.2d 513 (9th Cir. 1990) (holding that counterclaim could not be applied to set-off and reduce the debtor's debt for Chapter 12 eligibility); *In re Sylvester*, 19 B.R. 671, 673 (B.A.P. 9th Cir. 1982) (holding that setoff claim does not apply to reduce a debt for purposes of eligibility for Chapter 13).

The Debtor does not have any setoff defense against WHR's Claim, and even if did, such a defense should not be applied to reduce the amount of WHR's liquidated Claim Amount for purposes of determining the Debtor's eligibility for Subchapter V.

## V. Conclusion

In summary, the Debtor's liquidated, noncontingent debt exceeds the Subchapter V debt limit of $3,424,000.00. This Court should sustain WHR's Objection and determine that the Debtor is not eligible to be a debtor under Subchapter V.

WHEREFORE, WHR respectfully requests that the Court enter an order (i) sustaining this Objection, (ii) finding and concluding that the Debtor is ineligible to be a debtor under Subchapter V of Chapter 11 of the Bankruptcy Code, and (iii) providing that this case must proceed as a traditional Chapter 11 case and not a Subchapter V Chapter 11 case.

DATED: November 13, 2025　　　　　　　STICHTER, RIEDEL, BLAIN & POSTLER, P.A.

By: /s/ Matthew B. Hale
Matthew B. Hale, Applicant and
Attorney for Creditor, WHR Holdings, LLC

DATED: November 13, 2025　　　　　　　HOGE, FENTON, JONES & APPEL, INC.

By: /s/*Sblend A. Sblendorio*
Sblend A. Sblendorio
Attorney for Creditor, WHR Holdings, LLC