1  Sblend A. Sblendorio (SBN 109903)
   sblend.sblendorio@hogefenton.com
2  HOGE, FENTON, JONES & APPEL, INC.
   6801 Koll Center Parkway, Suite 210
3  Pleasanton, California 94566-7047
   Phone: 925.224.7780
4  Fax: 925.224.7782

5  Remington Lenton-Young (SBN 295392)
   remington.lenton-young@hogefenton.com
6  HOGE, FENTON, JONES & APPEL, INC.
   55 S. Market St., Suite 900
7  San Jose, California 95113
   Phone:  408.287.9501
8  Fax:  408.287.2583

9  Matthew B. Hale (FBN 0110600)(Pro Hac Vice)
   mhale@srbp.com
10 STICHTER, RIEDEL, BLAIN & POSTLER, P.A.
   110 E. Madison St, Suite 200
11 Tampa, Florida 33602-4700
   Phone: 813-229-0144
12 Fax:  813-229-1811

13 Attorneys for Creditor, WHR Holdings, LLC

14                    UNITED STATES BANKRUPTCY COURT

15      NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

16

17 | In re | Case No. 25-30743 |

18 | AMERICAN TRASH MANAGEMENT, INC., | Chapter 11, Subchapter V |

19 |                  | **AMENDED OBJECTION TO DEBTOR'S SUBCHAPTER V ELIGIBILITY BY WHR HOLDINGS, LLC** |

20 |        Debtor. |  |

21 |  | Hearing: January 22, 2026
      Time:      10:00 a.m. |

22 |  | Ctrm:     Via Zoom or In-Person, at
                 Courtroom 19, 450 Golden Gate |

23 |  |           Ave., 16th Floor, San Fransisco,    CA |

24

25

26

27

28

Case: 25-30743    Doc# 80    Filed: 12/23/25    Entered: 12/23/25 15:58:39    Page 1 of 17
-1-
AMENDED OBJECTION TO DEBTOR'S SUBCHAPTER V ELIGIBILITY

Creditor, WHR Holdings, LLC ("WHR"), submits this amended objection (the "Objection"), pursuant to Fed. R. Bankr. P. 1020(b), to the Debtor's, American Trash Management, Inc.'s, eligibility to be a debtor in a Subchapter V Chapter 11 bankruptcy case. The Debtor's liquidated, noncontingent debts far exceed the current Subchapter V debt limit of $3,424,000.00.

The Debtor was a distributor of WHR's products and, as such, regularly purchased products from WHR. WHR filed an amended proof of claim asserting a total amount owed of $3,819,645.46 as of the Debtor's petition date, September 15, 2025, which alone exceeds the Subchapter V debt limit. WHR's claim amount includes $1,668,336.28 in unpaid invoices issued to the Debtor, and $2,151,309.18 in unpaid contractual interest. Aside from WHR's claim, the Debtor's schedules (Doc. No. 1) reflect another $1,820,793.35 in debt that counts towards the Subchapter V debt limit.

For the reasons discussed in the enclosed *Memorandum and Points of Authority*, WHR's claim, which is based on unpaid invoices and accrued contractual interest, is liquidated and must be included in determining the Debtor's eligibility for Subchapter V. Taking into account WHR's claim, the Debtor is ineligible.

WHEREFORE, WHR respectfully requests that the Court enter an order (i) sustaining this Objection, (ii) finding and concluding that the Debtor is ineligible to be a debtor under Subchapter V of Chapter 11 of the Bankruptcy Code; and (iii) providing that this case must proceed as a traditional Chapter 11 case and not a Subchapter V Chapter 11 case.

DATED:  December 23, 2025                STICHTER, RIEDEL, BLAIN & POSTLER, P.A.


By:   /s/ Matthew B. Hale
      Matthew B. Hale, Applicant and
      Attorney for Creditor, WHR Holdings, LLC

2

AMENDED OBJECTION TO DEBTOR'S SUBCHAPTER V ELIGIBILITY

DATED: December 23, 2025              HOGE, FENTON, JONES & APPEL, INC.


                                      By:   /s/*Sblend A. Sblendorio*
                                            Sblend A. Sblendorio
                                            Attorney for Creditor, WHR Holdings, LLC

AMENDED OBJECTION TO DEBTOR'S SUBCHAPTER V ELIGIBILITY

## Table of Contents

MEMORANDUM AND POINTS OF AUTHORITY------------------------------------------------------------------- 1

I.    Introduction --------------------------------------------------------------------------------------------- 1

II.    Jurisdiction and Venue ------------------------------------------------------------------------------- 1

III.    Statement of Facts-------------------------------------------------------------------------------------- 1

IV.    Argument and Memorandum of Law ------------------------------------------------------------- 5

   A.   Requirements for Subchapter V eligibility. ---------------------------------------------------- 6

   B.  The Debtor's liquidated and noncontingent debt exceeds the Subchapter V debt limit of
       $3,424,000.00. ------------------------------------------------------------------------------------------- 7

   C.  The Debtor has no right to setoff, and even if it does, setoff rights do not factor into the Court's
       eligibility determination. ----------------------------------------------------------------------------- 10

V.    Conclusion -------------------------------------------------------------------------------------------- 11

AMENDED OBJECTION TO DEBTOR'S SUBCHAPTER V ELIGIBILITY

# Table of Authorities

C<small>ASES</small>

*In re Aparicio*, 589 B.R. 667, 676 (Bankr. E.D. Cal. 2018)--------------------------------------------------------------- 11
*In re Hall*, 650 B.R. 595, 599 (Bankr. M.D. Fla. 2023) -----------------------------------------------------------------6
*In re Heart Heating & Cooling, LLC*, No. BR 23-13019 TBM, 2024 WL 1228370, at *19 (Bankr. D. Colo. Mar. 21, 2024) --6
*In re Heart Heating & Cooling, LLC*, No. BR 23-13019 TBM, 2024 WL 1228370, at *6 (Bankr. D. Colo. Mar. 21, 2024)----7
*In re McKenzie Contracting, LLC*, No. 8:24-BK-01255-RCT, 2024 WL 3508375, at *1 (Bankr. M.D. Fla. July 19, 2024)-----7
*In re McPhillips Flying Service, Inc.*, No. BT 25-02011, 2025 WL 3030284, at *1 (Bankr. W.D. Mich. Oct. 29, 2025)---------6
*In re Phenomenon Mktg. & Ent., LLC*, No. 2:22-BK-10132-ER, 2022 WL 1262001, at *1 (Bankr. C.D. Cal. Apr. 28, 2022) -7
*In re Quintana*, 107 B.R. 234, 240 (B.A.P. 9th Cir. 1989) ------------------------------------------------------------- 11
*In re RS Air, LLC*, 638 B.R. 403, 409 (B.A.P. 9th Cir. 2022) -----------------------------------------------------------6
*In re Slack*, 187 F.3d 1070, 1073–74 (9th Cir. 1999), *as amended* (Sept. 9, 1999).-------------------------------------8
*In re Sylvester*, 19 B.R. 671, 673 (B.A.P. 9th Cir. 1982) --------------------------------------------------------- 11

F<small>EDERAL</small> C<small>ASES</small>

101(51D)----------------------------------------------------------------------------------------------------------- 6, 7
11 U.S.C. § 1182(1)(A)----------------------------------------------------------------------------------------------6
28 U.S.C. §§ 1408 and 1409----------------------------------------------------------------------------------------------1
28 U.S.C. §§ 157 and 1334 ----------------------------------------------------------------------------------------------1

AMENDED OBJECTION TO DEBTOR'S SUBCHAPTER V ELIGIBILITY

# MEMORANDUM AND POINTS OF AUTHORITY

## I.      Introduction

Creditor, WHR Holdings, LLC ("WHR"), objects to the Debtor's, American Trash Management, Inc.'s, eligibility to be a debtor in a Subchapter V Chapter 11 bankruptcy case. The Debtor's liquidated, noncontingent debts far exceed the current Subchapter V debt limit of $3,424,000.00.

The Debtor was a distributor of WHR's products and, as such, regularly purchased products from WHR. WHR filed its amended proof of claim asserting a total amount owed of $3,819,645.45 as of the Debtor's petition date, September 15, 2025, which alone exceeds the Subchapter V debt limit. WHR's claim amount includes $1,668,336.28 in unpaid invoices issued to the Debtor, and $2,151,309.18 in unpaid contractual interest. WHR's claim is liquidated, in that it is capable of ready determination, and must be included in determining the Debtor's eligibility for Subchapter V. Taking into account WHR's claim, the Debtor is ineligible.

As support for this Objection, WHR submits the Declaration of Charlton George in Support of the Amended Objection to Debtor's Subchapter V Eligibility by WHR Holdings, LLC, which is being filed contemporaneously with this Objection (the "George Declaration"). WHR also relies on the record in this case and the Debtor's filings, in addition to other evidence as may be introduced at an evidentiary hearing as necessary.

## II.     Jurisdiction and Venue

This Court has jurisdiction to consider this Objection pursuant to 28 U.S.C. §§ 157 and 1334 and the District Court's General Order No. 24 referring bankruptcy cases and proceedings to this Court. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.    Statement of Facts

On September 15, 2025 (the "Petition Date"), American Trash Management, Inc. (the "Debtor") filed a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "Bankruptcy Court"), specifically electing to proceed under Subchapter V.

AMENDED OBJECTION TO DEBTOR'S SUBCHAPTER V ELIGIBILITY

WHR Holdings, LLC, d/b/a Wilkinson Hi-Rise, designs, manufactures, sells, installs, and services trash chute systems that are commonly installed in mid-rise and hi-rise buildings. WHR is regarded as the industry leader in trash chute systems throughout North America and internationally. WHR also offers other products which are used in commercial, residential, and institutional buildings. WHR's products include, among other things, trash chutes, doors, compactors, linen chutes, doors, storage lockers, and mailboxes (collectively, the "Products"). (George Decl. ¶ 2).

WHR has commercial relationships with representatives/distributors in various states and foreign countries who sell, install, service, and/or maintain the Products in designated territories. WHR sells the Products and parts for service and repair to its distributors and also offers its engineering services, product support, and training for distributors. (George Decl. ¶ 3).

On October 1, 2007, WHR, the Debtor, and Scott Brown ("Brown") entered into that certain Sale, Assignment, Exclusive Manufacturer's Representative and Authorized Service Provider Agreement (the "Agreement"), pursuant to which WHR appointed the Debtor as WHR's exclusive manufacturer's representative and authorized service provider to sell and service WHR's Products in the Territory (defined in the Agreement to mean southern California south of Bakersfield, California) and as WHR's non-exclusive manufacturer's representative and authorized service provider to sell and service WHR's products north of Bakersfield, California. (George Decl. ¶ 4). In the Agreement, the Debtor also agreed that WHR would be the exclusive supplier of the Products to the Debtor. (*Id.*). A copy of the Agreement is attached as **Exhibit A** to the George Declaration.

Under the Agreement, the Debtor, from time to time, would submit a purchase order to WHR for a specific job detailing the Products needed, the parties would agree on pricing for that job, and WHR would manufacture the Products and ship them to the Debtor with a corresponding invoice. (George Decl. ¶ 5). Pursuant to Section 3(g) of the Agreement, the Debtor was required to pay WHR for the Products within thirty (30) days after shipment of the Products. (*Id.* § 3(g)). In addition, under Section 3(g) of the Agreement, invoices that were not paid within thirty (30) days after shipment of the Products were subject to a service charge of 1.5% per month until such time as the invoice was paid in full. (*Id.*) Section 3(i) of

2

AMENDED OBJECTION TO DEBTOR'S SUBCHAPTER V ELIGIBILITY

the Agreement further provided that any Product not rejected by the Debtor within thirty (30) days of receipt of that Product by the Debtor would be deemed accepted by the Debtor. (*Id.* § 3(i)).

Throughout WHR's relationship with the Debtor, the Debtor has consistently failed to timely pay WHR's invoices, often *years* after the due date on the invoice. (George Decl. ¶ 6). In many cases, the Debtor failed to pay at all. (*Id.*)

In January 2024, WHR and the Debtor met in Florida in an attempt to resolve the past due amounts owed by the Debtor to WHR under the Agreement. (George Decl. ¶ 7). On January 1, 2024, WHR and the Debtor, through Brown, its President, executed an agreement (the "January 2024 Agreement") whereby the parties confirmed that the then outstanding amount due and owing from the Debtor to WHR under the Agreement was $4.2 million, exclusive of newer receivables totaling approximately $1 million that were to be managed and collected separately from the note contemplated by the January 2024 Agreement. (*Id.*). A copy of the January 2024 Agreement is attached as **Exhibit B** to the George Declaration.

After efforts to finalize the documentation on the agreed past due balance failed, on July 5, 2024, WHR filed a complaint (the "Complaint") against the Debtor in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida, for breach of the Agreement by the Debtor for failure to pay for Products shipped and delivered and invoiced by WHR to the Debtor and seeking collection of approximately $1.9 million for Products shipped and delivered and invoiced to the Debtor plus accrued and unpaid contractual interest permitted under the Agreement. (George Dec. ¶ 8). A copy of the Complaint (without Exhibits) is attached as **Exhibit C** to the George Declaration.

On July 22, 2025, WHR delivered a letter (the "July 22 Letter") to the Debtor and Brown terminating the Agreement for "Cause" (as that term is defined in the Agreement). (George Decl. ¶ 9). In the July 22 Letter, WHR also advised the Debtor and Brown that, as a result of the termination of the Agreement for Cause pursuant to Section 8(g)(iii) of the Agreement, the Debtor and Brown, individually, were subject to the noncompetition provisions set forth in Section 8(g) of the Agreement. (*Id.*) To date, neither the Debtor nor Brown has objected to or disputed any of the statements in the July 22 Letter. A copy of the July 22 Letter is attached as **Exhibit D** to the George Declaration.

On August 25, 2025, in response to multiple statements from the Debtor that it intended to file for bankruptcy under Subchapter V, WHR delivered a letter (the "August 25 Letter") to the Debtor and Brown setting forth in detail the amount WHR asserted due by the Debtor under the Agreement as of August 1, 2025. (George Decl. ¶ 10). The purpose of the August 25 Letter was to illustrate that the Debtor was not eligible for Subchapter V relief. The August 25 Letter attached a summary accounts receivable report that showed the detail for WHR's calculations of the invoiced amount due together with accrued and unpaid contractual interest. (*Id.*) To date, neither the Debtor nor Brown has objected to or disputed any of the statements in the August 25 Letter. (*Id.*) A copy of the August 25 Letter is attached as **Exhibit E** to the George Declaration.

On November 5, 2025, WHR filed a proof of claim in the Debtor's Chapter 11 case, designated as Claim No. 19 in the claims register (the "Initial Claim"). (George Decl. ¶ 11). In the Initial Claim, WHR asserted a claim amount of not less than $4,858,382.45. The Initial Claim consisted of $2,541,732.48 due and owing for Products shipped and delivered and invoiced to the Debtor and $2,316,649.97 of accrued and unpaid contractual interest.

On November 13, 2025, WHR filed its initial Objection to Debtor's Subchapter V Eligibility by WHR Holdings, LLC (Doc. No. 61) (the "Initial Objection"). At a status conference in this case on November 13, 2025, the Debtor made statements alluding to objections to the amount of WHR's Initial Claim based on issues relating to application of payments made by the Debtor to WHR. Following the November 13, 2025, status conference and the Debtor's statements, WHR conducted an additional review of its accounting of its invoices to the Debtor and the Debtor's payments. (George Decl. ¶ 12).

WHR's additional review of its accounting revealed an error in WHR's Initial Claim and the figures relied upon in the Initial Objection. Beginning in late 2023, after the Debtor's delinquent and late-payment issues continued to mount, WHR and the Debtor agreed to a deposit and joint check arrangement where the Debtor was required to deposit 50% of the applicable invoice amount when placing an order, and the remaining 50% would be paid by a joint check issued by the Debtor's customer jointly to the Debtor and WHR. (George Decl. ¶ 13). This deviation from WHR's normal payment and accounting practices with respect to the Debtor resulted in errors surrounding WHR's application of deposits and/or

4
AMENDED OBJECTION TO DEBTOR'S SUBCHAPTER V ELIGIBILITY

joint checks to specific invoices in late 2023 and 2024. (*Id.*) When WHR discovered this issue, the undersigned counsel immediately contacted Debtor's counsel and informed him that WHR would be filing an amended proof of claim and this amended Objection to the Debtor's Subchapter V eligibility.[1]

On December 23, 2025, WHR filed its amended proof of claim, designated as Claim No. 19-1 on the claims register (the "Amended Claim"). (George Decl. ¶ 14). Through its Amended Claim, WHR asserts a claim amount of not less than **$3,819,645.46** (the "Claim Amount").[2] The Amended Claim consists of $1,668,336.28 due and owing for Products shipped and delivered and invoiced to the Debtor and $2,151,309.18 of accrued and unpaid contractual interest. A copy of the Amended Claim is attached as **Exhibit F** to the George Declaration.

Attached as **Exhibit G** to the George Declaration is a summary accounts receivable report that shows the detail for the calculation of the Claim Amount, including (i) the total amounts invoiced and collected for the period from 2010 to 2025, leaving the invoiced amount of $1,668,336.28 unpaid, and (ii) accrued contractual interest totaling $2,151,309.18. (George Decl. ¶ 15). All of the invoices comprising the Claim Amount have been provided by WHR to the Debtor. (*Id.*) The Claim Amount is fully liquidated as it is readily ascertainable pursuant to the express contractual terms in the Agreement. (*Id.*) The Claim Amount does not include attorneys' fees and costs that WHR is entitled to collect from the Debtor under the Agreement. (*Id.*) The Debtor has not disputed or objected to any of the invoiced amounts or any specific portion of the Claim Amount. (*Id.*)

## IV. Argument and Memorandum of Law

WHR objects to the Debtor's eligibility to be a Subchapter V debtor pursuant to Fed. R. Bankr. P. 1020(b), which provides that "[t]he United States trustee or a party in interest may object to the debtor's

---

[1] On December 19, 2025, WHR filed its Ex Parte Stipulated Application to Reschedule Hearing on Objection to Debtor's Subchapter V Eligibility by WHR Holdings, LLC (Doc. No. 77), which the Court granted (Doc. No. 79), cancelling the pending hearing on the Initial Objection and scheduling a hearing on this amended Objection for January 22, 2026.

[2] The total difference between the Amended Claim and the Initial Claim equals $1,038,737.00, consisting primarily of (a) a difference for 2023 in $92,829.25 in the unpaid invoice balance and $25,851.59 in accrued and unpaid contractual interest; and (b) a difference for 2024 of $785,894.25 in the unpaid invoice balance and $138,657.65 in accrued and unpaid contractual interest. The outstanding balances for years 2022 and prior are unchanged from the Initial Claim, as these time periods predated the joint check arrangement between the parties discussed *supra*.

- 5 -
AMENDED OBJECTION TO DEBTOR'S SUBCHAPTER V ELIGIBILITY

1  [Subchapter V] designation." Fed. R. Bankr. P. 1020(b). The deadline to object to a debtor's Subchapter

2  V designation is "30 days after the conclusion of the meeting of creditors held under § 341(a)." The

3  meeting of creditors in this case was held and concluded on October 29, 2025. Thus, the Initial Objection,

4  as amended herein, was timely filed.

5        **A. Requirements for Subchapter V eligibility.**

6        Under the Small Business Reorganization Act of 2019, Congress authorized eligible persons to

7  avail themselves of a streamlined Chapter 11 bankruptcy process designed to provide relief to small

8  businesses, designated as "Subchapter V" of Chapter 11 of the Bankruptcy Code. *In re RS Air, LLC*, 638

9  B.R. 403, 409 (B.A.P. 9th Cir. 2022). Section 1182(1)(A) of the Bankruptcy Code defines "debtor" for

10  purposes of Subchapter V, which in turn incorporates the definition of "small business debtor" in Section

11  101(51D) of the Bankruptcy Code. *See* 11 U.S.C. § 1182(1)(A) & 101(51D).

12        A debtor is eligible to elect subchapter V if the debtor: (1) is a "person"; (2) is "engaged in

13  commercial or business activities;" (3) does not have aggregate noncontingent, liquidated debts in excess

14  of the debt limit on the petition date; and (4) at least 50 percent of the debtor's debts arose from its

15  commercial or business activities. *Id.* (quoting 11 U.S.C. § 1182(1)(A)).

16        WHR objects to eligibility because the Debtor's "aggregate noncontingent liquidated secured and

17  unsecured debts" exceeds the current Subchapter V debt limit of $3,424,000. 11 U.S.C. § 101(51D); *see*

18  *In re McPhillips Flying Service, Inc.*, No. BT 25-02011, 2025 WL 3030284, at *1 (Bankr. W.D. Mich.

19  Oct. 29, 2025) (referencing current Subchapter V debt limit of $3,424,000). If a debt is noncontingent and

20  liquidated, a debtor's dispute over liability for the debt will not exclude the debt from calculation for

21  Subchapter V eligibility. *See In re Hall*, 650 B.R. 595, 599 (Bankr. M.D. Fla. 2023) ("Under the plain

22  language of 11 U.S.C. § 1182, disputed debts are not excluded from the [Subchapter V] debt limit."); *In*

23  *re Heart Heating & Cooling, LLC*, No. BR 23-13019 TBM, 2024 WL 1228370, at *19 (Bankr. D. Colo.

24  Mar. 21, 2024) (stating that "the Section 1182(1)(A) calculation includes disputed debts.")

25        Although the Bankruptcy Code and Bankruptcy Rules do not specify which party bears the burden

26  of proof on Subchapter V eligibility, "a significant majority of courts conclude that the debtor bears the

27  burden of proof for Subchapter V eligibility by a preponderance of the evidence." *In re McKenzie*

28

- 6 -
AMENDED OBJECTION TO DEBTOR'S SUBCHAPTER V ELIGIBILITY

*Contracting, LLC*, No. 8:24-BK-01255-RCT, 2024 WL 3508375, at *1 (Bankr. M.D. Fla. July 19, 2024); *In re Phenomenon Mktg. & Ent., LLC*, No. 2:22-BK-10132-ER, 2022 WL 1262001, at *1 (Bankr. C.D. Cal. Apr. 28, 2022) ("The Debtor bears the burden of proof to establish eligibility to proceed under Subchapter V."); *In re Heart Heating & Cooling, LLC*, No. BR 23-13019 TBM, 2024 WL 1228370, at *6 (Bankr. D. Colo. Mar. 21, 2024) (holding that the debtor bears the burden of proof on Subchapter V eligibility).

**B. The Debtor's liquidated and noncontingent debt exceeds the Subchapter V debt limit of $3,424,000.00.**

The Debtor's eligibility for Subchapter V turns on WHR's Claim Amount. WHR filed its Amended Claim in the amount of $3,819,645.46, which standing alone exceeds the Subchapter V debt limit of $3,424,000.00. WHR's Amended Claim is liquidated and noncontingent, and when combined with the Debtor's other liquidated and noncontingent debt, results in the Debtor being far over the debt limit and ineligible for Subchapter V.

The Debtor's schedules (Doc. No. 1) (the "<u>Schedules</u>") reflect total secured, priority unsecured, and general unsecured claims in the amount of $3,975,652.35. This includes secured debt of $599,529.00, priority unsecured claims of $468,846.34, and general unsecured debt of $2,907,277.01. The Schedules include a debt owed to Brown, the Debtor's 100% shareholder, for $271,000. Insider claims are excluded for purposes of determining whether a debtor is over the Subchapter V debt limit. *See* 11 U.S.C. § 101(51D). As for WHR, the Debtor's unsecured debt total includes a debt owed to WHR for $1,883,859.00, which the Debtor marked as "unliquidated" and "disputed." (Schedules, Doc. No. 1, at page 135 of 186).

Based on the Debtor's Schedules, and taking into account the Debtor's aggregate debt, but for marking WHR's debt as "unliquidated," the Debtor would be over the Subchapter V debt limit. The Debtor's total scheduled debt of $3,975,652.35, less Mr. Brown's insider claim, results in a total of $3,704,652.35. Removing the Debtor's scheduled claim for WHR of $1,883,859.00 results in a total of $1,820,793.35. Subtracting $1,820,793.35 from the Subchapter V debt limit of $3,424,000.00, results in

AMENDED OBJECTION TO DEBTOR'S SUBCHAPTER V ELIGIBILITY

a total of $1,603,206.65. Thus, if WHR's liquidated, noncontingent claim exceeds $1,603,206.65, the Debtor is not eligible for Subchapter V.

WHR's Amended Claim is, in fact, liquidated, noncontingent, and far exceeds $1,603,206.65. First, the Debtor did not mark WHR's claim as contingent; the Debtor only marked WHR's claim as unliquidated and disputed. As discussed above, a Debtor's dispute as to liability does not exclude the debt from the Subchapter V calculation. Thus, the only issue before the Court is whether WHR's Amended Claim is liquidated and whether its liquidated Claim Amount exceeds $1,603,206.65.

The question of whether a debt is liquidated "turns on whether it is subject to ready determination and precision in computation of the amount due." *In re Slack*, 187 F.3d 1070, 1073–74 (9th Cir. 1999), *as amended* (Sept. 9, 1999). Under the Ninth Circuit's "readily determinable" standard:

> [I]f the amount of the creditor's claim at the time of the filing the petition is ascertainable with certainty, a dispute regarding liability will not necessarily render a debt unliquidated. Whether the debt is subject to "ready determination" will depend on whether the amount is easily calculable or whether an extensive hearing will be needed to determine the amount of the debt, or the liability of the debtor. Therefore, the mere assertion by the debtor that he is not liable for the claim will not render the debt unliquidated for the purposes of calculating eligibility under § 109(e).

*Id.* at 1074 (internal citations omitted).

WHR's Claim Amount is liquidated. The Claim Amount is based on unpaid invoices for Products together with accrued and unpaid contractual interest assessed under the Agreement between the Debtor and WHR. The invoice amounts are clear from the face of each invoice, and the amount paid by the Debtor is readily determinable from WHR's accounting records reflecting payments received by the Debtor. WHR has provided copies of all invoices to the Debtor. Further, the calculation of accrued and unpaid contractual interest is a simple mathematical formula that is readily determinable. The Agreement provides that "[a]ny invoiced amount not paid when due shall be subject to a service charge of 1.5% per month." (Agreement § 3(g)).

The chart below summarizes WHR's Claim Amount, as of the Petition Date, broken down by amount owed year-by-year dating back to 2010:

- 8 -
AMENDED OBJECTION TO DEBTOR'S SUBCHAPTER V ELIGIBILITY

| | Invoiced Amount | Collected | Unpaid Invoiced Amount (excludes interest) | Simple Contractual Interest Calculated to Date Invoice paid |
|---|---|---|---|---|
| 2010 | 56,793.61 | 56,793.61 | - | 13,718.12 |
| 2011 | 163,851.36 | 163,851.36 | - | 2,436.19 |
| 2012 | 368,452.79 | 368,452.79 | - | 4,662.22 |
| 2013 | 938,283.96 | 938,283.96 | - | 34,982.90 |
| 2014 | 518,949.49 | 431,193.64 | 87,755.85 | 345,954.94 |
| 2015 | 1,116,249.84 | 1,085,507.89 | 30,741.95 | 143,991.51 |
| 2016 | 1,051,697.79 | 1,051,697.79 | - | 188,050.69 |
| 2017 | 726,740.49 | 726,740.49 | - | 96,554.56 |
| 2018 | 851,780.60 | 851,780.60 | - | 42,229.57 |
| 2019 | 1,455,346.80 | 1,455,346.80 | - | 55,486.75 |
| 2020 | 1,679,232.25 | 1,598,482.00 | 80,750.25 | 159,587.94 |
| 2021 | 2,072,736.85 | 1,641,036.00 | 431,700.85 | 461,099.64 |
| 2022 | 1,168,068.96 | 489,924.05 | 678,144.91 | 414,115.21 |
| 2023 | 1,482,412.28 | 1,166,030.93 | 316,381.35 | 173,195.00 |
| 2024 | 1,620,516.49 | 1,620,503.87 | 12.62 | 13,126.48 |
| 2025 | 322,222.95 | 279,374.45 | 42,848.50 | 2,117.44 |
| Totals: | 15,593,336.51 | 13,925,000.23 | 1,668,336.28 | 2,151,309.18 |
| | | Total Claim: | 3,819,645.46 | |

(George Declaration ¶ 16).

Although the Claim Amount does reflect a large portion is comprised of unpaid amounts from years prior, a significant portion of the Claim Amount arises from unpaid invoices and contractual interest from recent years. From just 2021 through 2025, WHR is owed $2,532,742.01, consisting of unpaid invoice amount totaling $1,469,088.23, and accrued contractual interest totaling $1,063,653.78. Further, WHR's Amended Claim is *prima facie* valid and signed under oath. Fed. R. Bankr. P. 3001(f).

Further, the Debtor executed the January 2024 Agreement between the Debtor and WHR, through which the Debtor agreed to sign a promissory note "exchanging the Parts Sales and oldest project receivables totaling $1M plus the past due interest of $3.2M into a Senior Note . . . ." (George Decl. Ex. B). In addition to the $1 million of oldest receivables referenced in the January 2024 Agreement, the Debtor also owed approximately $1 million on account of newer receivables that were to be managed and collected separately from the note contemplated by the January 2024 Agreement. (George Decl. ¶ 7).

AMENDED OBJECTION TO DEBTOR'S SUBCHAPTER V ELIGIBILITY

Thus, as of January 4, 2024, the Debtor agreed that it owed, at minimum, $1 million to WHR (on account of "Parts Sales and oldest project receivables"), plus $3.2 million in "past due interest," (George Decl. Ex. B) exclusive of another approximately $1 million in newer receivables.

The WHR claim amount the Debtor used for its schedules, $1,883,859.79, was pulled from the Complaint WHR filed against the Debtor in June 2024. (*See* George Decl. Ex. C, at ¶ 16). However, WHR's Complaint did not include contractual interest in this figure, but rather reserved on the computation of contractual interest. Contractual interest on past-due balances continued to accrue.

WHR's Claim Amount is subject to ready determination based upon a simple review of WHR's accounting records, the invoices, amounts paid to WHR by the Debtor, and calculation of simple contractual interest. WHR's Claim Amount is liquidated and must be accounted for in determining the Debtor's eligibility for Subchapter V. Because the Debtor's liquidated, noncontingent debts exceed the $3,424,000 threshold, the Debtor is ineligible for Subchapter V.

**C. The Debtor has no right to setoff, and even if it does, setoff rights do not factor into the Court's eligibility determination.**

The Debtor, in its Schedules and its first-day filings, has alleged that it has rights of setoff that would conceivably reduce the amount owed by the Debtor to WHR. This argument is misplaced. First, as a factual matter, the Agreement between WHR and the Debtor placed clear limits on the Debtor's rights to reject Products. Second, as a legal matter, an alleged right to setoff does not negate the amount owed to a creditor for purposes of determining a creditor's liquidated claim amount for eligibility purposes.

Section 3(i) of the Agreement provided that any Product not rejected by the Debtor within thirty (30) days of receipt of that Product by the Debtor would be deemed accepted by the Debtor. The Debtor never provided any notice to WHR of its rejection of any specific Products within 30 days of receipt of that Product. (George Decl. ¶ 5). Additionally, under the Agreement, WHR expressly disclaimed express or implied warranties as to the Products, including the warranties of fitness for a particular purpose, their quality, and their merchantability. (George Decl. Ex. A § 5(b)). The only warranty provided under the agreement was a standard limited warranty passed along to the Debtor's customers. (*Id.* at § 5(a)). The Debtor has no basis to assert any setoff claim.

AMENDED OBJECTION TO DEBTOR'S SUBCHAPTER V ELIGIBILITY

Even if the Debtor did have some right of setoff, any setoff rights would not render WHR's Amended Claim unliquidated. "The right of setoff — even if it exceeds the amount and therefore negates the amount owed a creditor — does not make a liquidated debt unliquidated." *In re Aparicio*, 589 B.R. 667, 676 (Bankr. E.D. Cal. 2018) (citations omitted); *see also In re Quintana*, 107 B.R. 234, 240 (B.A.P. 9th Cir. 1989), *aff'd*, 915 F.2d 513 (9th Cir. 1990) (holding that counterclaim could not be applied to set-off and reduce the debtor's debt for Chapter 12 eligibility); *In re Sylvester*, 19 B.R. 671, 673 (B.A.P. 9th Cir. 1982) (holding that setoff claim does not apply to reduce a debt for purposes of eligibility for Chapter 13).

The Debtor does not have any setoff defense against WHR's Amended Claim, and even if it did, such a defense should not be applied to reduce the amount of WHR's liquidated Claim Amount for purposes of determining the Debtor's eligibility for Subchapter V.

## V.      Conclusion

In summary, the Debtor's liquidated, noncontingent debt exceeds the Subchapter V debt limit of $3,424,000.00. This Court should sustain WHR's Objection and determine that the Debtor is not eligible to be a debtor under Subchapter V.

WHEREFORE, WHR respectfully requests that the Court enter an order (i) sustaining this Objection, (ii) finding and concluding that the Debtor is ineligible to be a debtor under Subchapter V of Chapter 11 of the Bankruptcy Code, and (iii) providing that this case must proceed as a traditional Chapter 11 case and not a Subchapter V Chapter 11 case.

DATED:  December 23, 2025          STICHTER, RIEDEL, BLAIN & POSTLER, P.A.


                                   By:   /s/ Matthew B. Hale
                                         Matthew B. Hale, Applicant and
                                         Attorney for Creditor, WHR Holdings, LLC

AMENDED OBJECTION TO DEBTOR'S SUBCHAPTER V ELIGIBILITY

1  DATED:  December 23, 2025          HOGE, FENTON, JONES & APPEL, INC.

2

3                                By:  /s/*Sblend A. Sblendorio*

4                                     Sblend A. Sblendorio
                                      Attorney for Creditor, WHR Holdings, LLC
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-12-
AMENDED OBJECTION TO DEBTOR'S SUBCHAPTER V ELIGIBILITY