Stephen D. Finestone (125675)
Jennifer C. Hayes (197252)
FINESTONE HAYES LLP
456 Montgomery Street, Suite 1300
San Francisco, CA 94104
Tel.:   (415) 421-2624
Fax:    (415) 398-2820
Email: sfinestone@fhlawllp.com
Email: jhayes@fhlawllp.com

Attorneys for American Trash Management, Inc.
Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>AMERICAN TRASH MANAGEMENT, INC.,<br><br>Debtor-in-Possession. | Case No. 25-30743- HLB<br><br>Chapter 11, Subchapter V<br><br>**DECLARATION OF CAMILLE CRUZ IN SUPPORT OF DEBTOR'S RESPONSE TO AMENDED OBJECTION TO DEBTOR'S SUBCHAPTER V ELIGIBILITY BY WHR HOLDINGS, LLC**<br><br>Date:   January 22, 2026<br>Time: 10:00 a.m.<br>Ctrm: Via Zoom or In-Person, at Courtroom 19, 450 Golden Gate Ave., 16th Floor, San Francisco, CA |

I, Camille Cruz, declare as follows:

1.  I have been employed at American Trash Management, Inc. ("ATM" or the "Debtor") full time since November 2019. I am the primary accounting person at ATM, and I perform the majority of accounting functions at ATM, along with other administrative duties. I worked under the guidance of ATM's former Accounting Manager until her departure from the

CRUZ DECLARATION ISO RESPONSE TO AMENDED OBJ. TO SUBCHAPTER V            1

company in October 2023. After her departure, I took over her accounting responsibilities using the knowledge, experience, and instructions acquired under her leadership. In addition, I completed the Certificate Program in Accounting at UC Berkeley Extension, which I attended from October 2020 to April 2023. This program covered financial accounting, managerial accounting, and other related coursework that broadened my experience with accounting standards. I make this declaration in support of the Debtor's response to the Objection to Debtor's Subchapter V Eligibility (the "Motion") by WHR Holdings, LLC ("WHR"). All statements in this declaration are based on my own personal knowledge and observation, or upon information and belief based upon my review of the Debtor's business records in this case. If called to testify on this matter, I could and would competently testify to the matters set forth herein.

2. I have reviewed records dating from July 31, 2020 through May 22, 2023 and kept in the regular course of ATM's business, which show Jacqueline Torres of WHR's accounting department following up on past due invoices by attaching a copy of WHR's statements (Quotes vs. Small Part Orders). These follow-up emails also include a chart showing the total balances owed for every year.

3. I also have reviewed records dating from March 3, 2024 through February 17, 2025 and kept in the regular course of ATM's business, which show Santiago Poveda of WHR following up on past due invoices by sending out individual collection notices, with either a chart that shows a breakdown of what is owed or a copy of the invoice.

4. Notably, none of the collection notices sent from 2020 to 2025 by both Ms. Torres and Mr. Poveda reflect any interest or penalty fees accrued or owing due to nonpayment.

5. In June 2023, WHR refused to send out any orders until it received payment. In response to this refusal, ATM's former Chief Operating Officer (the "ATM COO") reached an agreement with Chad George of WHR whereby WHR would release orders only if

    a. ATM provided a signed joint check agreement from our customer

    b. The customer prepaid 50% of the order via joint check, or

    c. The customer prepaid 100% of the order if they did not sign joint check agreements.

  6. I am informed and believe that the ATM COO advised WHR that an additional 10% of ATM's project billing would be sent to WHR to apply towards ATM's balance owing to WHR.

  7. I am informed and believe that, initially, WHR wanted to apply the 10% markup to older invoices, but that ATM requested to have the 10% markup applied to specific invoices. I am informed and believe that this request was made in an effort to pay off certain project balances so that WHR could provide unconditional final waivers which would allow ATM to bill its customers for retention and close out those projects.

  8. I am informed and believe that ATM paid WHR 10% markups on invoices through the end of 2023.

  9. I am informed and believe that, in January 2024, ATM's CEO Scott Brown and Mr. Chad George of WHR began a conversation that initiated a reconciliation of outstanding obligations. In parallel with this conversation, Ms. Torres and I emailed back and forth regarding missing invoices, missing payment applications, and further clarifications regarding ATM's outstanding balance owing to WHR, which was frankly a confusing mess. I came to the conclusion that the total outstanding balance as of that time period should have been $1,920,644.95. Though WHR's statement through January 5, 2024 showed a balance of $2,080,823.58, I found that there was $133,424.45 worth of invoices that were paid by ATM but not applied in WHR's books and a variance of $27,177.05 worth of invoices that were either a result of ATM's payment not being correctly applied in WHR's books or WHR not applying an executed deductive change order to the corresponding project bill.

  10. In July 2025, Mr. Poveda provided me with two statements for WHR's open balance for Quotes ($1,256,143.81) and Small Part Orders ($571,328.85), for a total open balance of $1,827,472.66. Using these statements, I conducted yet another reconciliation, which is explained in further detail below, in paragraph 20.

11. I pulled a report from ATM's regularly kept accounting records through July 2, 2025, which showed the balance owed by ATM to WHR in the sum of $1,454,505.74.

12. I then consolidated the statements provided by Mr. Poveda through July 2, 2025, which showed the balance owed by ATM to WHR as $1,827,472.66.

13. After comparing and analyzing these two reports, I was able to confirm that there were $1,289,793.79 worth of invoices that were on both ATM and WHR's books. I confirmed these invoices were open and payable.

14. I then pulled ATM's invoices, kept in the regular course of ATM's business, which did not balance with WHR's invoices. These invoices totaled $62,257.66. I also pulled WHR's invoices that did not balance with ATM's invoices, also kept in the regular course of ATM's business, which totaled $89,470.71. In this reconciliation, I found the following:

   a. Several invoices entered by ATM may have been mis-keyed as to the amounts. Adjustments in the amount of **$7,954.05** were made to ATM's books.

   b. Payment of $14,150.00 on the 2525 Van Ness project that was paid via joint check and via markup were not applied by WHR to its invoices.

   c. The Clifton Hall project had an outstanding deductive change order of $5,109.00 which was not reflected in WHR's invoice.

15. Based on my review and analysis of the information in paragraph 15 above, I concluded that the total adjustments that should be made to WHR books for the misapplied invoices and deductive change order total $19,259.00.

16. I also found that several WHR invoices were missing in ATM's books. These missing invoices totaled $296,756.16. I confirmed these were valid invoices for valid project with valid purchase orders. I then entered, or caused to be entered, the missing invoices into ATM's books.

17. I also found several invoices that ATM paid to WHR that WHR had not credited, which totaled $151,452.00.

18. I also found several invoices that were open on ATM's book but not open on WHR's books, which totaled $102,455.20. These invoices were removed from ATM's books.

19. I also found an open credit of $0.91 in ATM's books for two projects known by ATM as the Woodbury and Kifer projects.

20. Altogether, I calculated that the total open balance due to WHR should be $1,656,760.75 as of July 2, 2025. A breakdown of this reconciliation is set forth below:

| RECONCILING ATM'S BALANCE | | RECONCILING WHR'S BALANCE | |
|---|---|---|---|
| ATM & WHR RECONCILED # (Paragraph 13) | $ 1,289,793.79 | ATM & WHR RECONCILED # (Paragraph 13) | 1,289,793.79 |
| ATM UNBALANCED # (Paragraph 14) | $ 62,257.66 | WHR UNBALANCED # (Paragraph 14) | 89,470.71 |
| ATM ADJUSTMENTS (Paragraph 14a) | $ 7,954.05 | WHR ADJUSTMENTS (Paragraph 15) | (19,259.00) |
| ATM MISSING INVOICES (Paragraph 16) | $ 296,756.16 | ATM MISSING INVOICES (Paragraph 16) | 296,756.16 |
| WHR OPEN CREDITS (Paragraph 19) | (0.91) | WHR OPEN CREDITS (Paragraph 19) | (0.91) |
| | $ 1,656,760.75 | | 1,656,760.75 |
| ATM BALANCE THRU 07/02 (Paragraph 11) | $ 1,454,505.74 | WHR BALANCE THRU 07/02 (Pargraph 12) | $ 1,827,472.66 |
| ATM ADJUSTMENTS (Paragraph 14a) | $ 7,954.05 | WHR ADJUSTMENTS (Pargraph 15) | $ (19,259.00) |
| ATM MISSING INVOICES (Paragraph 16) | $ 296,756.16 | ATM PAID INVOICES (Paragraph 17) | $ (151,452.00) |
| WHR MISSING INVOICES (Paragraph 18) | $ (102,455.20) | WHR OPEN CREDITS (Paragraph 19) | $ (0.91) |
| | $ 1,656,760.75 | | $ 1,656,760.75 |

21. I then revised the analysis to calculate the amount owing by ATM to WHR as of the Chapter 11 filing date of September 15, 2025, which I calculate to be a total balance of $1,611,629.25.

22. I have reviewed WHR's amended objection to ATM's SubChapter V designation. I am unable to analyze WHR's updated calculations without a copy of WHR's current aging receivables statement. I need that statement in order to confirm whether ATM's payments have been correctly applied and whether cancelled projects have been removed from WHR's financials. Namely, three cancelled projects include the AC Marriott project, the 2550 Irving Street project, and 4th & Ivy (Flora & Fauna) project. Exhibit E Annex 1 to the George Declaration in support of WHR's amended objection references these three cancelled projects, which should be excluded from WHR's calculations. Additionally, there is one order that has been on hold since March 19, 2024 (601 Beech) and another order that should have been cancelled as of October 29, 2025 (Door PO Ave One). Again, without WHR's current aging receivables statement, I am unable to analyze WHR's calculations of the amount it claims is owing by ATM.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on December 29, 2025 Emeryville, California.

_____
Camille Cruz

CRUZ DECLARATION ISO RESPONSE TO AMENDED OBJ. TO SUBCHAPTER V     6