1  Stephen D. Finestone (125675)
   Jennifer C. Hayes (197252)
2  FINESTONE HAYES LLP
   456 Montgomery Street, Suite 1300
3  San Francisco, CA 94104
   Tel.:  (415) 421-2624
4  Fax:   (415) 398-2820
   Email: sfinestone@fhlawllp.com
5  Email: jhayes@fhlawllp.com

6  Attorneys for American Trash Management, Inc.,
   Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>AMERICAN TRASH MANAGEMENT, INC.,<br><br>Debtor-in-Possession. | Case No. 25-30743-HLB<br><br>Chapter 11, Subchapter V<br><br>**REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER SUSTAINING WHR HOLDINGS LLC'S OBJECTION TO DEBTOR'S SUBCHAPTER V ELIGIBILITY**<br><br>Date:  March 5, 2026<br>Time:  10:00 a.m.<br>Ctrm:  Via Zoom or In-Person, at Courtroom 19, 450 Golden Gate Ave. 16th Floor, San Francisco, CA |

## TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 1

II. LEGAL ARGUMENT ........................................................................................... 1

    A. Civil Rule 59(e) Permits Corrections of Manifest Factual Error ........................... 2

    B. Civil Rule 60(b)(1) Also Supports Relief Where the Order Was Entered Under a Misapprehension of Material Facts ..................................................................... 3

III. CONCLUSION ................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253 (9th Cir. 2010) ........................................ 5, 6, 8

*Augusta Fiberglass Coatings, Inc. v. Fodor Cont. Corp.*, 843 F.2d 808 (4th Cir. 1988) ............... 6

*Bateman v. U.S. Postal Serv.*, 231 F.3d 1220 (9th Cir. 2000) ................................................. 5, 6, 8

*Blankinship v. Union PAC R.R. Co.*, 2022 U.S. Dist. LEXIS 201456 (D. Ariz. Nov. 4, 2022) ........................................................................................................................................ 2

*Briones v. Riviera Hotel & Casino*, 116 F.3d 379 (9th Cir. 1997) ............................................. 5, 8

*Cisneros v. United States (In re Cisneros)*, 994 F.2d 1462 (9th Cir. 1993) ............................... 4, 5

*Comprehensive Acct. Corp. v. Pearson (In re Pearson)*, 773 F.2d 751 (6th Cir. 1985) ................. 9

*Curtis v. United States*, 61 Fed. Cl. 511 (2004) .............................................................................. 4

*Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001) ............................................................... 5

*EmCyte Corp. v. Stahl (In re Stahl)*, 2021 Bankr. LEXIS 921 (B.A.P. 9th Cir. Apr. 7, 2021) .................................................................................................................................... 9, 10

*Emerick v. Regus Mgmt. Grp., LLC*, 2019 U.S. Dist. LEXIS 114873 (S.D. Cal. July 9, 2019) ........................................................................................................................................ 6

*Falk v. Allen*, 739 F.2d 461 (9th Cir. 1984) ..................................................................................... 5

*Hoeft v. Witzer (In re Witzer)*, 2025 Bankr. LEXIS 995 (B.A.P. 9th Cir. Apr. 23, 2025) .............. 2

*In re Articon Hotel Servs. LLC*, 2025 Bankr. LEXIS 3187 (Bankr. N.D. Ill. Dec. 8, 2025) .......... 9

*In re Baker*, 625 B.R. 27 (Bankr. S.D. Tex. 2020) .......................................................................... 9

*In re Magouirk*, 693 F.2d 948 (9th Cir. 1982) ................................................................................ 5

*In re Parking Mgmt.*, 620 B.R. 544 (Bankr. D. Md. 2020) ............................................................. 9

*In re Smith*, 325 B.R. 498 (Bankr. D.N.H. 2005) .......................................................................... 10

*Kemp v. United States*, 596 U.S. 528 (2022) ................................................................................... 4

*Kingvision Pay-Per-View v. Lake Alice Bar*, 168 F.3d 347 (9th Cir. 1999) ................................ 2, 4

*Meyer v. Lenox (In re Lenox)*, 902 F.2d 737 (9th Cir. 1990) ........................................................ 11

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993) ........................ 5, 8

*Reed Action Judgment Creditors v. Alecto Healthcare Servs. LLC (In re Alecto Healthcare Servs., LLC)*, 2025 U.S. Dist. LEXIS 61698 (D. Del. Mar. 31, 2025) ........ 9, 10, 11

*Rodriguez v. Quad Graphics, Inc.*, 2025 U.S. Dist. LEXIS 98941 (C.D. Cal. Apr. 4, 2025) ............................................................................................................................. 6, 7

*Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255 (9th Cir. 1993) ....................................... 2

*Scovis v. Henrichsen (In re Scovis)*, 249 F.3d 975 (9th Cir. 2001) ............................. 9, 10

*Siegler v. Sorrento Therapeutics, Inc.*, 2019 U.S. Dist. LEXIS 216776 (S.D. Cal. Dec. 17, 2019) ............................................................................................................................ 2

*Smith v. Lenches*, 263 F.3d 972 (9th Cir. 2001) ............................................................. 6

*TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691 (9th Cir. 2001) ........................... 5, 6

*Westlands Water Dist. v. United States*, 100 F.3d 94 (9th Cir. 1996) ............................ 6

**Statutes**

11 U.S.C. § 101(51D) ............................................................................................ 9, 10, 11

11 U.S.C. § 109(e) ....................................................................................................... 9, 11

11 U.S.C. § 502 ................................................................................................................ 11

11 U.S.C. § 1182 ................................................................................................................ 9

11 U.S.C. § 1182(1) ............................................................................................... 9, 10, 11

**Rules**

Bankr. L.R. 1001-2 ............................................................................................................ 3

Fed. R. Bankr. P. 9023 ...................................................................................................... 2

Fed. R. Bankr. P. 9024 ................................................................................................... 2, 5

Fed. R. Civ. P. 59 .............................................................................................................. 2

Fed. R. Civ. P. 59(e) ............................................................................................ 1, 2, 11, 12

Fed. R. Civ. P. 60 .............................................................................................................. 2

Fed. R. Civ. P. 60(b) .................................................................................................. *passim*

Fed. R. Civ. P. 60(b)(1) ............................................................................................. *passim*

N.D. Cal. L.R. 7-9(b)(1) .................................................................................................... 3

American Trash Management, Inc. ("ATM" or the "Debtor") respectfully submits this Reply in support of its Motion for Reconsideration (the "Motion") of this Court's *Order Sustaining WHR Holdings LLC's Objection to Debtor's Subchapter V Eligibility* entered on January 22, 2026 (ECF 90, the "Eligibility Order").[1]

## I. INTRODUCTION

The scope of the Motion is narrow: it seeks only the correction of a discrete factual duplication included in the schedules that the Court relied upon in determining that ATM's aggregate noncontingent, liquidated debt as of the petition date exceeded the Subchapter V debt limits. The Motion does not seek to relitigate the Court's legal analysis of Subchapter V eligibility, revisit the Court's treatment of WHR's claim, or introduce new evidence or arguments.

The Alameda County tax obligation appears twice—once on Schedule E as a priority unsecured claim and again on Schedule F as a general unsecured claim. As set forth in the declaration of Scott Brown, those entries reflect a single underlying obligation. Removing one entry reduces ATM's aggregate debt by approximately $19,425. The Court found ATM exceeded the Subchapter V debt limit by $8,589.27. Under the Court's methodology, correcting this mistake changes the outcome. Reconsideration is therefore appropriate under Civil Rules 59(e) and 60(b).

## II. LEGAL ARGUMENT

As a preliminary matter, "a claim seeking that the judgment be set aside may be brought under either FRCP 59(e) or 60(b). The only difference in the timing is that motions filed pursuant to FRCP 59(e) 'must be filed no later than 28 days after the entry of the judgment,' whereas motions filed under FRCP 60(b) must be filed 'within a reasonable time—and … no

---

[1] Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. "Civil Rule" references are to the Federal Rules of Civil Procedure, "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure, and "B.L.R." references are to the Bankruptcy Local Rules for the Northern District of California. "ECF" references are to the docket in the above-captioned proceeding, and all ECF page references are to the ECF pagination, not internal pagination.
DEBTOR'S REPLY ISO MOTION FOR RECONSIDERATION  1

Case: 25-30743   Doc# 102   Filed: 02/19/26   Entered: 02/19/26 16:42:49   Page 5 of 16

more than a year after the entry of the judgment or order or the date of the proceeding.'"[2] *Siegler v. Sorrento Therapeutics, Inc.*, 2019 U.S. Dist. LEXIS 216776, at *13 (S.D. Cal. Dec. 17, 2019) (citations omitted); *see also Blankinship v. Union PAC R.R. Co.*, 2022 U.S. Dist. LEXIS 201456, at *14 (D. Ariz. Nov. 4, 2022) ("Rules 60(b)(1) and 59(e) both allow a court to grant a party relief from judgment due to mistake, surprise, or excusable neglect, the only difference between the two rules being the timing on when a party must file its motion."); *Hoeft v. Witzer (In re Witzer)*, 2025 Bankr. LEXIS 995, at *8 (B.A.P. 9th Cir. Apr. 23, 2025) (a motion for reconsideration filed within fourteen days after entry of a judgment may be evaluated under the standards of Civil Rules 59(e) and 60(b)); *Kingvision Pay-Per-View v. Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir. 1999) (rejecting the argument that a court may correct an error of law only under Rule 59, and holding that it may vacate a mistaken award under Rule 60(b)).

The Motion is timely under Bankruptcy Rules 9023 and 9024, and relief is warranted under either standard because the requisite showing is met. The Eligibility Order rests on a mistaken factual premise, *i.e.*, the double counting of a single scheduled debt, and correcting that error both remedies mistake and prevents manifest injustice.

### A. Civil Rule 59(e) Permits Corrections of Manifest Factual Error

Civil Rule 59(e) permits a court to alter or amend an order, *inter alia*, where the court committed clear error or the initial decision was manifestly unjust. *See Witzer*, 2025 Bankr. LEXIS 995, at *8 (citing *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)). In response to the Motion, WHR argues the Court committed no "clear error" based on the evidence and arguments before it. (ECF 100, pp. 4:27–5:9, 7:3–5). This argument misses the point. The issue is not whether the Court erred in relying on the original schedules, but rather whether those schedules themselves reflect an error that materially affected the Court's eligibility calculation. WHR does not seriously contest that they do.

The Local Rules for the Northern District of California are illustrative and provide that a motion for reconsideration show "a material difference in fact or law exists from that which was

---

[2] Bankruptcy Rules 9023 and 9024, which derive from Civil Rules 59 and 60, respectively, applicable in bankruptcy, specify their own timing requirements in bankruptcy cases.

presented to the Court before entry of the [] order for which reconsideration is sought. The [moving] party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the [] order." N.D. Cal. L.R. 7-9(b)(1); *see* B.L.R. 1001-2 (permitting the Court to apply Northern District Local Rules that do not apply automatically). Debtor's Motion does both.

As Mr. Brown explained in his declaration, ATM's debt to Alameda County was inadvertently entered twice in Schedules E and F, and therefore double counted by the Court in the Eligibility Order. (ECF 90, p. 2 n.7; ECF 93, ¶ 6). The duplication was not apparent until ATM reviewed the schedules in the course of preparing amendments after entry of the Eligibility Order. (ECF 93, ¶ 6).

Contrary to WHR's assertion, ATM is not "simply repeating the same arguments it previously raised at Hearing." (ECF 100, pp. 6:16–22). WHR conflates this narrowly focused motion for reconsideration, which seeks to correct a material fact that the Court relied upon in calculating ATM's aggregate liquidated debt in the Eligibility Order, with ATM's request at the hearing that the Court defer ruling and consider future amended schedules before making a decision. And while ATM respectfully disagrees with the outcome in the Eligibility Order, the Motion does not reexamine the Court's treatment of WHR's claim or its effect on the determination of Subchapter V eligibility. For the narrow purpose of the Motion, ATM assumes the Court's methodology as a baseline and points to an error in a material fact. When one of the Alameda County entries is removed and the Court's methodology is applied—including the Court's determination for purposes of WHR's objection to ATM's Subchapter V eligibility that WHR's claim is $1,611,629.25—ATM's aggregate debt as of the petition date is below the statutory threshold. It would be manifestly unjust for a threshold eligibility determination to turn on a mistaken double counting of a debt.

**B. Civil Rule 60(b)(1) Also Supports Relief Where the Order Was Entered Under a Misapprehension of Material Facts**

Civil Rule 60(b)(1) provides that a court may relieve a party or its legal representative from an order for "mistake, inadvertence, surprise, or excusable neglect." However, as the Ninth

DEBTOR'S REPLY ISO MOTION FOR RECONSIDERATION 3

Circuit has recognized: "Rule 60(b)(1) is not limited to mistake or inadvertence by the [] debtor. Because the words 'mistake' and 'inadvertence' are not so limited …." *Kingvision Pay-Per-View*, 168 F.3d at 350 (citations omitted). The mistake justifying relief from judgment may be on the part of a party, counsel or the court. *Curtis v. United States*, 61 Fed. Cl. 511, 514 (2004).

As the Motion explained, the duplicate Alameda County obligation was not identified prior to the hearing because ATM's focus was in responding to the legal issue that WHR's eligibility objection presented, which is whether the debt to WHR was liquidated, not on the aggregate of every other debt reflected in the schedules. ATM was not conceding that its debt to WHR totaled $1,611,629.25; rather, it contested the inclusion of its debt to WHR in the Subchapter V calculation. In that context, the Debtor did not scrutinize each individual scheduled debt for duplication.

Although the duplicate Alameda County debt was technically available in the schedules, its presence in two separate schedules in slightly different amounts made the error non-obvious at the time. The error came to light only after the Court determined that it would treat the $1,611,629.25 calculation as dispositive and would not consider amended schedules. In the process of preparing amendments, the Debtor discovered that the same obligation to Alameda County had been listed twice. ATM promptly brought that mistake to the Court's attention.

ATM is not attempting to amend its schedules to create a "continually moving target." It seeks to correct a single error that materially affected the Court's eligibility calculation. The Eligibility Order was decided by the Court under a misapprehension of the facts and thus is based on a mistake in calculation of amounts that the Debtor believed in good faith it owed as of the petition date. *See Kemp v. United States*, 596 U.S. 528, 534 (2022) (defining "mistake" under Civil Rule 60(b)). The duplication was inadvertent, not strategic, and once discovered, it was promptly disclosed. Again, WHR's argument that the Court properly relied on the documents and evidence before it and committed no clear error misses the point. In *Cisneros v. United States (In re Cisneros)*, 994 F.2d 1462, 1467 (9th Cir. 1993), the Ninth Circuit rejected the same suggestion that there is no basis for relief under Civil Rule 60(b) if the bankruptcy court itself "acted properly" in granting a discharge. There, the bankruptcy court entered a discharge order

despite the IRS having received no payments under a confirmed Chapter 13 plan due to the trustee's mistake or inadvertence. *Id*. at 1464. The Ninth Circuit found that "[t]he order of discharge was entered by the bankruptcy court under a misapprehension as to the facts of the case. Had the court been apprised of the actual facts, it would never have entered the order.… this is precisely the sort of 'mistake' or 'inadvertence' that Rule 60(b) was intended to reach." *Id*. at 1467. Thus, the Ninth Circuit held that it was appropriate for the bankruptcy court to utilize its equitable powers under Bankruptcy Rule 9024. *Id*. at 1466.

Moreover, "Rule 60(b) is 'remedial in nature and … must be liberally applied.'" *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1262 (9th Cir. 2010) (quoting *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001), *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147–50 (2001)). In *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, the Supreme Court interpreted "neglect" broadly to encompass "faultless omissions to act and, more commonly, omissions caused by carelessness." 507 U.S. 380, 388 (1993); *see also In re Magouirk*, 693 F.2d 948, 951 (9th Cir. 1982) ("[u]nder Rule 60(b), 'excusable neglect' is liberally construed.").

To determine whether neglect is "excusable" under Civil Rule 60(b)(1), the Ninth Circuit applies the four-factor equitable balancing test articulated in *Pioneer*, 507 U.S. at 395, and *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997) (adopting the *Pioneer* test for consideration of Civil Rule 60(b) motions): "(1) the danger of prejudice to the opposing party; (2) the length of delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *See Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1224 (9th Cir. 2000).

In response to the Motion, WHR argues that it will be prejudiced by reconsideration because it incurred litigation expenses in preparing for the eligibility hearing, and that reconsideration would further delay judicial proceedings. (ECF 100, at 7:21–8:2). However, these concerns are not the type of prejudice that precludes reconsideration. *See Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984) (to be prejudicial, "[t]he standard is whether [the non-moving party's] ability to pursue [its] claim will be hindered"); *see also Westlands Water Dist. v. United*

*States*, 100 F.3d 94, 97 (9th Cir. 1996) ("[L]egal prejudice is … prejudice to some legal interest, some legal claim, some legal argument. Uncertainty because a dispute remains unresolved is not legal prejudice."); *Smith v. Lenches*, 263 F.3d 972, 976 (9th Cir. 2001) (concerning the voluntary dismissal of claims, prejudice means prejudice to a legal claim or interest, not having to incur litigation expenses); *Emerick v. Regus Mgmt. Grp., LLC*, 2019 U.S. Dist. LEXIS 114873, at *3–4 (S.D. Cal. July 9, 2019) (concerning leave to amend, neither delay nor additional litigation expenses constitute a sufficient showing of prejudice).

Similarly, prejudice to WHR "must result in greater harm than simply delaying resolution of the case," rather the standard is whether WHR's ability to pursue its claim will be hindered. *See TCI Grp. Life Ins. Plan*, 244 F.3d at 701; *Bateman*, 231 F.3d at 1225. WHR's response does not address how it would be harmed other than vague suggestions that it would "repeat the whole process" and be forced to litigate "all of the other issues raised in WHR's Objection." (ECF 100, pp. 7:21–24, 7:28–8:2). *But see Bateman*, 231 F.3d at 1225 (the loss of a "quick victory" is not prejudice); *TCI Grp. Life Ins. Plan*, 244 F.3d at 701 ("merely being forced to litigate on the merits cannot be considered prejudicial"). WHR has made its arguments in writing and at the hearing. Those arguments would not be different if the double entry for Alameda County is accounted for.

While WHR attempts to reframe the delay as months from the Debtor filing its schedules, rather than the mere days between the entry of the Eligibility Order and the filing of the Motion, this is unavailing. Courts generally measure the length of delay in filing the reconsideration motion from the entry of the order or judgment. *See, e.g.*, *Ahanchian*, 624 F.3d at 1262 (motion for reconsideration filed three days after court denied motion for extension of time to file opposition); *Bateman*, 231 F.3d at 1225 (filing motion more than one month after judgment was entered), citing *Augusta Fiberglass Coatings, Inc. v. Fodor Cont. Corp.*, 843 F.2d 808, 812 (4th Cir. 1988) (moving for relief within two weeks of the entry of judgment); *Rodriguez v. Quad Graphics, Inc.*, 2025 U.S. Dist. LEXIS 98941, at *4–5 (C.D. Cal. Apr. 4, 2025) (filing motion six weeks after court entered judgment). As explained in the Motion, ATM reasonably did not

discover the duplication error in its schedules until it was preparing the amendments and filed the Motion only five days after entry of the Eligibility Order.

While it is easy to demand perfection in a debtor's schedules signed under penalty of perjury, the reality is that, at the time of filing, ATM, as is typical in Chapter 11, was operating under significant operational pressures while continuing to run its business. ATM employs approximately 53 people across multiple functions and operates from facilities in Emeryville, Pacheco, and Irwindale, with employees located in several states. (ECF 1, p. 138; ECF 3, ¶¶ 2, 10–12, 19, 29, 38, and Ex. A). As reflected in Mr. Brown's first-day declaration, management was balancing ordinary business demands, customer relationships, vendor obligations, payroll, and cash management issues all while defending litigation filed by WHR and navigating the consequences of a personal tragedy that materially affected its Chief Operating Officer. (ECF 3, ¶¶ 11–13, 31–32, 37–38), while simultaneously preparing the petition, schedules, and first-day pleadings. During this same period, ATM had been reducing headcount, recently implemented new internal accounting systems, and was reconciling substantial invoice discrepancies, correcting mis-keyed entries, and identifying missing or misapplied invoices. (ECF 3, ¶ 9, 10; ECF 84, ¶¶ 9, 14). Under those circumstances, and with limited internal resources available to devote exclusively to bankruptcy preparation, ATM did its best to prepare its schedules carefully and accurately, but inadvertently double scheduled the Alameda County debt in the process. (ECF 93, ¶¶ 2, 4–5). The Bankruptcy Rules recognize this reality, permitting a debtor liberal amendments of its schedules at any time prior to closure of the case. Fed. R. Bankr. P. 1009(a) ("A debtor may amend a voluntary petition, list, schedule, or statement at any time before the case is closed.").

The Motion seeks reconsideration of a threshold issue in this bankruptcy case, which is whether ATM is eligible to be a debtor under Subchapter V or must proceed in traditional Chapter 11. The posture of this case is similar to that in *Rodriguez*, albeit not a bankruptcy case, where the case is still in its early stages and will not proceed until a dispositive motion is resolved. *See Rodriguez*, 2025 U.S. Dist. LEXIS 98941, at *4–5 (finding the length of delay to

DEBTOR'S REPLY ISO MOTION FOR RECONSIDERATION 7

Case: 25-30743   Doc# 102   Filed: 02/19/26   Entered: 02/19/26 16:42:49   Page 11 of 16

be reasonable and the potential impact on the proceedings to be negligible). WHR's claims of delay and litigating on the merits are insufficient to deny relief under Civil Rule 60(b).

WHR incorrectly argues that "excusable neglect determinations often come down to considering 'the reason for the negligence.'" (ECF 100, p. 8:3–5). As the Ninth Circuit cautioned in *Ahanchian*, *Pioneer/Briones* requires an equitable balancing of the four factors, and "bas[ing] [a] decision solely on whether the reason for the delay … could establish excusable neglect.… [and] ignoring the other three factors" is an abuse of discretion. 624 F.3d at 1261–62. WHR's argument confines the Court's analysis to this third factor. (ECF 100, p. 8:8–9 ("Although this may be an instance of neglect, the neglect is not 'excusable neglect.'")). As set forth above, a determination whether neglect is "excusable" requires a balancing of all four *Pioneer/Briones* factors. The third factor requires an assessment of the reasons given for neglect, which are set forth in the Motion. In *Pioneer*, the Supreme Court held excusable neglect is not limited strictly to situations caused by circumstances beyond the control of the movant. 507 U.S. at 392. As such, the Ninth Circuit has found mistakes resulting from "negligence and carelessness," not "deviousness or willfulness," may be considered excusable neglect. *Bateman*, 231 F.3d at 1225. The Debtor's mistaken scheduling of the Alameda County debt twice qualifies as "excusable" under Ninth Circuit and Supreme Court precedent when all four factors are weighed.

Finally, WHR contends ATM is not acting in good faith because the Motion points to only one mistake in the schedules while allegedly "ignor[ing] other instances in which it clearly omitted claims or under-scheduled claim amounts, which, if corrected, would operate to its detriment as to Subchapter V eligibility." (ECF 100, p. 8:12–16). This argument suggests that WHR is looking to create a moving target. It would be the surprising case in which a debtor's schedules mirrored filed claims, yet the law in the Ninth Circuit is for the Court to consider scheduled claims, and not filed claims, absent allegations of bad faith, which, as discussed in more detail below, was not alleged in connection with WHR's Subchapter V eligibility motion.

As discussed above, the scope of this Motion for Reconsideration is narrow. The Court relied on the debt amounts that ATM believed it owed as of the petition date as they were originally scheduled. However, a singular debt to Alameda County was mistakenly included

DEBTOR'S REPLY ISO MOTION FOR RECONSIDERATION 8

twice in the schedules, so the Court's resulting calculation of ATM's aggregate noncontingent, liquidated debt is a manifest error of fact. The Motion properly seeks to correct that mistake in the record, not rewrite history. As Mr. Brown explained in his declaration, the Debtor also discovered that the Alameda County "bill was paid in full prior to the filing, so the claim should have been zero" (ECF 93, ¶ 8), but the Motion does not seek to amend that or any other debt amount based on post-petition discoveries, as WHR seemingly would invite the Debtor and the Court to do.

In the Chapter 13 context, the Ninth Circuit was clear in *Scovis v. Henrichsen (In re Scovis)*, 249 F.3d 975, 981–82 (9th Cir. 2001), that "the rule for determining [] eligibility under § 109(e) should normally be determined by the debtor's originally filed schedules, checking only to see if the schedules were made in good faith."[3] *See also Comprehensive Acct. Corp. v. Pearson (In re Pearson)*, 773 F.2d 751, 757 (6th Cir. 1985) (eligibility should normally be determined by the debtor's schedules checking only to see if the schedules were made in good faith); *In re Baker*, 625 B.R. 27, 32 (Bankr. S.D. Tex. 2020) ("A debtor's eligibility for Subchapter V relief must be determined based on the information contained within debtor's schedules on the petition date.") (citing 11 U.S.C. § 101(51D)). Recently, in *EmCyte Corp. v. Stahl (In re Stahl)*, 2021 Bankr. LEXIS 921, at *15 (B.A.P. 9th Cir. Apr. 7, 2021), the Ninth Circuit Bankruptcy Appellate Panel (the "BAP") expanded on the rule:

> It is well established in this circuit that § 109(e) eligibility issues 'should normally be determined by the debtor's originally filed schedules, checking only to see if the schedules were made in good faith.' However, 'where a *good faith objection to eligibility* has been filed by a party in interest, the bankruptcy court can make a

---

[3] WHR's opposition argues that *Scovis*'s rules for determining debtor eligibility is not binding on the Court in a Subchapter V case. (ECF 100, p. 10:8–28). However, numerous courts have found the standard in § 109(e) and §§ 1182(1) and 101(51D) to be practically the same. *See*, *e.g.*, *In re Parking Mgmt.*, 620 B.R. 544, 547 (Bankr. D. Md. 2020) ("There is no discernible difference in this language, considering how the phrase as of as used in the Bankruptcy Code is interpreted by the courts." (citation omitted)); *Reed Action Judgment Creditors v. Alecto Healthcare Servs. LLC (In re Alecto Healthcare Servs., LLC)*, 2025 U.S. Dist. LEXIS 61698, at *23–24 (D. Del. Mar. 31, 2025) ("The slight variation in the language used in the two sections has been deemed insignificant." (citation omitted)); *In re Articon Hotel Servs. LLC*, 2025 Bankr. LEXIS 3187, at *10 (Bankr. N.D. Ill. Dec. 8, 2025) (relying on Chapter 13 precedent interpreting nearly identical statutory language regarding "noncontingent" and "liquidated" to determine Subchapter V eligibility). Thus, "[t]he standards developed by the courts for Chapter[] 13 eligibility determinations provide useful guidance for 11 U.S.C.S. § 1182." *Parking Mgmt.*, 620 B.R. at 547.

limited inquiry outside of the schedules to determine if the Debtor estimated her debts in good faith, and if not, whether she was eligible for chapter 13 relief.'

(Emphasis added; citations omitted). The BAP considered what is meant by a "good faith objection to eligibility," and held:

> the exigencies of chapter 13 practice and the strong need for prompt and efficient § 109(e) eligibility determinations militate in favor of a rule that affords the bankruptcy court with broad discretion to rely exclusively on the debtor's schedules. Based on our analysis of the decisions discussed above, such exclusive reliance does not constitute an abuse of discretion unless a creditor (or the trustee): (1) objects on eligibility grounds; (2) alleges in good faith that the debtor's schedules were filed in bad faith; and (3) points to or presents concrete, specific evidence indicating that the debtor manipulated the scheduled debt amounts in order to fall within § 109(e)'s debt limits.

2021 Bankr. LEXIS 921, at *20.

Significantly, in its objection, WHR *never* alleged the Debtor's schedules were filed in bad faith, and did not point to or present any evidence that ATM manipulated the debt amounts in the original schedules to fall under the limits in §§ 1182(1) and 101(51D). (ECF 61 and 80). WHR asks the Court to look beyond the schedules to consider pleadings and proofs of claims filed *after* the petition date and compare those to what the Debtor, in good faith, reasonably believed it owed on the petition date to find evidence of omissions or under-scheduling (while apparently ignoring any over-scheduling) in the schedules. (ECF 100, pp. 8:12, 11:1–8). Not only is this improper, it does not establish bad faith and is of no utility to determining what the Debtor's liquidated debt was as of the petition date.

First, the schedules required the Debtor to attest that the information contained therein were true and correct to the best of its knowledge. They were. As long as a debtor's schedules are completed after the exercise of a reasonable level of diligence and are filed in good faith, the schedules will determine a debtor's eligibility. *See In re Smith*, 325 B.R. 498, 502 (Bankr. D.N.H. 2005) (*cf. Scovis*). WHR never contended ATM's schedules were filed in bad faith. (ECF 61 and 80).

Second, § 101(51D) explicitly focuses the court's inquiry on "aggregate noncontingent liquidated secured and unsecured *debts* as of the date of the filing of the petition"—not *claims*. *See Alecto Healthcare Servs.*, 2025 U.S. Dist. LEXIS 61698, at *33 (holding under section

DEBTOR'S REPLY ISO MOTION FOR RECONSIDERATION 10

Case: 25-30743 Doc# 102 Filed: 02/19/26 Entered: 02/19/26 16:42:49 Page 14 of 16

1182(1), the question is whether *debt* was liquidated on the petition date; not a creditor's *claim*). The *Alecto* court explained:

> In reference to Chapter 13 eligibility, it has been observed that "Congress made a conscious choice when it employed the term 'debt' instead of 'claim' in the context of Section 109(e)." "['C]laim' has a broader significance, referring to a creditor's demand for payment, regardless of the existence or validity of the underlying obligation or to the accuracy of the amount demanded, while 'debt' has a narrower significance …." Congress defined the term "debt" to mean "liability on a claim." The term "claim" is defined far more broadly, to mean "right to payment, whether or not such right is liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed …." "The term 'claim' was avoided because the Congress did not wish the eligibility determination to be predicated upon the mere demands of creditors." "[A]gain, for purposes of Subchapter V and Chapter 13 eligibility, only debts that are contingent or unliquidated are excluded from the computation."

2025 U.S. Dist. LEXIS 61698, at *33–34 (cleaned up; citations omitted). WHR's suggestion to look beyond the schedules and ATM's discrete correction would draw the Court into a lengthy examination of proofs of claim that is incompatible with the need for "prompt and efficient" eligibility determination under §§ 1182(1) and 101(51D) and wholly detached from the express statutory language, and is more appropriately left to claims allowance under § 502. The Court should decline such an invitation.

The Ninth Circuit has made clear that "[b]ankruptcy courts, as courts of equity, have the power to reconsider, modify or vacate their previous orders so long as no intervening rights have become vested in reliance on the orders." *Meyer v. Lenox (In re Lenox)*, 902 F.2d 737, 739–40 (9th Cir. 1990). Here, ATM filed the Motion promptly after entry of the Eligibility Order and discovery of the duplicate debt scheduled in favor of Alameda County. (ECF 92). The Motion brings to the Court's attention a material difference in fact that would alter the outcome in the Eligibility Order. The Court suspended the deadlines in the Eligibility Order pending resolution of the Motion. (ECF 96). No creditor has changed its position in reliance on the Eligibility Order. Accordingly, there is no impediment to the Court granting relief under Civil Rule 59(e) or 60(b)(1).

### III. CONCLUSION

The Eligibility Order rests on a calculation that double-counts a single debt to Alameda County. Under the Court's own methodology, correcting that duplication places ATM below the

DEBTOR'S REPLY ISO MOTION FOR RECONSIDERATION 11
Case: 25-30743   Doc# 102   Filed: 02/19/26   Entered: 02/19/26 16:42:49   Page 15 of 16

Subchapter V eligibility limit. Civil Rules 59(e) and 60(b)(1) exist to permit courts to correct precisely this type of factual misapprehension. No intervening rights have vested. No prejudice will result. The relief sought is narrow and merely arithmetic. For these reasons, ATM respectfully requests that the Court grant the Motion and reconsider the Eligibility Order accordingly.

Dated: February 19, 2026

FINESTONE HAYES LLP

*/s/ Stephen D. Finestone*
Stephen D. Finestone
Jennifer C. Hayes
Attorneys for American Trash Management, Inc., Debtor-in-Possession