Stephen D. Finestone (125675)
Jennifer C. Hayes (197252)
Johnson C. Lee (253775)
FINESTONE HAYES LLP
456 Montgomery Street, Suite 1300
San Francisco, CA 94104
Tel.:    (415) 421-2624
Fax:     (415) 398-2820
Email: sfinestone@fhlawllp.com
Email: jhayes@fhlawllp.com
Email: jlee@fhlawllp.com

Attorneys for American Trash Management, Inc.,
Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>AMERICAN TRASH MANAGEMENT, INC.,<br><br>Debtor-in-Possession. | Case No. 25-30743-HLB<br><br>Chapter 11<br><br>**NOTICE OF OBJECTION AND OBJECTION TO AMENDED CLAIM NO. 19 (WHR HOLDINGS, LLC)[1]** |

---

[1] Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure, and "B.L.R." references are to the Bankruptcy Local Rules for the Northern District of California. "ECF" references are to the docket in the above-captioned proceeding. All "ECF" and "Claim No." page references are to the ECF pagination, not internal pagination.

Case: 25-30743   Doc# 158   Filed: 05/26/26   Entered: 05/26/26 19:29:01   Page 1 of 21

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................1

II.   ARGUMENT ...............................................................................................2

    A.   The Amended Claim's Demand for $2,151,309.18 in Interest Must Be Disallowed in Its Entirety.............................................................2

        1.    The 2007 Agreement is governed by the UCC, under which course of performance may waive or modify written terms. ...............................3

        2.    Seventeen years of course of performance waived or modified the Section 3(g) interest provision. ..................................................3

        3.    Claimant's belated 2024 demand for interest cannot retroactively resurrect the waived provision. ..................................................4

    B.   The Amended Claim Overstates the Principal Owed Because Claimant Failed to Credit the Debtor for Payments, Markups, and Canceled Projects. ......................................................................................5

        1.    Claimant failed to apply substantial payments, markups, and deductive change orders directed by the Debtor.........................................6

        2.    Claimant failed to remove canceled or on hold projects from its receivable. ............................................................................7

        3.    The Debtor's reconciliation establishes principal of no more than $1,611,629.25 as of the Petition Date.............................................8

    C.   The Debtor Holds Setoff and Recoupment Rights of At Least $400,000 Against the Amended Claim for Claimant's Warranty Breaches..........................8

        1.    Claimant's products were consistently defective, requiring warranty work the Debtor was forced to perform. ....................................9

        2.    The Debtor's damages from Claimant's warranty breaches exceed $400,000 and must be set off against the Amended Claim. ....................10

    D.   The Amended Claim Is Not Entitled to Prima Facie Validity Because Claimant's Own Calculations Have Been Materially Inconsistent. ....................11

III.   NOTICE AND REQUESTED RELIEF ........................................................12

**Cases**

*Allapattah Servs. v. Exxon Corp.*, 61 F. Supp. 2d 1308 (S.D. Fla. 1999)...................................3

*In re Heath*, 331 B.R. 424 (B.A.P. 9th Cir. 2005) ....................................................................11

*Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035 (9th Cir. 2000)................................11

*Nanakuli Paving & Rock Co. v. Shell Oil Co., Inc.*, 664 F.2d 772 (9th Cir. 1981)........................3

*Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392 (9th Cir. 1996).................................8

*White v. Ocean Bay Marina, Inc.*, 778 So. 2d 412 (Fla. Dist. Ct. App. 2001)..............................3

**Statutes**

11 U.S.C. § 101(5) ....................................................................................................................2

11 U.S.C. § 553.........................................................................................................................8

Cal. Comm. Code § 1303 ......................................................................................................3, 11

Cal. Comm. Code § 1303(f) ...................................................................................................3, 5

Cal. Comm. Code § 2102 ..........................................................................................................3

Cal. Comm. Code § 2209(1).......................................................................................................5

Cal. Comm. Code § 2209(5).......................................................................................................5

Cal. Comm. Code § 2601 .........................................................................................................10

Cal. Comm. Code § 2714 .........................................................................................................10

Cal. Comm. Code § 2715 .........................................................................................................10

Fla. Stat. § 671.201(3)...............................................................................................................3

Fla. Stat. § 671.205..................................................................................................................11

Fla. Stat. § 671.205(6)...........................................................................................................3, 5

Fla. Stat. § 672.102 ..................................................................................................................3

Fla. Stat. § 672.209(1)...............................................................................................................5

Fla. Stat. § 672.209(5)...............................................................................................................5

Fla. Stat. § 672.601 .................................................................................................................10

Fla. Stat. § 672.714 .................................................................................................................10

Fla. Stat. § 672.715 .................................................................................................................10

UCC § 1-303(f) ..................................................................................................................3

**Rules**

B.L.R. 3007-1 ...................................................................................................................12

B.L.R. 9014-1(b)(3) ..........................................................................................................12

Fed. R. Bankr. P. 3001(f) .............................................................................................2, 11

Case: 25-30743    Doc# 158    Filed: 05/26/26    Entered: 05/26/26 19:29:01    Page 4 of
21

**TO WHR HOLDINGS, LLC AND ITS ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that American Trash Management, Inc. ("ATM" or the "Debtor"), the debtor and debtor-in-possession in the above-referenced Chapter 11 case, objects to Amended Proof of Claim No. 19 (the "Amended Claim") filed on December 23, 2025 by WHR Holdings, LLC ("WHR" or "Claimant") in the asserted amount of $3,819,645.46. An authentic copy of the Amended Claim, without attachments, is attached as "**Exhibit 1**."

## I. INTRODUCTION

Claimant asserts a disputed claim against the Debtor in the amount of $3,819,645.46, comprised of two components, each of which is defective. The Amended Claim is overstated, wrongly seeks recovery of more than $2.1 million in interest that Claimant waived or modified through seventeen years of consistent course of performance, fails to credit the Debtor for payments, deductive change orders, and canceled projects, and ignores substantial warranty-based setoff and recoupment rights held by the Debtor.

*First*, the Amended Claim seeks $2,151,309.18 in alleged contractual interest accrued from 2010 through the Petition Date. Claimant is not entitled to recover any interest because, throughout the parties' more than seventeen-year course of performance, Claimant never invoiced, demanded, or charged interest on past due amounts—even on invoices that remained unpaid for years—and thereby waived or modified by course of performance any contractual right to interest under the 2007 Agreement (defined below).

*Second*, the Amended Claim's asserted principal of $1,668,336.28 is still overstated by at least $56,707.03—even after Claimant's significant reduction of the asserted amount owed in the original Proof of Claim by $873,396.20 due to admitted errors in Claimant's accounting—because Claimant failed to credit the Debtor for substantial payments applied to the wrong invoices, failed to apply deductive change orders and project markups directed by the Debtor, and failed to remove canceled or held projects from its receivable. The Debtor's reconciliation establishes that, at most, no more than $1,611,629.25 is owed as principal.

*Third*, even as to the allowed principal amount, the Debtor holds substantial setoff and recoupment rights against the Amended Claim for Claimant's years-long pattern of shipping

NOTICE OF OBJECTION AND OBJECTION TO AMENDED CLAIM NO. 19      1

defective and substandard products that the Debtor was forced to repair, remediate, and replace at its own expense, causing the Debtor damages in excess of $400,000.

*Finally*, the Amended Claim is not entitled to prima facie validity under Bankruptcy Rule 3001(f) because Claimant's own calculations of the amount owed have been materially inconsistent. Within the span of approximately six weeks, Claimant's Chief Executive Officer reduced the asserted total claim amount under penalty of perjury by $1,038,736.99—a swing that, by Claimant's own admission, reflects errors in its application of payments and joint checks to specific invoices.

Accordingly, the Amended Claim fails to satisfy Bankruptcy Rule 3001 and does not establish a valid "right to payment" under § 101(5) for the amounts asserted, and should be reduced, at most, to a general unsecured claim of $1,211,629.25, reflecting no more than $1,611,629.25 in principal and reduced by not less than $400,000 in warranty-related setoff/recoupment. The Debtor objects to the Amended Claim on the following grounds.

## II. ARGUMENT

### A. The Amended Claim's Demand for $2,151,309.18 in Interest Must Be Disallowed in Its Entirety.

More than half of the Amended Claim—$2,151,309.18 of the $3,819,645.46 total—consists of alleged contractual interest. (Am. Claim No. 19 at 5–6, Attachment, ¶ 9.) Although Section 3(g) of the parties' October 1, 2007 Sale, Assignment, Exclusive Manufacturer's Representative and Authorized Service Provider Agreement (the "2007 Agreement") contains a 1.5% per month service charge provision for invoices not paid within 30 days of shipment (Am. Claim No. 19 at 11, Ex. A, § 3(g).), Claimant never invoiced, demanded, or charged any service charge or interest at any time during the parties' seventeen-plus-year course of performance, until 2024—long after a course of performance had developed under which interest was not assessed. (ECF 82, *Decl. of Scott Brown in Supp. of Debtor's Resp. to Obj. to Debtor's Subchapter V Eligibility by WHR Holdings, LLC* ("Brown Decl."), ¶¶ 5–8, 14–15; ECF 84, *Decl. of Camille Cruz in Supp. of Debtor's Resp. to Am. Obj. to Debtor's Subchapter V Eligibility by WHR Holdings, LLC* ("Cruz Decl."), ¶ 4.)

Case: 25-30743   Doc# 158   Filed: 05/26/26   Entered: 05/26/26 19:29:01   Page 6 of 21

### 1. The 2007 Agreement is governed by the UCC, under which course of performance may waive or modify written terms.

The 2007 Agreement is a contract for the sale of goods, *e.g.*, trash chutes, doors, compactors, linen chutes, storage lockers, and mailboxes, manufactured by Claimant and purchased by the Debtor for resale. (Am. Claim No. 19 at 9–12, Ex. A, §§ 1(a), 2, 3.) As such, it is governed by the Uniform Commercial Code. *See* Fla. Stat. § 672.102 (sales of goods);[2] *accord* Cal. Comm. Code § 2102. Under the UCC, the meaning of an agreement is determined by the language used by the parties and by their conduct, read in the light of commercial practice and surrounding circumstances. Fla. Stat. § 671.201(3); Cal. Comm. Code § 1303. A course of performance "is relevant to show a waiver or modification of any term inconsistent with the course of performance." Fla. Stat. § 671.205(6); Cal. Comm. Code § 1303(f); *accord* UCC § 1-303(f); *Allapattah Servs. v. Exxon Corp.*, 61 F. Supp. 2d 1308, 1315 (S.D. Fla. 1999) (citing *Nanakuli Paving & Rock Co. v. Shell Oil Co., Inc.*, 664 F.2d 772, 796–97 (9th Cir. 1981)) (course of performance and trade usage may show waiver or modification of express written terms); *White v. Ocean Bay Marina, Inc.*, 778 So. 2d 412, 414 (Fla. Dist. Ct. App. 2001) (course of conduct may modify written contract terms).

### 2. Seventeen years of course of performance waived or modified the Section 3(g) interest provision.

Despite the existence of a contractual service charge provision in Section 3(g) of the 2007 Agreement, Claimant did not invoice, demand, charge, or accept any interest on past due amounts at any time during the parties' seventeen-year course of performance prior to 2024. (Brown Decl., ¶¶ 5–8, 14–15; Cruz Decl., ¶ 4.) The Debtor was "generally always behind in payments," (Brown Decl., ¶ 6), and Claimant routinely accepted payments months—and in many cases, years—after the contractual 30-day window, without ever assessing or seeking interest. Examples of such late payments accepted without interest charges include the following:

---

[2] The 2007 Agreement designates Florida law as the governing law. (Am. Claim No. 19 at 18, Ex. A, § 12(a).) Florida and California have each adopted the Uniform Commercial Code, including UCC § 1-303 governing course of performance, course of dealing, and usage of trade. Citations herein are to both the Florida and California statutory codifications of the UCC.

| Payment | Invoices Paid | Interest Charged or Paid |
|---|---|---|
| Check # 268384, dated 4/9/2020, in the sum of $62,782.80 | Paid more than 57 invoices dated in 2018 | No interest charged by Claimant or paid by the Debtor. |
| Check # 269147 (1/20/2021), in the sum of $47,456.20, and Check # 269240 (2/26/2021), in the sum of $47,456.50 | Paid WHR Invoice DI1536B dated 9/14/20; terms on this invoice were 45 days | No interest charged by Claimant or paid by the Debtor. |
| Check # 269718 (7/20/2021), in the sum of $78,591.33 | Paid over 50 invoices dated in 2016 | No interest charged by Claimant or paid by the Debtor. |
| Check # 270605, dated 4/07/2022, in the sum of $105,885.80 | Paid approximately 56 invoices dated in 2015 | No interest charged by Claimant or paid by the Debtor. |
| ACH Payment # 5643409, dated 3/17/2023, in the sum of $15,540.00 | Paid WHR Invoice DI16885 dated 11/19/21; terms on this invoice were 45 days | No interest charged by Claimant or paid by the Debtor. |

(Brown Decl., ¶ 7.) Claimant's own collection records corroborate this pattern. From 2020 through May 2023, Claimant's accounting representative Jacqueline Torres regularly sent the Debtor follow-up emails attaching statements ("Quotes vs. Small Part Orders") and a chart of total balances owed for each year. (Cruz Decl., ¶ 2.) From March 2024 through February 2025, Claimant's Santiago Poveda sent the Debtor individual collection notices, each accompanied by either a breakdown chart or a copy of the invoice. (Cruz Decl., ¶ 3.) "Notably, none of the collection notices sent from 2020 to 2025" by either Ms. Torres or Mr. Poveda "reflect any interest or penalty fees accrued or owing due to nonpayment." (Cruz Decl., ¶ 4.) Nor did the Debtor ever receive a statement, invoice, or collection notice from Claimant assessing interest. (Brown Decl., ¶ 16.) This unbroken, decade-and-a-half pattern of accepting late payments without ever charging or invoicing interest constitutes a course of performance establishing waiver, or, alternatively, modification of the Section 3(g) service charge provision.

### 3. Claimant's belated 2024 demand for interest cannot retroactively resurrect the waived provision.

It was not until 2024, after years of warranty disputes and after Claimant's unilateral imposition of new payment terms that delayed shipment of products and caused the Debtor to lose at least $869,316.23 in contracts, that Claimant first demanded interest. (Brown Decl.,

Case: 25-30743   Doc# 158   Filed: 05/26/26   Entered: 05/26/26 19:29:01   Page 8 of 21

¶¶ 10–11, 14–16.) That belated demand "came as a complete surprise to [the Debtor], given [Claimant's] failure to charge interest on past due amounts, since the inception of the parties' relationship in 2007." (Brown Decl., ¶ 16.)

Claimant's 2024 attempt to revive the Section 3(g) service charge cannot reach invoices already governed by the parties' established course of performance. The seventeen-year course of performance worked a modification of Section 3(g) that is binding under Florida Statutes § 672.209(1) and California Commercial Code § 2209(1), neither of which requires consideration. *See* Fla. Stat. § 671.205(6); Cal. Comm. Code § 1303(f) (course of performance "is relevant to show a waiver or *modification* of any term inconsistent with the course of performance" (emphasis added)). Even if treated as a waiver rather than a modification, retraction under Florida Statutes § 672.209(5) and California Commercial Code § 2209(5) is limited to "executory" portions of the contract, and the no-interest waivers as to invoices that were already late, paid, and accepted in the years preceding 2024 were fully consummated, not executory, and cannot now be revisited. And to the extent any portion of the parties' arrangement remained executory in 2024, retraction is barred because it "would be unjust in view of a material change of position in reliance on the waiver." Fla. Stat. § 672.209(5); Cal. Comm. Code § 2209(5). The Debtor relied on the parties' longstanding no-interest practice in structuring its pricing, payment timing, and project financing over the course of seventeen years, making any unilateral retraction now inequitable.

Because Claimant modified or waived its right to charge interest under the 2007 Agreement, the $2,151,309.18 interest portion of the Amended Claim should be disallowed in its entirety.

**B.      The Amended Claim Overstates the Principal Owed Because Claimant Failed to Credit the Debtor for Payments, Markups, and Canceled Projects.**

Even setting aside the interest issue, the principal portion of the Amended Claim— $1,668,336.28—is still overstated by at least $56,707.03 (Cruz Decl., ¶¶ 9–21), even after Claimant reduced its asserted principal by $873,396.20 between the filing of its original Proof of Claim on November 5, 2025 and the Amended Proof of Claim on December 23, 2025. Beginning

in mid-2023, when the parties moved to a complicated joint check and prepayment process, Claimant's recordkeeping with respect to the Debtor's account broke down. (Brown Decl., ¶¶ 9–10; Cruz Decl., ¶¶ 5–9.) Notably, Claimant's own CEO has admitted in this case that "[t]his deviation in [Claimant's] normal payment and accounting practices with respect to the Debtor resulted in errors surrounding [Claimant's] application of deposits and/or joint checks to specific invoices in late 2023 and 2024." (ECF 80-1, *Am. Decl. of Charlton George in Supp. of Am. Obj. to Subchapter V Eligibility*, ¶ 13.) Those errors are reflected throughout the Amended Claim, in three categories.

**1. Claimant failed to apply substantial payments, markups, and deductive change orders directed by the Debtor.**

That fact that Claimant's books were materially wrong is evident on the face of the docket. On November 5, 2025, Claimant filed its original Proof of Claim asserting principal of $2,541,732.48 for products shipped, delivered, and invoiced to the Debtor. (Original Claim No. 19 at 5, Attachment, ¶¶ 8–9.) Just over six weeks later, on December 23, 2025, Claimant filed the Amended Proof of Claim reducing that principal to $1,668,336.28. (Am. Claim No. 19 at 5–6, Attachment, ¶ 9.) Claimant thus wrote down its own asserted principal by $873,396.20 in a span of less than two months—a concession that Claimant's own accounting had overstated the principal owed by hundreds of thousands of dollars, attributable (as Mr. George acknowledged) to errors in Claimant's application of payments and joint checks. (ECF 80-1 at 5, ¶ 13.)

That concession did not come from nowhere. Claimant's failures to properly account for and credit Debtor's payments had, by then, been going on for at least two years. Beginning in June 2023, the parties operated under a joint check and 10% markup arrangement under which a 10% markup on the Debtor's project billings was sent to Claimant and applied to the Debtor's outstanding balance (Brown Decl., ¶¶ 9–10; Cruz Decl., ¶¶ 5–8)—an arrangement that Claimant admittedly failed to track accurately. (ECF 80-1 at 5, ¶ 13.) In or about January 2024, the Debtor's initial reconciliation identified $133,424.45 in invoices that had been paid by the Debtor but were not applied in Claimant's books, plus a $27,177.05 variance attributable to Claimant's failure to correctly apply the Debtor's payments or executed deductive change orders.

(Cruz Decl., ¶ 9.) The Debtor's continued reconciliation of its books and records against Claimant's statements through July 2025 identified at least $151,452.00 in invoices that the Debtor had paid to Claimant but that Claimant had not credited on its books. (Cruz Decl., ¶ 17.) Specific items reflected in the Debtor's books that Claimant failed to credit under the joint check and markup arrangement include: (i) $7,954.05 in mis-keyed invoice amounts identified by the Debtor and corrected on its books, but not corrected on Claimant's books (Cruz Decl., ¶ 14(a)); (ii) $14,150.00 paid on the 2525 Van Ness project via joint check and 10% markup that Claimant never applied to its invoices (Cruz Decl., ¶ 14(b)); (iii) $5,109.00 in an outstanding deductive change order on the Clifton Hall project that Claimant never reflected in its invoice (Cruz Decl., ¶ 14(c)); and (iv) a credit balance of $0.91 on the Woodbury and Kifer projects that Claimant never applied (Cruz Decl., ¶ 19).

Even after Claimant's extraordinary $873,396.20 write-down, however, the residual principal asserted in the Amended Claim remains overstated. Based on the Debtor's continued reconciliation, the principal amount owed by the Debtor to Claimant as of the Petition Date is, at most, no more than $1,611,629.25—leaving the Amended Claim still overstated by at least $56,707.03. (Cruz Decl. ¶¶ 20–21.)

### 2. Claimant failed to remove canceled or on hold projects from its receivable.

Claimant's most recent claim materials continue to reflect amounts associated with projects that were canceled or placed on indefinite hold before the Petition Date and that generated no revenue against which the Debtor could be billed. (Cruz Decl., ¶ 22.) Those projects include the AC Marriott project, the 2550 Irving Street project, and the 4th & Ivy (Flora & Fauna) project—each of which is referenced in Annex 1 to Exhibit E of the Amended George Declaration (ECF 80-1 at 56; Am. Claim No. 19 at 56) (*see also* Cruz Decl., ¶ 22), as well as a 601 Beech order that has been on hold since March 19, 2024, and a Door PO Ave One order that should have been canceled as of October 29, 2025. (*Id.*) The Debtor cannot fully quantify the amounts attributable to these canceled and held projects without Claimant's current aging

Case: 25-30743    Doc# 158    Filed: 05/26/26    Entered: 05/26/26 19:29:01    Page 11 of 21

receivables statement, which Claimant has not provided. (*Id*.) Until Claimant produces records showing those projects have been removed, the asserted principal balance is per se unreliable.

### 3. The Debtor's reconciliation establishes principal of no more than $1,611,629.25 as of the Petition Date.

The Debtor's accounting personnel performed an extensive reconciliation between the Debtor's books and Claimant's statements, identifying invoices common to both sets of records, invoices that did not balance, deductive change orders, and payments mis-applied by Claimant. (Cruz Decl., ¶¶ 9–22.) That reconciliation established a total open balance owed by the Debtor to Claimant of $1,656,760.75 as of July 2, 2025, which the Debtor further revised downward to no more than $1,611,629.25 as of the Petition Date. (Cruz Decl., ¶¶ 20–21.) Accordingly, the principal portion of the Amended Claim should be disallowed to the extent it exceeds $1,611,629.25.[3]

### C. The Debtor Holds Setoff and Recoupment Rights of At Least $400,000 Against the Amended Claim for Claimant's Warranty Breaches.

Any amount otherwise allowed must be further reduced by the Debtor's setoff and recoupment rights for Claimant's pervasive warranty breaches, which have caused the Debtor damages in excess of $400,000. (Brown Decl., ¶¶ 12–14.) Because the Debtor's warranty claims and Claimant's payment claims arise out of the same transactions, *i.e.*, the parties' ongoing course of dealing under the 2007 Agreement, the Debtor's claims may be asserted as recoupment, which is not subject to the automatic stay and which may reduce the allowed amount of the Amended Claim irrespective of § 553 setoff requirements. *See*, *e.g.*, *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1399 (9th Cir. 1996) (recoupment available where claims arise out of the same transaction).

---

[3] The calculation of the principal balance remains unclear. Debtor's current reconciliation of $1,611,629.25 reflects the principal balance owed using the Debtor's own records and excludes any warranty-related setoff or recoupment, which is addressed separately *infra*. The Debtor reserves all rights to seek further reduction of the principal upon receipt of Claimant's current aging receivables statement and through discovery.

Case: 25-30743   Doc# 158   Filed: 05/26/26   Entered: 05/26/26 19:29:01   Page 12 of 21

**1. Claimant's products were consistently defective, requiring warranty work the Debtor was forced to perform.**

"[Claimant's] products were consistently defective and of poor and substandard quality, which resulted in extensive damage to [the Debtor], including lost profits and opportunities, and reputational harm, which forced [the Debtor] to incur substantial out-of-pocket costs and expenses." (Brown Decl., ¶ 12.) Among other defects, Claimant's currently-manufactured chute intake doors "lack the durability suitable for normal trash usage," with door panels that can be "flexed with bare hands," with wings that "pop out of alignment" under minimal pressure, with electrical interlock components that are "easily knocked out of adjustment," and with incorrectly manufactured trim that does not fit around the door. (Brown Decl., ¶ 13.) These defects required warranty work on a substantial portion of the over 400 Claimant chutes installed by the Debtor in recent years. (*Id.*)

Section 4(b) of the 2007 Agreement provides that Claimant "shall reimburse [the Debtor] for any . . . authorized warranty repairs or service," (Am. Claim No. 19 at 12, Ex. A, § 4(b)), and Claimant has not done so. In all but a few limited cases involving replacement parts, the Debtor has received no reimbursement for any of the substantial labor and out-of-pocket expenses it has incurred in correcting Claimant's defective products. (Brown Decl., ¶ 14.) Recent examples of Claimant's product-related breaches, all of which required corrective work performed and paid for by the Debtor, include:

- February 2024 through June 2024, Job # SP07952: replacement trim and services required to correct defective through-wall trim with incorrect hole location;

- March 2024 through May 2024, Job # DI15611: replacement trim and services required to correct defective through-wall trim with incorrect hole location;

- April 2024 through May 2024, Job # DI15465L2: replacement trim and services required to correct trim with incorrect keypad labels;

- May 2024 through June 2024, Job # DI15812: replacement part and services needed to correct faulty air solenoid;

- October 2024 through January 2025, Job # DI15668: replacement part and services needed to correct faulty through-wall door;

- October 2024, Job # DI1558-DI15581L2: replacement trim and services required to correct trim with incorrect keypad labels (approximately 38 doors affected); and

NOTICE OF OBJECTION AND OBJECTION TO AMENDED CLAIM NO. 19    9

- December 2024, Job # DI15932 L4, 5, 6: repair services for two D&S units required to fix leak caused by faulty units.

(Brown Decl., ¶ 13.)

Claimant's shipment of non-conforming and defective products breached the standard limited product warranty that Claimant recognizes in the 2007 Agreement (Am. Claim No. 19 at 13, Ex. A, § 5(a)); and also breached its core contractual obligation to deliver conforming goods, *see* Fla. Stat. § 672.601; Cal. Comm. Code § 2601. Claimant previously suggested that the Debtor "did not submit any such notice or claim under the terms of the Agreement," (ECF 85-1 at 3, *Supp. Decl. of Charlton George in Supp. of Reply to Debtor's Resp. to Am. Obj. to Debtor's Subchapter V Eligibility by WHR Holdings, LLC*, ¶ 8); however, Mr. Brown's testimony that Claimant "failed to adequately or timely respond to or address these issues" (Brown Decl., ¶ 14) confirms that notice was given, as Claimant cannot have failed to respond to issues of which it was unaware. Claimant was on notice of the defects underlying these warranty claims. And independent of any contractual reimbursement obligation, those breaches entitle the Debtor to damages measured by the cost of cure, the diminished value of the non-conforming goods, and consequential damages, *see* Fla. Stat. §§ 672.714, 672.715; Cal. Comm. Code §§ 2714, 2715, all of which the Debtor may assert by way of recoupment to reduce the allowed amount of the Amended Claim.

2. **The Debtor's damages from Claimant's warranty breaches exceed $400,000 and must be set off against the Amended Claim.**

The Debtor's out-of-pocket damages from Claimant's product-related breaches—including labor to perform warranty work, replacement materials not provided by Claimant, and other corrective costs—exceed $400,000. (Brown Decl., ¶ 14.) That figure does not include consequential damages such as lost profits and reputational harm from delivering defective product to the Debtor's general-contractor customers, which the Debtor reserves the right to assert. (*Id.*) The Debtor accordingly holds setoff and recoupment rights of not less than $400,000 that must be applied against any allowed amount of the Amended Claim. To the extent Claimant argues that contractual limitations preclude these warranty-based offsets, that question is itself

Case: 25-30743   Doc# 158   Filed: 05/26/26   Entered: 05/26/26 19:29:01   Page 14 of 21

subject to determination by a trier of fact based on the parties' lengthy course of performance, course of dealing, and usage of trade. *See* Fla. Stat. § 671.205; Cal. Comm. Code § 1303.

**D. The Amended Claim Is Not Entitled to Prima Facie Validity Because Claimant's Own Calculations Have Been Materially Inconsistent.**

A proof of claim that complies with Bankruptcy Rule 3001 constitutes prima facie evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). However, the objecting party overcomes the prima facie effect of Bankruptcy Rule 3001(f) by producing evidence of probative force equal to that of the claimant's proof of claim. *See Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000). Where the proof of claim itself reflects substantial internal inconsistencies, the claim is not entitled to that presumption. *See, e.g.*, *In re Heath*, 331 B.R. 424, 433 (B.A.P. 9th Cir. 2005) (proof of claim must be supported by sufficient documentation to establish a prima facie case). Once the prima facie effect of Bankruptcy Rule 3001(f) is overcome, the burden shifts back to the claimant to prove the validity and amount of the claim by a preponderance of the evidence. *Lundell*, 223 F.3d at 1039; *Heath*, 331 B.R. at 435.

On November 13, 2025—less than six weeks before filing the Amended Proof of Claim—Claimant filed an objection to the Debtor's Subchapter V eligibility (ECF 61), supported by a sworn declaration of its Chief Executive Officer, Charlton George (ECF 62). In that declaration, Mr. George attested under penalty of perjury that the Debtor owed Claimant $4,858,382.45, comprised of $2,541,732.48 in unpaid invoices and $2,316,649.97 in unpaid interest, and that those amounts were "accurate based on [Claimant's] business records kept in the ordinary course of business." (ECF 62 at 6, ¶ 14.)

The next month, on December 23, 2025, Claimant filed the Amended Proof of Claim asserting a materially different amount: $3,819,645.46, comprised of $1,668,336.28 in unpaid invoices and $2,151,309.18 in unpaid interest. (Am. Claim No. 19 at 5–6, Attachment, ¶ 9.) Claimant has now reduced its previously-sworn claim amount by $1,038,736.99, with Mr. George acknowledging that the prior figures contained "errors surrounding [Claimant's] application of deposits and/or joint checks to specific invoices in later 2023 and 2024." (ECF 80-

Case: 25-30743   Doc# 158   Filed: 05/26/26   Entered: 05/26/26 19:29:01   Page 15 of 21

1 at 5, ¶ 13.) That reduction was driven mainly by Claimant's own substantial write-down of asserted principal, as discussed above, confirming errors in Claimant's underlying recordkeeping. A claim whose total dollar amount has shifted by more than $1 million within six weeks—based on errors that, by Claimant's own admission, forced it to re-examine its records—is not entitled to prima facie validity, and the burden of proving each component remains with Claimant. The Debtor reserves all rights to challenge each component of the Amended Claim, including through discovery into Claimant's accounting practices and production of its current aging receivables records. (Cruz Decl., ¶ 22.)

The Debtor is continuing to investigate each portion of the Amended Claim and expressly reserves all rights, including but not limited to supplementing or amending this objection as to the validity, amount, priority, or allowability of the Amended Claim as additional information becomes available, and asserting affirmative claims for breach of contract and breach of warranty (whether by counterclaim, adversary proceeding, or otherwise) for damages exceeding the amount of any allowed claim.

### III. NOTICE AND REQUESTED RELIEF

The procedure for an objection to claim is governed by Bankruptcy Local Rule ("B.L.R.") 3007-1 and 9014-1(b)(3). Pursuant to B.L.R. 3007-1 and 9014-1(b)(3), the Debtor may request an order disallowing the claim without a hearing unless within thirty days of the date of service of this notice, Claimant files with the Court and serves a copy on counsel for the Debtor at the address set forth above, a written Request for a Hearing or an Objection to the Requested Relief:

Any objection to the requested relief, or a request for hearing on the matter, must be filed and served upon the initiating party within thirty days of mailing the notice;

Any objection or request for a hearing must be accompanied by any declarations or memoranda of law any requesting party wishes to present in support of its position;

If there is no timely objection to the requested relief or a request for hearing, the court may enter an order granting the relief by default.

In the event of a timely objection or request for hearing:

Case: 25-30743   Doc# 158   Filed: 05/26/26   Entered: 05/26/26 19:29:01   Page 16 of 21

The initiating party will give at least thirty days written notice of the hearing to the objecting or requesting party, and to any trustee or committee appointed in the case.

If no Request for a Hearing or an Objection to the Requested Relief is timely filed and served, the Debtor will seek entry of an order:

(1) Disallowing in its entirety the $2,151,309.18 portion of the Amended Claim asserted as accrued contractual interest;

(2) Disallowing the portion of the Amended Claim for alleged unpaid invoices to the extent it exceeds $1,611,629.25;

(3) Reducing any portion of the Amended Claim otherwise allowed by not less than $400,000 on account of the Debtor's setoff and recoupment rights for Claimant's warranty breaches;

(4) Allowing the Amended Claim, at most, as a general unsecured claim in the amount of $1,211,629.25; and

(5) Granting such other and further relief as the Court deems just and proper.

Dated: May 26, 2026             FINESTONE HAYES LLP

                              */s/ Stephen D. Finestone*
                              Stephen D. Finestone
                              Attorneys for American Trash Management,
                              Inc., Debtor-in-Possession

Case: 25-30743    Doc# 158    Filed: 05/26/26    Entered: 05/26/26 19:29:01    Page 17 of 21

# Exhibit 1

**Fill in this information to identify the case:**

Debtor 1   American Trash Management, Inc.

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court   **California Northern Bankruptcy Court**

Case number:  **25−30743**

## Official Form 410
# Proof of Claim

**04/25**

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

WHR Holdings, LLC

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

WHR Holdings, LLC

Name

3402 Southwest 26th Terrace
Unit B−10
Dania Beach, FL 33312

Contact phone _____

Contact email _____

Uniform claim identifier (if you use one):
_____

**Where should payments to the creditor be sent?** (if different)

Name

Contact phone _____

Contact email _____

**4. Does this claim amend one already filed?**

☐ No
☑ Yes. Claim number on court claims registry (if known)   19   Filed on   11/05/2025
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing?

Official Form 410                    Proof of Claim                    page 1

| | | |
|---|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ | |

7. **How much is the claim?**
$ _____3819645.46_____

**Does this amount include interest or other charges?**
☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

_____See attachment_____

9. **Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ _____

**Amount of the claim that is secured:** $ _____

**Amount of the claim that is unsecured:** $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ _____

**Annual Interest Rate** (when case was filed) _____ %

☐ Fixed
☐ Variable

10. **Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

11. **Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: _____

Case 25-30743 Doc# 1519 Filed 05/26/25 Entered 05/26/26 10:29:03 Page 2 of 21

| 12. | **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No ☐ Yes. *Check all that apply*: | **Amount entitled to priority** |
|---|---|---|---|

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).   $ _____

☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).   $ _____

☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).   $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).   $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).   $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies   $ _____

\* Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐  I am the creditor.

☑  I am the creditor's attorney or authorized agent.

☐  I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐  I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   12/23/2025

MM / DD / YYYY

/s/  Charlton George

Signature

Print the name of the person who is completing and signing this claim:

Name   Charlton George

First name   Middle name   Last name

Title   Chief Executive Officer

Company   WHR Holdings, LLC

Identify the corporate servicer as the company if the authorized agent is a servicer

Address   3406 SW 26th Terrace, Unit B–10

Number   Street

Dania Beach, FL 33312

City   State   ZIP Code

Contact phone   860.306.6900   Email   cgeorge@whrise.com

Case 25-30743   Doc 1581   Filed 05/26/25   Entered 05/26/26 10:29:01   Page 3 of 21