**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re American Trash Management, Inc., Debtor-in-Possession. | Case No. 25-30743-HLB Chapter 11 |

**COMBINED CHAPTER 11 PLAN AND**
**DISCLOSURE STATEMENT DATED AUGUST 7, 2026**

**INTRODUCTION**

This is the *Combined Chapter 11 Plan of Reorganization and Disclosure Statement* (the "Plan") proposed by debtor-in-possession American Trash Management, Inc. (the "Debtor").[1] This Plan identifies each known creditor by name or class and describes how each claim will be treated if the Plan is confirmed.

       Part 1 contains the treatment of secured claims.

       Part 2 contains the treatment of general unsecured claims and equity interests.

       Part 3 contains the treatment of administrative and priority claims.

       Part 4 contains the treatment of executory contracts and unexpired leases.

       Part 5 contains the effects of confirmation of the Plan.

       Part 6 contains creditor remedies if the Debtor defaults on its obligations under the Plan.

       Part 7 contains general provisions of the Plan.

Creditors in impaired classes are entitled to vote on confirmation of the Plan. Completed ballots must be received by the Debtor's counsel, and objections to confirmation must be filed and served no later than [*insert date*] at [*insert time*]. The Court will hold a hearing on confirmation of the Plan on [*insert date*] at [*insert time*].

Attached to the Plan are exhibits containing financial information that may help you decide how to vote and whether to object to confirmation. Exhibit 1 includes background information regarding the Debtor and the events that led to the filing of the bankruptcy petition and describes significant events that have occurred during this Chapter 11 case. Exhibit 2 contains an analysis of how much creditors would likely receive in a Chapter 7 liquidation. Exhibit 3 provides financial information based on past performance and project improvement in financial operations. Exhibit 4 analyzes the feasibility of the Plan, both on the Effective Date (defined below) and overall.

---

[1] Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

Combined Plan of Liquidation and Disclosure Statement
Dated August 7, 2026                                      Page 1

Whether the Plan is confirmed is subject to complex legal rules that cannot be fully described here. You are strongly encouraged to read the Plan carefully and to consult an attorney to help you determine how to vote and whether to object to confirmation of the Plan.

If the Plan is confirmed, the payments promised in the Plan constitute new contractual obligations that replace the Debtor's pre-confirmation debts. Creditors may not seize their collateral or enforce their pre-confirmation debts so long as the Debtor performs all obligations under the Plan. If the Debtor defaults in performing Plan obligations, any creditor can file a motion to have the case dismissed or converted to a Chapter 7 liquidation or enforce their non-bankruptcy rights.

Upon confirmation of the Plan, the Plan shall be administered by the Reorganized Debtor as Reorganized Debtor. The Reorganized Debtor will be responsible for making all distributions to creditors under the Plan, among other things.

**GENERAL DESCRIPTION OF THE PLAN**

As described below and as reflected in the attached projections, Debtor will continue to operate its business, which is now being operated profitably. The Debtor will pay creditors from future operations and an infusion of funds from its equity ownership (Scott Brown),**.** The exact amount of funds will depend on Debtor's cash position at of the confirmation date. Debtor currently estimates the funds being provided by Mr. Brown at $1,250,000 - $1,500,000. In general terms, Debtor will pay off the secured debt of Fremont Bank within one year from confirmation, will pay off the automobile lenders pursuant to the terms of the contracts, will pay off the priority debts within five years of the petition date in compliance with Section 1129(a)(9)(c), and will make payments to the general unsecured creditors as set forth below, other than the alternate treatments proposed for Class 2.2 below. While the Plan provides for payment over time to various classes of creditors, Debtor may pay off the creditors early if it has the financial ability to do so.

You are strongly encouraged to review the Exhibits that follow the Plan for further information.

**PART 1: TREATMENT OF SECURED CLAIMS**

**Class 1.1: Secured claim of Fremont Bank**

Fremont Bank has a claim secured by the Debtor's assets. Debtor estimates that as of the date of this Plan and Disclosure Statement the amount of the claim is $approximately $480,000. The claim matured as of April 2026. The Debtor continues to make monthly payments to Fremont Bank, such that the claim will be further reduced by the time of confirmation.

The Class 1 claim will be paid as follows: $60,000 will be paid on the earlier of the Effective Date of the Plan or October 31, 2026. The balance will be paid off in 12 equal monthly installments commencing on the first day of the month following the month in which the Effective Date falls. Interest will continue to accrue on the claim at the non-default contract rate until the claim is paid in full.

*This class is impaired and is entitled to vote on confirmation of the Plan.*

Combined Plan of Liquidation and Disclosure Statement
Dated August 7, 2026 Page 2

**Class 1.2: Secured Claims of Ford Motor Credit**

**Class 1.2(a)** consists of the claim of Ford Motor Credit secured by the 2022 Ford F-150 vehicle with a VIN ending in 2584 and filed as Claim No. 1 in the amount of $8,440.15. The Debtor will retain the vehicle and continue making payments pursuant to the terms of the agreement with Ford Motor Credit.

**Class 1.2(b)** consists of the claim of Ford Motor Credit secured by the 2022 Ford F-250 vehicle with a VIN ending in 8185 and filed as Claim No. 4 in the amount of $33,639.25. The Debtor will retain the vehicle and continue making payments pursuant to the terms of the agreement with Ford Motor Credit.

**Class 1.2(c)** consists of the claim of Ford Motor Credit secured by the 2022 Ford F-150 vehicle with a VIN ending in 2648 and filed as Claim No. 5 in the amount of $20,031.43. The Debtor will retain the vehicle and continue making payments pursuant to the terms of the agreement with Ford Motor Credit.

**Class 1.2(d)** consists of the claim of Ford Motor Credit secured by the 2022 Ford F-250 vehicle with a VIN ending in 4580 and filed as Claim No. 6 in the amount of $28,087.34. The Debtor will retain the vehicle and continue making payments pursuant to the terms of the agreement with Ford Motor Credit.

*These classes are unimpaired and are not entitled to vote on the Plan.*

**Class 1.3: Secured Claims of Lincoln Automotive Services ("Lincoln")**

Class 1.3 consists of the claim of Lincoln, which is secured against a 2021 Lincoln Corsair and was filed as Claim No. 3 in the amount of $16,887. The Debtor will retain the vehicle and continue making payments pursuant to the terms of the contract.

*This class is unimpaired and is not entitled to vote on the Plan.*

**PART 2: TREATMENT OF GENERAL UNSECURED CLAIMS AND EQUITY INTERESTS**

**Class 2: General Unsecured Claims**

**Class 2.1 The Claim of WHR Holdings, LLC ("WHR")**

WHR filed a claim of $3,819,645.46.  The treatment of WHR's claim will be part of a settlement agreement to be executed by Debtor, Scott Brown and WHR.  Once executed, the terms of the settlement agreement will be deemed incorporated in the Plan.  To the extent of any inconsistency between the Plan and the settlement agreement, the language in the settlement agreement will control.  Debtor will be filing a motion pursuant to Bankruptcy Rule 9019 to approve the settlement agreement, which motion will be heard approximately one week prior to the hearing on confirmation of the Plan.

Case: 25-30743   Doc# 196   Filed: 08/07/26   Entered: 08/07/26 17:28:36   Page 3 of 25

The description below focuses on the WHR plan treatment and is not meant to be exhaustive as to the terms of the settlement agreement.

The treatment of WHR is as follows:

- WHR's claim will be allowed in the filed amount of $3,819,645,46.
- WHR will receive payment of $1,800,000 in cash (the "WHR Payment") on the Effective Date. The WHR Payment will be from a combination of Debtor's funds and funds to be provided to the Debtor by Scott Brown.
- The WHR Payment will be in full satisfaction of all claims WHR could assert against the Debtor.
- The WHR Payment, when made, will terminate any obligations or claims arising out of the 2007 agreement between Debtor and WHR, including any claims that WHR could assert against Debtor or Scott Brown for violation of the non-compete provisions in the agreement.
- Debtor and Mr. Brown are also providing full releases of WHR as part of the agreement.
- Debtor will dismiss with prejudice its pending appeal of this Court's decision sustaining WHR's objection to Debtor's Subchapter V status.
- WHR will dismiss any pending litigation against WHR or Mr. Brown.
- The settlement agreement includes provisions that control if Debtor fails to make the WHR Payment. Those provisions are discussed in the default section found at Part 6 below.

*This class is impaired and is entitled to vote on confirmation of the Plan.*

**Class 2.2 The Unsecured Claims of Oscar Becerra and Margarita Barbosa ("Barbosa")**

Class 2.2 consists of the two disputed claims filed by Oscar and Margarita Barbosa, claims 16 and 17. First, Debtor believes the claims are duplicates of one another. Second, the claims are disputed personal injury claims arising out of an automobile accident alleged to have been caused by an employee of the Debtor during the course and scope of his employment. Third, Debtor understands the claims are covered by applicable insurance policies. Debtor provides two options for the Class 2.2 creditor as follows:

Option One: To the extent the claims are covered by applicable insurance policies, as of the Effective Date, the automatic stay or any plan-related injunction will lift, and the Class 2.2 claimants shall be free to proceed in state court with the claims against Debtor, provided that they will not seek to enforce the claims against Debtor's estate and will look solely to insurance for any recovery.

Option Two: If the Class 2.2 claimants reject option one, then to the extent the claimants have an allowed claim against the Debtor, which is not covered by an insurance policy, they will receive the same treatment as the general unsecured creditors discussed below.

When voting to accept or reject the Plan, the Class 2 claimants shall also indicate whether they elect Option One or Option Two. If the Class 2 claimants fail to select an option, then Option One shall apply.

Combined Plan of Liquidation and Disclosure Statement
Dated August 7, 2026

Case: 25-30743   Doc# 196   Filed: 08/07/26   Entered: 08/07/26 17:28:36   Page 4 of 25

*This class is impaired and is entitled to vote on confirmation of the Plan.*

**Class 2.3 The Claim of Ruben Martinez**

The Class 2.3 claimant, Mr. Martinez, filed a claim against the Debtor in front of the Workers' Compensation Appeals Board for the State of California for injuries allegedly incurred in the course and scope of his employment with the Debtor. Debtor believes the case was pending at the time it filed this bankruptcy. As of the Effective Date, the automatic stay or any plan-related injunction will be lifted, and the Class 2.3 claimant shall be free to proceed in front of the Workers' Compensation Appeals Board. As the claim is covered by Debtor's workers' compensation insurance and state law provides that proceeding against the insurance is the sole remedy, the Class 2.3 claimant will not have a claim against the Debtor's estate.

*This class is not impaired and is not entitled to vote on confirmation of the Plan.*

**Class 2.4 The Convenience Class**

Class 2.4 consists of claims that are $1,000 or less, or those creditors who are willing to reduce their claims to $1,000 for purposes of being in the Convenience Class. Debtor estimates the total claims of Class 2.4 are $8,628. Creditors in Class 2.4 shall be paid 50% of their claim 30 days after the Effective Date. Any creditor that has a claim in excess of $1,000 can elect to reduce its claim to $1,000 by notifying Debtor's counsel via email (sfinestone@fhlawllp.com) no later than the date by which ballots are due. The date for submission of ballots will be set forth in the notice of the hearing to consider confirmation. The creditors falling within the convenience class are listed below.

| | |
|---|---|
| Airgas USA LLC | $462 |
| A1 Hydraulic Service | $300 |
| American Recycling | $400 |
| Anco Sanitation | $775 |
| Baler and Compactor | $350 |
| Blankenship | $421 |
| Express Waste | $500 |
| Great Lakes Recycling | $500 |
| JWR, Inc. | $453 |
| Master Compaction | $500 |
| Metropolitan Compactor | $495 |
| Norton Equipment | $360 |
| Patton Sales Corp | $190 |
| PG&E | $98 |

Combined Plan of Liquidation and Disclosure Statement
Dated August 7, 2026

Case: 25-30743   Doc# 196   Filed: 08/07/26   Entered: 08/07/26 17:28:36   Page 5 of 25

| | |
|---|---|
| Premier Waste | $795 |
| Republic Services | $356 |
| Solid Waste Equipment | $451 |
| Surface Finishing Systems | $475 |
| The Hartford | $372 |
| Waste Equipment Co. | $375 |

*This class is impaired and is entitled to vote on confirmation of the Plan*

**Class 2.5 The Claim of General Unsecured Creditors Other Creditors in Classes 2.1-2.4**

The Class 2.5 claims consist of all allowed general unsecured non-priority claims, other than those of WHR, Classes 2.2 and 2.3 (unless they elect the option to be included in Class 2.5) and 2.4 The claims arising from any rejected executory contracts are included in Class 2.5. Debtor estimates the amount of the claims in Class 2.5 are $820,360, as set forth below. Debtor will fund a pot of $425,000 by making equal quarterly payments for five years from the later of the Effective Date. Class 2.5 creditors will receive a pro rate share of the pot once their claim becomes an allowed claim. Debtor currently believes the only claim for which a dispute exists is the claim of Curtis Menken. With respect to Mr. Menken, Debtor contends the claim is significantly overstated. Debtor is in discussions with Mr. Menken to see if it can reach a resolution as to the claim amount.

Payments will be due on the first day of the month that falls in the fourth month from the month in which the Effective Date falls. Payments shall be late if not paid within 10 days from the due date. Payments shall be made by the Reorganized Debtor. The claims shall not accrue interest.

*This class is impaired and is entitled to vote on confirmation of the Plan.*

| General Unsecured Claims in Class 2.5 | |
|---|---|
| Pape Material Handling | $2,291 |
| KPA Services LLC | $23,200 |
| Trinity Logistics | $13,300 |
| Capital One | $3,158 |
| Capital One | $15,113 |
| Curtis Menken | $367,267[2] |
| Matt Verkuilen | $82,762 |
| Middle M Advisors | $28,198 |

---

[2] The Debtor disputes the claim, and it is the subject of a pending objection.

Combined Plan of Liquidation and Disclosure Statement
Dated August 7, 2026

Case: 25-30743   Doc# 196   Filed: 08/07/26   Entered: 08/07/26 17:28:36   Page 6 of 25

| | |
|---|---|
| Wex Bank | $6,066 |
| Lessne Hoffman, PLLC | $2,387.50 |
| Mass. Dept. of Revenue | $4,183.29 |
| Anchor Sales and Service | $1,658 |
| Avalara | $1,432 |
| Blanchard and Collier | $1,500 |
| C&B Handling | $1,078 |
| C&D Industrial | $3,670 |
| Century Chute | $80,904 |
| Coast Compaction | $8,456 |
| Consolidated Fabricators | $6,950 |
| Contou Consulting | $9,028 |
| Economy Equipment | $2,012 |
| FARS AIE | $3,915 |
| Frank Rimmerman | $15,274 |
| Front Range Maintenance | $1,197 |
| GCT | $1,032 |
| Hartwick's Consulting | $6,473 |
| Hayco | $4,707 |
| Hendrix Sales | $1,546 |
| Home Depo | $17,692 |
| JV Manufacturing | $42,824 |
| McGilly | $22,029 |
| Municipal Equipment | $1,600 |
| National Equipment | $2,120 |
| Nexair | $9,952 |
| Nims & Assoc. | $73,095 |
| Palisade Builders | $1,295 |
| Power Pusher | $14,564 |
| Premier Services | $10,238 |
| Service Industrial | $3,870 |
| Sherwin Williams | $2,651 |
| Standard Parking | $1,320 |

Case: 25-30743   Doc# 196   Filed: 08/07/26   Entered: 08/07/26 17:28:36   Page 7 of
25

| | |
|---|---|
| Sunbelt Environmental | $4,560 |
| Symmetry Electronics | $6,910 |
| The Compactor Co. | $2,037 |
| Waste Tek | $1,282 |
| Scott Brown | $270,833 |

Holders of Class 2 claims may not take any collection action against the Debtor so long as the Debtor is not in Material Default under the Plan.

## Class 3: Equity Interests

Class 3 consists of all holders of equity interests in the Debtor. Such holders will not receive any distributions under the Plan on account of their interests, which will not be cancelled. The holders will retain their interests and the legal, equitable, and contractual rights provided by their interests, subject to the potential change of the equity ownership as a default remedy with respect to the payment to WHR, and as described in Section 6(e) below.

*This class is unimpaired and is deemed to accept the Plan.*

| Name of Equity Holder | Equity Class | Ownership Interest |
|---|---|---|
| Scott Brown | Common shares | 100% |

## PART 3: TREATMENT OF ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS

Administrative creditors and priority tax creditors are generally required to be paid in full unless the claimholder agrees to a different treatment. Debtor believes its only administrative creditors are its bankruptcy counsel, Finestone Hayes LLP, and its financial advisors, Arch & Beam Global, LLC ("Arch + Beam").

The Reorganized Debtor will pay the following professional fees in full on the later of the Effective Date, upon approval by the Court, or such other arrangement agreed to by the Debtor and the administrative creditor. Debtor believes that it will work out a payment arrangement with its administrative creditors that involves a down payment once the fees are allowed, followed by monthly payments that will work within the Reorganized Debtor's budget.

*Estate professionals are not entitled to vote on confirmation of the Plan.*

| Name and Role of Professional | Amount |
|---|---|
| Finestone Hayes LLP, bankruptcy counsel | $250,000[3] |

---

[3] This amount is an estimate and does not reflect application of the $75,000 retainer held by counsel.

Combined Plan of Liquidation and Disclosure Statement
Dated August 7, 2026

Case: 25-30743   Doc# 196   Filed: 08/07/26   Entered: 08/07/26 17:28:36   Page 8 of 25

| Arch & Beam Global, LLC | $75,000[4] |
|---|---|

Employed professionals who do work for the Debtor after the confirmation date shall be paid in the ordinary course by the Debtor and need not submit fee applications with respect to such services.

Priority Tax Claims

The Reorganized Debtor/Reorganized Debtor will pay allowed claims entitled to priority under § 507(a)(8) in full, with interest at the applicable non-bankruptcy statutory interest rate in accordance with § 511. The three filed claims with priority were by the Internal Revenue Service, the California Department of Tax and Fee Administration ("CDTFA") and Massachusetts Dept. of Revenue. The IRS claim initially filed a claim for $118,136.93 (Claim 18), but after Debtor filed its most recent tax return, the IRS filed an amended claim of zero. The CDTFA claim is discussed below. There is also a claim of $1,580.66 from the Massachusetts Dept. of Revenue.

Payment of the priority tax claims will be made in monthly installments beginning on the first day of the month following month in which the Effective Date falls. Payments shall be due on the first of the month and will be deemed late if not made by the tenth day of the month.

The Debtor shall file all outstanding tax returns no later than sixty days after the Effective Date of the Plan.

To the extent that the amount of any priority tax claim is disputed, payment of the undisputed portion (if any) will be made as soon as practicable. Any remaining distribution on account of a disputed priority tax claim that becomes an allowed claim shall be made after such claim is finally allowed and to the extent that funds are available.

Priority tax creditors may not take any collection action against the Debtor so long as the Debtor is not in material default under the Plan as defined in Part 6(c).

*Priority tax claimants are not entitled to vote on confirmation of the Plan.*

| Name of Creditor | Claim No. | Claim Amount | Statutory Interest Rate | Treatment Notes |
|---|---|---|---|---|
| California Department of Tax and Fee Administration | 20 | $430,473.13[5] | 7% | Payments will be made monthly, which Debtor anticipates will be $8,968.19 per month. |
| Internal Revenue Service | 18 | $0 | 0 | The IRS filed an amended claim on May 15, 2026, reducing its claim to zero. |

---

[4] This amount is an estimate.

[5] Amount reflects post-petition interest.

Combined Plan of Liquidation and Disclosure Statement
Dated August 7, 2026
Page 9

| Massachusetts Dept. of Revenue | 27 | 1,580.66 | 7% | May be paid off sooner for convenience. |
|---|---|---|---|---|

## PART 4: TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

(a)     Executory Contracts/Unexpired Leases Rejected

On the Effective Date, the executory contract with Leaf Capital Funding LLC will be assumed. Leaf Capital filed a claim in the case for $26,025.02, but Debtor believes the claim was the amount due on the balance of the lease, which is for copiers and printers used in Debtor's business. Debtor is current on the lease and there are no cure payments that need to be made. Debtor also has a contract with United Healthcare ("UHC") for provision of various employee benefits. To the extent the contract with UHC is an executory contract, Debtor will assume it upon confirmation. Debtor believes it is current on its contract with UHC and no cure payments are required.

Other than the lease with Leaf Capital Funding LLC and the contract with UHC, all executory contracts and unexpired leases entered into by the Debtor (other than those that were previously either assumed, modified, or rejected by a final order of the Court) shall be rejected. The order confirming the Plan shall constitute a final order under § 365 approving such rejection.

(b)     Bar Date for Rejection Damage Claims

Any claims arising from rejection under the Plan of an executory contract or unexpired lease ("Rejection Damage Claims") must be filed with the Court and served on the Reorganized Debtor and its counsel within thirty days after the Effective Date. Any Rejection Damage Claims that are not timely filed and served will be forever barred and unenforceable against the Debtor and its estate, and the entities holding such late-filed claims will be barred from receiving any distributions under the Plan on account of their Rejection Damage Claims. The Reorganized Debtor shall have the right to object to any such Rejection Damage Claims, provided, however, that any such objections must be served and filed not later than 180 days after the Effective Date, absent further order of the Bankruptcy Court. The Rejection Damage Claims shall be treated as Class 2.3 unsecured claims.

## PART 5: EFFECTS OF CONFIRMATION OF THE PLAN

(a)     Discharge

Pursuant to § 1141(d)(1), the Debtor shall receive a discharge of its debts upon confirmation of the Plan.

(b)     Vesting of Property and Transfer of Remaining Assets

On the Effective Date, pursuant to § 1141(b) of the Bankruptcy Code, all of the Debtor's assets shall vest in the Reorganized Debtor; provided, however, that (i) the Reorganized Debtor may abandon any assets that it believes have no meaningful value. Moreover, the Reorganized Debtor shall be authorized to sell or otherwise liquidate any assets in the manner it believes is commercially reasonable, without further order of the Court.

Case: 25-30743   Doc# 196   Filed: 08/07/26   Entered: 08/07/26 17:28:36   Page 10 of 25

All assets vested in the Reorganized Debtor under this Plan shall be free and clear of all claims and interests except as provided in this Plan and any confirmation order and shall be subject to revesting upon conversion of this case to Chapter 7 as provided in Part 6(f) below.

(c)     Plan Creates New Obligations

Except as provided in Part 6(d) and (e), the obligations to creditors that the Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. The Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under California law. To the extent a creditor retains a lien under the Plan, that creditor retains all rights provided by such lien under applicable non-bankruptcy law.

**PART 6: REMEDIES IF THE DEBTOR DEFAULTS UNDER THE PLAN**

(a)     Creditor Action Restrained

The confirmed Plan is binding on every creditor whose claims are provided for in the Plan. Therefore, even though the automatic stay terminates on the Effective Date with respect to secured claims, no creditor may take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, so long as the Debtor is not in Material Default under the Plan, except as provided in Part 6(e) below.

(b)     Obligations to Each Class Separate

The Reorganized Debtor's obligations under the Plan are separate with respect to each class of creditors. Default in performance of an obligation due to members of one class shall not by itself constitute a default with respect to members of other classes. For purposes of this Part 6, the holders of all administrative claims shall be considered to be a single class, the holders of all priority claims shall be considered to be a single class, and each non-debtor party to an assumed executory contract or unexpired lease shall be considered to be a separate class.

(c)     Material Default Defined

If the Reorganized Debtor fails to make any payment, or to perform any other obligation required under the Plan, for more than fourteen days after the time specified in the Plan for such payment or other performance, any member of a class affected by the default may serve upon the Debtor, the Debtor's counsel, and the Reorganized Debtor a written notice of the default. If the Debtor fails within thirty days after the date of service of the notice of default either: (i) to cure the default; (ii) to obtain from the Court an extension of time to cure the default; or (iii) to obtain from the Court a determination that no default occurred, then the Reorganized Debtor is in "Material Default" under the Plan to all the members of the affected class.

(d)     Remedies Upon Material Default

Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to Chapter 7; or (ii) without further order of the

Case: 25-30743   Doc# 196   Filed: 08/07/26   Entered: 08/07/26 17:28:36   Page 11 of
25

Court has relief from stay to the extent necessary and may pursue its lawful remedies to enforce and collect the Debtor's pre-confirmation obligations.

(e)     Additional Remedies Specific to WHR

If Debtor fails to make the WHR Payment as defined above (i) the Plan shall be deemed not to have been substantially consummated by the Debtor, (ii) Debtor's exclusive right to propose a plan of reorganization shall be deemed terminated, and (iii) WHR shall be free to propose its own plan, or alternatively, WHR may choose to effectively take over or sponsor Debtor's plan, in which case the following will occur: (a) WHR shall release its right to the WHR Payment such that it will no longer receive the WHR Payment (b) WHR shall obtain all of the equity in the Reorganized Debtor, and (c) WHR shall cause the Debtor to make all payments due under the terms of the Plan.

(f)     Claims Not Affected by Plan

Upon confirmation of the Plan, and subject to Part 5(c), any creditor whose claims are left unimpaired under the Plan may, notwithstanding paragraphs (a), (b), (c), and (d) above, immediately exercise all of its contractual, legal, and equitable rights, except rights based on default of the type that need not be cured under § 1124(2)(A) and (D).

(g)     Effect of Conversion to Chapter 7

If the Debtor's Chapter 11 case is at any time converted to one under Chapter 7, the property of the Reorganized Debtor shall vest in the Chapter 7 bankruptcy estate to the same extent provided for in § 348(f) upon the conversion of a case from Chapter 13 to Chapter 7.

(h)     Retention of Jurisdiction

The bankruptcy court (the "Court") may exercise jurisdiction over proceedings concerning: (i) whether the Reorganized Debtor is in Material Default of any Plan obligation; (ii) whether the time for performing any Plan obligation should be extended; (iii) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed in this Court (see Part 7(f)); (iv) whether the Debtor's Chapter 11 case should be dismissed or converted to one under Chapter 7; (v) any objections to claims; (vi) compromises of controversies under Federal Rule of Bankruptcy Procedure 9019; (vii) compensation of professionals; and (viii) other questions regarding the interpretation and enforcement of the Plan.

(i)     Modification of the Plan

 **DEBTOR RETAINS THE RIGHT TO MODIFY THE PLAN CONSISTENT WITH BANKRUPTCY CODE SECTION 1127.PART 7: GENERAL PROVISIONS**

(a)     Effective Date of Plan

The Effective Date of the Plan is the fifteenth day following the date of the entry of the order of confirmation, if no notice of appeal from that order has been filed. If a notice of appeal has been filed, the Debtor may waive the finality requirement and put the Plan into effect, unless the order

Case: 25-30743   Doc# 196   Filed: 08/07/26   Entered: 08/07/26 17:28:36   Page 12 of 25

confirming the Plan has been stayed. If a stay of the confirmation order has been issued, the Effective Date will be the first day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated. The Effective Date is subject to the Reorganized Debtor's determination, in good faith, that the Debtor has sufficient cash on hand to make all payments required under this Plan to be made on the Effective Date.

(b)      Disputed Claim Reserve

The Reorganized Debtor will create a reserve for disputed claims. Each time the Reorganized Debtor makes a distribution to the holders of allowed claims, the Reorganized Debtor will place into a reserve the amount that would have been distributed to the holders of disputed claims if such claims had been allowed in the full amount claimed. If a disputed claim becomes an allowed claim, the Reorganized Debtor shall immediately distribute to the claimant from the reserve an amount equal to all distributions due to date under the Plan calculated using the amount of the allowed claim. The Reorganized Debtor shall have the right to settle any disputed claims after the Effective Date without a Court order.

(c)      Cramdown

Pursuant to § 1129(b), the Debtor reserves the right to seek confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors.

(d)      Severability

If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

(e)      Governing Law

Except to the extent a federal rule of decision or procedure applies, the laws of the State of California govern the Plan.

(f)      Lawsuits and Retained Claims

The Debtor is not currently aware of the existence of any causes of action for fraudulent transfers, voidable preferences, or other claims, but it is anticipated that the Reorganized Debtor will further investigate and determine whether such actions exist and should be pursued. All claims shall be preserved for the benefit of the estate, including but not limited to claims arising under §§ 542–550. Except as otherwise provided in the Plan, or in any contract, instrument, or other agreement or document entered into in connection with the Plan, and in accordance with § 1123(b), the Reorganized Debtor shall retain and may enforce, sue on, settle, compromise, otherwise resolve, discontinue, abandon, or dismiss all claims, rights, causes of action, suits, and proceedings. The claims include  claims for violation of the automatic stay by counsel for the Class 2.2 creditors.

Case: 25-30743   Doc# 196   Filed: 08/07/26   Entered: 08/07/26 17:28:36   Page 13 of 25

(g)     Notices

Any notice to the Reorganized Debtor shall be in writing, and shall be deemed to have been given three days after the date sent by both email and first-class mail, postage prepaid and addressed as follows:

>       Reorganized Debtor
>       American Trash Management, Inc.
>       Attn: Scott Brown
>       1900 Powell Street, Suite 460
>       Emeryville, CA 94608
>       Email: sbrown@trashmanage.com
>
>       with a copy to:
>
>       Stephen D. Finestone and Jennifer C. Hayes
>       sfinestone@fhlawllp.com
>       jhayes@fhlawllp.com

(h)     Post-Confirmation United States Trustee Fees

Following confirmation, the Debtor shall continue to pay quarterly fees to the United States Trustee to the extent, and in the amounts, required by 28 U.S.C. § 1930(a)(6). So long as the Debtor is required to make these payments, the Debtor shall file with the Court quarterly reports in the form specified   by the United States Trustee for that purpose.

(i)     Implementation of the Plan by the Reorganized Debtor

The Reorganized Debtor shall be come into being upon entry of the order confirming the Plan.

On the Effective Date, the Reorganized Debtor shall take possession, custody, and control of all books, records, and files of the Debtor and its estate, and shall provide for the retention and storage of such materials until the Reorganized Debtor determines that retention is no longer necessary or required.

The Reorganized Debtor shall be responsible for reconciling and paying all claims in accordance with the Plan. The Reorganized Debtor shall make all distributions required under the Plan and shall have full authority to act on behalf of the Debtor to carry out such responsibilities, including the authority to open and maintain accounts, sign checks, and take all actions necessary to effectuate the Plan.

(j)     Cash Collateral Vests in Debtor.

On the Effective Date, all cash collateral generated since the Petition Date (September 15, 2025) from use of property of the estate and in the possession, custody, or control of Debtor, shall vest in the Reorganized Debtor pursuant to section 1141(b) of the Bankruptcy Code free and clear of all liens, claims, interests, and encumbrances.

Combined Plan of Liquidation and Disclosure Statement
Dated August 7, 2026                                                         Page 14

(k)     Corporate Governance.

Confirmation of the Plan shall be deemed to prohibit the issuance by the Reorganized Debtor of nonvoting securities to the extent required under section 1123(a)(6) of the Bankruptcy Code. Confirmation of this Plan shall constitute its judicial approval and shall bar any claim against its directors, members, professionals, or agents respecting the proposal, prosecution, approval, or implementation of the Plan, provided however, that claims for willful misconduct or gross negligence shall not be affected or otherwise barred by confirmation of this Plan.  Existing management and corporate governance shall not be altered by confirmation of this Plan.

(l)     Post Confirmation Management.


Scott Brown shall remain as CEO of the Debtor and shall remain as the responsible individual for Debtor for the duration of the Plan, unless Debtor fails to make the WHR Payment and WHR obtains ownership of the Debtor's equity.

(m)     Returned Payments.

After the date of confirmation of the Plan, all funds disbursed by Debtor that are returned or otherwise not duly negotiated by the claimant (*e.g.*, because the claimant could not be located or refused to accept the funds) and are not claimed within 90 days after the initial disbursement, shall be retained by Debtor.  Unless and until the claimant provides written notice to Debtor and Debtor's attorney at each of the addresses set forth in Section 7(g) of the Plan, Debtor shall have no further obligation to make any additional distributions to the claimant pursuant to the Plan.


[<em>Signatures on following page.</em>]

Case: 25-30743   Doc# 196   Filed: 08/07/26   Entered: 08/07/26 17:28:36   Page 15 of 25

Dated August 7, 2026          AMERICAN TRASH MANAGEMENT, INC.


*/s/ Scott Brown*
Scott Brown
Chief Executive Officer


Dated August 7, 2026          FINESTONE HAYES LLP


*/s/ Stephen D. Finestone*
Stephen D. Finestone
Counsel for the Debtor

Case: 25-30743   Doc# 196   Filed: 08/07/26   Entered: 08/07/26 17:28:36   Page 16 of 25

**ATTORNEY CERTIFICATION**

I, Stephen D. Finestone, am legal counsel for the Debtor in the above-captioned case and hereby certify the following: (a) the foregoing Plan is a true and correct copy of the *Individual Chapter 11 Combined Plan and Disclosure Statement* promulgated by the Northern District of California, San Francisco Division, on July 30, 2012 (the "Standard-Form Plan"); and (b) except as specified below, there have been no alterations or modifications to any provision of the Standard-Form Plan.

The following provisions of the Standard-Form Plan have been altered or otherwise modified.

1. The role of Reorganized Debtor was created and described.
2. A "General Description of the Plan" section was added for context.
3. The pre-specified treatment of Class 1 secured claims was removed and replaced to reflect the circumstances of this case.
4. The treatment of Class 2 general unsecured claims was modified to reflect the circumstances of this case.
5. Class 3 was created to describe the treatment of equity interests.
6. Part 3(a) specifies that employed professionals shall be paid in the ordinary course and not need to submit fee applications with respect to services performed after the confirmation date.
7. The treatment of Part 4(b) administrative claims and Part 4(c) priority tax claims was modified to reflect the circumstances of this case.
8. Part 5(b) was updated to clarify the vesting of property.
9. In Part 7(a), the Effective Date was made subject to sufficient cash on hand to make payments required on the Effective Date.
10. Part 7(f) was updated to describe the Debtor's retained claims.
11. The reference to § 1111(b) election was removed.
12. Various other changes were made in Part VII – General provisions to reflect this as a corporate case.
13. Exhibit 2 was modified to reflect the circumstances of this case. Exhibit 5 was removed because the Debtor has no investment properties.
14. Non-substantive edits and formatting changes were made for readability.

I declare that the foregoing is true and correct.

Dated August 7, 2026            FINESTONE HAYES LLP


                                     */s/ Stephen D. Finestone*
                                       Stephen D. Finestone
                                       Counsel for the Debtor

Case: 25-30743    Doc# 196    Filed: 08/07/26    Entered: 08/07/26 17:28:36    Page 17 of 25

**EXHIBIT 1: BACKGROUND**

**General Background Regarding the Debtor and Events That Led to Bankruptcy**

**AMERICAN TRASH MANAGEMENT'S HISTORY AND OPERATIONS**

Founded in 1990, the company has been continuously operating since then. Located in Emeryville, ATM's mission is to reduce the costs and problems of trash for trash-generating businesses and institutions, using smart design, smart systems, and smart technology.

ATM's management team includes Scott Brown, CEO. Before founding ATM, Mr. Brown started a pioneering biotechnology company. Karen Troth joined ATM in 2017 as an Administrator and Office Manager. Since 2022, Ms. Troth has served as the Vice President of Internal Operations. Thao Vo joined ATM in 2006 as a customer service manager. Since 2022, Ms. Vo has served as the Vice President of Field Services. Ms. Vo is responsible for the company's Systems & Services Divisions. ATM's senior engineer is Max Croy, one of the waste industry's most inventive designers of chute-fed and small ground feed compaction systems in the last four decades. Ms. Troth and Mr. Croy support all of ATM's five divisions, described below.

ATM's target market is any trash-generating entity that produces high trash levels, or that has a high number of people handling their trash, such as multifamily properties, mixed-use developments, office buildings, retail centers, hotels, hospitals, schools, factories, entertainment venues, and the like. These sorts of operations generate large and complicated trash streams, whose volume and complexity creates costly and problematic handling and disposal issues.

ATM achieves its mission by providing continuous trash life cycle improvements using its planning, design, construction, maintenance, products, and service offerings. ATM's "start-to-finish" mix of products and services, combined with its extensive institutional knowledge of trash generation and handling provides a stable and growing source of revenues from its existing and future customers.

Beginning in 2023, ATM switched to a fiscal year, which runs from July 1 to June 30. Actual sales from July 1, 2022 through June 30, 2023 totaled $11,046,477. Sales for fiscal year 2024 totaled $13.2 million. Sales for fiscal year 2025 totaled $9,390,136. Sales for fiscal year 2026 (July 1, 2025 through June 30, 2026) are projected at $10,000,000. ATM aims to have sales totaling no less than $12.5 million by Fiscal Year 2029. ATM's major market advantage is its knowledge of its customers' trash and logistical operational requirements based on its more than 34 years of experience. ATM is also expanding its offering of additional SmartTrash® trash equipment monitor and management products to its customers and is committed to continual product and service improvements using the telemetry data collected from its SmartTrash® platform. These factors provide ATM with the necessary tools to grow its five business units, particularly its new products within the SmartTrash® System division (compactors and soon-to-be-released chute door).

ATM has five divisions: (i) Consulting; (ii) Systems; (iii) Service; (iv) SmartTrash®; and (v) SmartTrash® Systems. This organization was implemented to push responsibilities down to each division manager and their teams, which has allowed staff reductions. Ms. Ana Zarate is the Manager of the ATM's Consulting Division; Mr. Jesse Walker is the Manager of the SmartTrash® Division and Mr. Chris Hutzel is the Manager of the SmartTrash® Systems Division.

Case: 25-30743   Doc# 196   Filed: 08/07/26   Entered: 08/07/26 17:28:36   Page 18 of 25

In late 2023, ATM instituted a customer management system, whereby customer information and ATM's delivery of services and products are shared internally with each division, allowing each division better visibility into customer needs. Data in the new customer management system permits ATM to onboard new customers and projects more cost effectively. At the beginning of Fiscal year 2026, the company instituted an ERP (Enterprise Resource Planning) System that will further increase administrative efficiencies and provide better cost data and customer management tools.

ATM employs approximately 52 people, down from a peak of 63. ATM has also reduced outside consultants and vendors in marketing without negatively impacting sales. The net result of these changes was a turnaround in ATM's overall profitability from a loss in Fiscal Year 2023 to profitability in Fiscal year 2024. ATM continues to focus on productivity increases, with a "do more with less" attitude. ATM's reorganization has resulted in a more efficient and flexible organization, which is focused on the profitable growth of each division. ATM's continued focus on increasing cash flow is expected to provide an internal source of working capital, which is expected to permit ATM to achieve, in part, its revenue and profit goals.

ATM's troubles were caused by two events: (1) a former COO having suffered a personal tragedy, which materially impacted their ability to perform on the job; however, it took time for the effects to be known; and (2) a lawsuit filed in July 2024 by WHR Holdings, LLC ("WHR").

WHR is a Florida-based company that designs, manufactures, sells, installs, and services trash chute systems commonly installed in mid- and high-rise buildings. WHR sued ATM in Broward County Florida on July 5, 2024, alleging breach of an October 1, 2007 contract titled Exclusive Manufacturer's Representative and Authorized Service Provider Agreement (the "Agreement"). ATM tried to settle the dispute, and the parties attended a mediation. There was, however, no settlement thereby requiring this bankruptcy filing.

**Events During the Bankruptcy Case:**

Shortly after filing the bankruptcy case, the Debtor successfully obtained orders from the Court authorizing, among other things, the use of cash collateral, payment of pre-petition wage claims, maintenance of its cash management system, appointment of Scott Brown as its responsible individual and the retention of Finestone Hayes LLP as its bankruptcy counsel.

The Debtor's use of cash collateral has been extended several times as a result of stipulations with Fremont Bank. The Debtor continues to make monthly payments to Fremont Bank to further reduce its debt.

Debtor entered into favorable agreements with two of its landlords to keep in place locations for its operations while lowering its rent to improve its financial performance.

WHR filed an objection to the Debtor's designation as a debtor able to operate as a Subchapter V debtor under the Bankruptcy Code. The Court sustained WHR's objection, which decision is currently on appeal to the Bankruptcy Appellate Panel for the Ninth Circuit. Debtor does not anticipate a decision on the appeal for several months, as briefing is not completed and no date for oral argument has been set.

Debtor and WHR agreed to a mediation of the disputes. The Hon. Dennis Montali was appointed the mediator/settlement judge and spent parts of two days working with the parties. Debtor and WHR eventually reached an agreement regarding the treatment of WHR's claim and other related matters. The parties will file a motion seeking court approval of their agreement, which motion will be heard prior to the hearing on confirmation of the Plan.

Case: 25-30743   Doc# 196   Filed: 08/07/26   Entered: 08/07/26 17:28:36   Page 19 of 25

**EXHIBIT 2: HYPOTHETICAL CHAPTER 7 DISTRIBUTIONS**

The Debtor believes that the following chart provides creditors with adequate information regarding what would occur if the case were converted to Chapter 7. Amounts used for professional fees in the hypothetical Chapter 7 are Debtor's best estimate. The amounts used for categories that fluctuate in amount are as of the date of the filing of this plan or the end of the preceding month.

Personal Property:

| Description | Liquidation Value | Secured Claim | Net Proceeds |
|---|---|---|---|
| Cash | $700,000[6] | $480,000 | $120,000 |
| Accounts Receivable[7] | $894,983 | $0 | $894,983 |
| Automobile #1 | $9,867 | $8,440 | $1,427 |
| Automobile #2 | $6,704 | $0 | $6,704 |
| Automobile #3 | $10,500 | $33,639 | -0- |
| Automobile #4 | $12,400 | $20,031 | -0- |
| Automobile #5 | $8,902 | $28,037 | -0- |
| Automobile #6 | $20,271 | $16,887 | $3,384 |
| Misc. vehicles without secured debt | $33,500 | | $33,500 |

[6] Estimated cash available on October 1, 2026.

[7] The amount entered represents 70% of the accounts receivable that are less than 90 days overdue and will vary until the projected Effective Date of October 1, 2026. Debtor believes that if the case is converted to Chapter 7, the collection of accounts receivable will likely be difficult, and the amount shown is likely high. The secured claim reflected assumes Fremont Bank is paid off with available cash on hand.

Case: 25-30743    Doc# 196    Filed: 08/07/26    Entered: 08/07/26 17:28:36    Page 20 of 25

| | | | |
|---|---|---|---|
| Equipment | $5,000 | | $5,000 |
| Inventory | $20,000 | | $20,000 |
| Other Personal Property | $10,000 | | $10,000 |
| **Est. Personal Property Value** | | | $1,194,998 |

| | |
|---|---|
| Recovery from Preferences / Fraudulent Conveyances | Unknown (debtor is not aware of any likely recovery) |
| Chapter 7 Administrative Claims | unknown |
| Chapter 11 Administrative Claims | $250,000 (estimated fees for counsel, financial advisor and U.S. Trustee) |
| Priority Claims | $430,473.13 |
| Chapter 7 Trustee Fees | $25,000 |
| Chapter 7 Trustee's Professionals | $60,000 |
| NET FUNDS AVAILABLE FOR DISTRIBUTION TO UNSECURED CREDITORS | $429,525 |

| | |
|---|---|
| Estimated Amount of Unsecured Claims (Assumed allowed as claimed except for the Becerra claims, which are valued at $0) | $5,037,569 |
| Percent Distribution to Unsecured Creditors Under Proposed Plan | 50%[8] |
| Percent Distribution to Unsecured Creditors Under Liquidation Analysis | 8.5% |

---

[8] This is the approximate percentage distribution to Classes 2.4 and 2.5. If WHR's claim is valued at $3,800,000 per its filing, the agreed upon payment is equivalent to a 47% distribution.

Case: 25-30743   Doc# 196   Filed: 08/07/26   Entered: 08/07/26 17:28:36   Page 21 of 25

**EXHIBIT 3: INCOME AND EXPENSES**

Attached at the end of this document is an analysis of the Debtor's financial performance over the past twelve months and projections for plan performance.

Case: 25-30743    Doc# 196    Filed: 08/07/26    Entered: 08/07/26 17:28:36    Page 22 of 25

**EXHIBIT 4: FEASIBILITY ANALYSIS**

Ability to make Plan payments on or near Effective Date:

| Description | Estimated Amount | Estimated Timing |
|---|---|---|
| Cash on hand | $700,000 | Effective Date (est. as October 1, 2026) |
| Funds from Scott Brown (estimated amount) | $1,500,000 | Prior to the Effective Date |
| **Total funds available on Effective Date** | **$2.200.000** | |
| *Less professional fees (Finestone Hayes LLP)* | *$175,000[9]* | *Within 60 days of the Effective Date and likely subject to a payment agreement with counsel to accept payments over time.* |
| *Less Professional fees for Arch & Beam Global, LLC* | *$75,000* | *Within 60 days of the Effective Date and likely subject to a payment agreement providing for payment over time.* |
| *Payment to WHR* | *$1,800,000* | *On the Effective Date* |
| *Payment to Fremont Bank* | *$60,000* | *On the Effective Date* |
| *Less UST fees* | *$10,000* | *On the Effective Date – estimated as Debtor operated as a Subchapter V debtor until March 5, 2026* |
| **Balance following Effective Date payments** | **$80,000** | |

[*Continued on following page.*]

---

[9] Reflects application of the $75,000 retainer held by counsel

Combined Plan of Liquidation and Disclosure Statement
Dated August 7, 2026

Case: 25-30743   Doc# 196   Filed: 08/07/26   Entered: 08/07/26 17:28:36   Page 23 of 25

# American Trash Management Forecast

Forecast: Contains Forward Looking Statements

## Income Statement - Consolidated (Accrual)

| | Actual | Actual | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
|---|---|---|---|---|---|---|---|---|---|
| | 6/30/24 | 6/30/25 | 6/30/26 | 6/30/27 | 6/30/28 | 6/30/29 | 6/30/30 | 6/30/31 | 6/30/32 |
| | FY2024 | FY2025 | FY2026 | FY2027 | FY2028 | FY2029 | FY2030 | FY2031 | FY2032 |
| **Revenue** | **11,046,478** | **9,390,136** | **10,470,001** | **10,859,151** | **11,293,518** | **11,632,323** | **11,864,970** | **12,102,269** | **12,344,314** |
| COGS | (3,713,409) | (2,492,340) | (2,736,759) | (2,790,704) | (2,902,332) | (2,989,402) | (3,049,190) | (3,110,174) | (3,172,378) |
| Service Repairs & Other Cost of Sales | (2,871,247) | (2,844,108) | (2,845,371) | (3,189,002) | (3,316,562) | (3,416,059) | (3,484,380) | (3,554,067) | (3,625,149) |
| **Gross Profit** | **4,461,821** | **4,053,689** | **4,887,871** | **4,879,446** | **5,074,624** | **5,226,862** | **5,331,400** | **5,438,028** | **5,546,788** |
| *Gross Margin %* | *40.4%* | *43.2%* | *46.7%* | *44.9%* | *44.9%* | *44.9%* | *44.9%* | *44.9%* | *44.9%* |
| Payroll Expenses | (1,590,559) | (1,789,181) | (1,889,030) | (2,040,202) | (2,121,810) | (2,185,464) | (2,229,173) | (2,273,757) | (2,319,232) |
| Interest Expense | (181,075) | (67,203) | (132,128) | (58,724) | (24,473) | (16,476) | (10,485) | (4,493) | (187) |
| Non-Payroll Expenses | (2,613,546) | (2,383,609) | (2,752,548) | (2,356,791) | (2,451,063) | (2,524,594) | (2,575,086) | (2,626,588) | (2,679,120) |
| Net Other Income / (Expenses) | 56,364 | 367,998 | 99,341 | - | - | - | - | - | - |
| Restructuring - Finestone Hayes LLP | - | - | (175,000) | (75,000) | - | - | - | - | - |
| Restructuring - Arch + Beam | - | - | (50,000) | (25,000) | - | - | - | - | - |
| Restructuring - Fees | - | - | - | (10,000) | - | - | - | - | - |
| Plan Adjustments (COD + Other Adjustments) | - | - | (694,429) | 693,591 | - | - | - | - | - |
| **Pre-Tax Income** | **133,005** | **181,693** | **(705,923)** | **1,007,321** | **477,279** | **500,328** | **516,655** | **533,189** | **548,249** |
| Tax Expense | - | - | - | (132,854) | (167,048) | (175,115) | (180,829) | (186,616) | (191,887) |
| **Net Income** | **133,005** | **181,693** | **(705,923)** | **874,467** | **310,231** | **325,213** | **335,826** | **346,573** | **356,362** |
| *Net Income Margin %* | *1.2%* | *1.9%* | *(6.7%)* | *8.1%* | *2.7%* | *2.8%* | *2.8%* | *2.9%* | *2.9%* |
| **EBITDA Reconciliation** | | | | | | | | | |
| Net Income | 133,005 | 181,693 | (705,923) | 874,467 | 310,231 | 325,213 | 335,826 | 346,573 | 356,362 |
| (+) Tax Expense | - | - | - | 132,854 | 167,048 | 175,115 | 180,829 | 186,616 | 191,887 |
| (+) Interest Expense | 181,075 | 67,203 | 132,128 | 58,724 | 24,473 | 16,476 | 10,485 | 4,493 | 187 |
| (+) D&A and Other Non-Cash Expenditures | 404,665 | 404,665 | 318,672 | - | - | - | - | - | - |
| (-) Cancellation of Debt Income - WHR Holdings | - | - | - | (264,817) | - | - | - | - | - |
| (-) Cancellation of Debt Income - Other Claims | - | - | - | (428,774) | - | - | - | - | - |
| (+) Bankruptcy: Restructuring Costs | - | - | 225,000 | 110,000 | - | - | - | - | - |
| **EBITDA** | **718,745** | **653,561** | **(30,122)** | **482,453** | **501,751** | **516,804** | **527,140** | **537,683** | **548,437** |
| *EBITDA Margin %* | *6.5%* | *7.0%* | *(0.3%)* | *4.4%* | *4.4%* | *4.4%* | *4.4%* | *4.4%* | *4.4%* |

Case: 25-30743   Doc# 196   Filed: 08/07/26   Entered: 08/07/26 17:28:36   Page 24 of 25

Forecast - Plan Exhibit

# American Trash Management Forecast

Forecast: Contains Forward Looking Statements

| Statement of Cash Flows & Plan Payments - Consolidated | Forecast 6/30/26 FY2026 | Forecast 6/30/27 FY2027 | Forecast 6/30/28 FY2028 | Forecast 6/30/29 FY2029 | Forecast 6/30/30 FY2030 | Forecast 6/30/31 FY2031 | Forecast 6/30/32 FY2032 | Forecast Payments By Class | Plan Pmts Proposed By Class | Remaining Payments By Class |
|---|---|---|---|---|---|---|---|---|---|---|
| Net Income | | 874,467 | 310,231 | 325,213 | 335,826 | 346,573 | 356,362 | | | |
| Increase / (Decrease) in Cash due to changes in: | | | | | | | | | | |
| Assets | | 128,403 | 50,496 | (35,465) | 30,675 | (66,231) | (67,556) | | | |
| Liabilities | | 191,768 | 149,138 | 19,423 | 49,138 | 50,837 | (59,157) | | | |
| Class 2.1 - Unsecured Claim - WHR Holdings - COD Adjustment | | (264,817) | - | - | - | - | - | | | |
| Class 2.4 - Unsecured Claim - Convenience Class - COD Adjustment | | (4,314) | - | - | - | - | - | | | |
| Class 2.5 - Unsecured Claim - General Unsecured - COD Adjustment | | (424,460) | - | - | - | - | - | | | |
| **Cash Flow from Operations** | | **501,046** | **509,865** | **309,172** | **415,639** | **331,178** | **229,650** | | | |
| | | | | | | | | | | |
| **Cash Flow from Investing** | | **-** | **-** | **-** | **-** | **-** | **-** | | | |
| | | | | | | | | | | |
| Share Capital | | 1,500,000 | - | - | - | - | - | | | |
| **Cash Flow from Financing** | | **1,500,000** | **-** | **-** | **-** | **-** | **-** | | | |
| | | | | | | | | | | |
| _Pre-Petition - Plan Claims_ | | | | | | | | | | |
| Class 1.1 - Secured Claim - Fremont Bank | | (373,333) | (126,667) | - | - | - | - | (500,000) | 500,000 | - |
| Class 1.2 - Secured Claim - Ford Motor Company | | (26,347) | (35,130) | (30,058) | - | - | - | (91,535) | 91,535 | - |
| Class 1.3 - Secured Claim - Lincoln Automotive Services | | (9,536) | (7,352) | - | - | - | - | (16,887) | 16,887 | - |
| | | | | | | | | | | |
| Priority Claim - California Dept of Tax & Fee Administration (CDTFA) | | (64,192) | (85,589) | (85,589) | (85,589) | (85,589) | (21,397) | (427,944) | 427,944 | - |
| Priority Claim - Internal Revenue Service | | - | - | - | - | - | - | - | - | - |
| Priority Claim - Massachusetts Dept. of Revenue | | (1,581) | - | - | - | - | - | (1,581) | 1,581 | - |
| | | - | | | | | | | | |
| Class 2.1 - Unsecured Claim - WHR Holdings | | (1,800,000) | - | - | - | - | - | (1,800,000) | 1,800,000 | - |
| Class 2.2 - Unsecured Claim.- Oscar Becerra / Margarita Barbosa | | - | - | - | - | - | - | - | - | - |
| Class 2.3 - Unsecured Claim - Ruben Martinez | | - | - | - | - | - | - | - | - | - |
| Class 2.4 - Unsecured Claim - Convenience Class | | (4,314) | - | - | - | - | - | (4,314) | 4,314 | - |
| Class 2.5 - Unsecured Claim - General Unsecured | | (42,500) | (85,000) | (85,000) | (85,000) | (85,000) | (42,500) | (425,000) | 425,000 | - |
| **Cash Flow from Plan Items** | | **(2,321,802)** | **(339,737)** | **(200,647)** | **(170,589)** | **(170,589)** | **(63,897)** | **(3,267,261)** | **3,267,261** | **-** |
| | | | | | | | | | | |
| **Net Change in Cash** | | **(320,756)** | **170,129** | **108,525** | **245,050** | **160,590** | **165,752** | | | |
| | | | | | | | | | | |
| Beginning Balance Cash & Equivalents | | 634,030 | 313,274 | 483,402 | 591,927 | 836,978 | 997,568 | | | |
| (+/-) Net Change in Cash & Equivalents | | (320,756) | 170,129 | 108,525 | 245,050 | 160,590 | 165,752 | | | |
| **Ending Balance Cash & Equivalents** | **634,030** | **313,274** | **483,402** | **591,927** | **836,978** | **997,568** | **1,163,320** | | | |

Case: 25-30743    Doc# 196    Filed: 08/07/26    Entered: 08/07/26 17:28:36    Page 25 of 25

Forecast - Plan Exhibit